## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | Case No.  23-10756 (KBO) |
| Debtor. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky Bucks Holdings LLC and as assignee, | Adversary Proceeding<br><br>Adv. Proc. No. 24-50130 (KBO) |
| Plaintiff, | |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC, *et al.*, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## SHAFIK KASSAM'S MOTION TO DISMISS THE AMENDED COMPLAINT

QUINN EMANUEL URQUHART
   & SULLIVAN LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew R. Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016

WHITEFORD TAYLOR
   & PRESTON LLC
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, DE 19801

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF ARGUMENT ...................................................................................................2

RELEVANT BACKGROUND ...................................................................................................3

    A.    Kassam Is Appointed To Lucky Bucks' Board After The GLC Bans Damani ....................................................................................................................................3

    B.    Trive Creates A Plan To "Take Cash Out Of The Business," Damani Approves The Transaction And Plays A Role In Marketing ...................................4

    C.    The Holdings Distributions Render Holdings Insolvent, And Kassam's Wrongdoing Is Revealed To The Noteholders ..........................................................6

STANDARD OF REVIEW ........................................................................................................7

ARGUMENT ..............................................................................................................................7

I.    The Amended Complaint States Claims For Fraudulent Transfer ...................................7

    A.    The Trustee Has Standing To Assert Fraudulent Transfer Claims .........................7

    B.    The Fraudulent Transfer Claims Are Not Barred By Consent, Ratification, Estoppel, or Similar Doctrines ...............................................................................8

    C.    The Trustee Adequately Alleges Intentional Fraudulent Transfer Claims .............9

    D.    The Trustee Adequately Alleges Constructive Fraudulent Transfer Claims .........11

II.    The Unlawful Dividends Claim Does Not Apply To Kassam ..........................................12

III.    The Securities Fraud Claims Are Adequately Pleaded ....................................................12

IV.    The Securities-Fraud Claims Are Not Time-Barred ........................................................14

V.    The Complaint's Common Law Claims Are Adequately Pleaded ...................................16

    A.    The Alleged Misstatements Were False Statements Of Fact Or Otherwise Actionable Misrepresentations ..............................................................................17

    B.    The Amended Complaint Adequately Alleges Justifiable Reliance .....................19

    C.    The Amended Complaint Alleges That Kassam Is Liable For Fraud By Omission ................................................................................................................19

    D.    The Amended Complaint's States A Claim For Negligent Misrepresentation ....................................................................................................20

    E.    The Amended Complaint's Fraud Allegations Satisfy Rule 9(b) .........................21

VI.    Kassam's Remaining Arguments Are Meritless ..............................................................22

CONCLUSION ..........................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
    888 F. Supp. 2d 431 (S.D.N.Y. 2012) ....................................................................................19

*In re Appleseed's Intermediate Holdings, LLC*,
    470 B.R. 289 (D. Del. 2012) ..................................................................................................9

*Arwood v. AW Site Servs., LLC*,
    2022 WL 705841 (Del. Ch. Mar. 9, 2022) ...........................................................................19

*In re CBI Holding Co., Inc.*,
    529 F.3d 432 (2d Cir. 2008) ...................................................................................................8

*Clark v. Davenport*,
    2019 WL 3230928 (Del. Ch. July 18, 2019) .........................................................................17

*DiMare v. MetLife Ins. Co.*,
    369 F. App'x 324 (3d Cir. 2010) ....................................................................................13, 21

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
    540 F. Supp. 2d 759 (S.D. Tex. 2007) ............................................................................13, 14

*In re Extended Stay, Inc.*,
    2020 WL 10762310 (Bankr. S.D.N.Y. 2020) .........................................................................9

*First Bank of Georgia v. Robertson Grading, Inc.*,
    761 S.E.2d 628 (Ga. 2014) ....................................................................................................20

*In re Genesis Health Ventures, Inc.*,
    355 B.R. 438 (Bankr. D. Del. 2006) ................................................................................17, 21

*Gerbitz v. ING Bank, FSB*,
    967 F. Supp. 2d 1072 (D. Del. 2013) ....................................................................................21

*In re Glencoe Acquisition, Inc.*,
    2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ..............................................................17

*Glover v. F.D.I.C.*,
    698 F.3d 139 (3d Cir. 2012) ..................................................................................................15

*In re Gronczewski*,
    444 B.R. 526 (Bankr. E.D. Pa. 2011) .....................................................................................8

*Hartig Drug Co. Inc. v. Senju Pharma. Co. Ltd.*,
836 F.3d 261 (3d Cir. 2016)........................................................................................7

*Labyrinth, Inc. v. Urich*,
2024 WL 295996 (Del. Ch. Jan. 26, 2024) ...............................................................18

*Lieberman v. BeyondTrust Corp.*,
2020 WL 1815547 (D. Del. Aug. 9, 2020) ................................................................20

*In re Lucky Bucks Holdings LLC*,
Case No. 23-10756 (KBO), (Bankr. D. Del.) .............................................................8

*In re Lyon*,
644 B.R. 211 (Bankr. D. Or. 2022)............................................................................22

*Marcellus Const. Co., Inc. v. Vill. of Broadalbin*,
302 A.D.2d 640 (N.Y. App. Div. 3d Dep't 2003) ....................................................20

*MBIA Ins. Corp. v. Royal Indem. Co.*,
221 F.R.D. 419 (D. Del. 2004) ..................................................................................21

*In re Med. Wind Down Holdings III, Inc.*,
332 B.R. 98 (Bankr. D. Del. 2005) ............................................................................16

*In re Millennium Lab Holdings II, LLC*,
2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ...................................................10

*In re Our Alchemy, LLC*,
2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ..................................................11

*In re Physiotherapy Holdings*,
2016 WL 3611831 (Bankr. D. Del. June 20, 2016)......................................................9

*Rochez Bros. v. Rhoades*,
527 F.2d 880 (3d Cir. 1975)........................................................................................13

*Rodriguez v. City of Camden*,
2013 WL 530863 (D.N.J. Feb. 11, 2013) ..................................................................12

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) .........................................................................13

*Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*,
739 F. Supp. 2d 686 (D. Del. 2010)...........................................................................20

*Stephenson v. Capano Dev., Inc.*,
462 A.2d 1069 (Del. 1983) ........................................................................................19

*In re Syntax Brillian Corp.*,
    2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) ..................................................10

*White Winston Select Asset Funds, LLC v. Good Times Restaurants, Inc.*,
    2020 WL 4015327 (D. Del. July 16, 2020) ...........................................................9

*Zuber v. Boscov's*,
    871 F.3d 255 (3d Cir. 2017)...................................................................................7

## **Rules / Statutes**

11 U.S.C. § 548(B)(i)...........................................................................................11

Del. Code Ann. tit. 6, § 73-605(e) .......................................................................14

Fed. R. Civ. P. 15 .................................................................................................15

Georgia Uniform Securities Act ...........................................................................13

O.C.G.A 10-5-58(g)(1) .........................................................................................13

O.C.G.A. § 13–6–11 .............................................................................................22

Rule 9(b) ........................................................................................................12, 16, 21

Tex. Gov't Code § 4008.062(a)(1) .......................................................................15

Tex. Gov't Code § 4008.062(b)............................................................................15

Marc Abrams (the "Trustee" or "Plaintiff"), solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Lucky Bucks Holdings LLC ("Holdings") and as assignee of causes of action previously belonging to Holdings' creditors, respectfully submits this memorandum of law in opposition to the motion of defendant Shafik Kassam ("Kassam") to dismiss the First Amended Complaint (the "Motion") [D.I. 64].[1]

## PRELIMINARY STATEMENT[2]

1.     The Amended Complaint explains how Kassam played a key role across operating Lucky Bucks, assisting with the Note marketing process, and approving the Note Issuance and subsequent Holdings Distributions in his capacity as a board member of Holdings, all while he was engaged in scheme to strip Lucky Bucks' assets.

2.     Among other things, Kassam helped Defendant Damani steal location contracts from Lucky Bucks, use fake players to pump the EBITDA of those location contracts, and sell the location contracts back to Lucky Bucks at inflated prices.  This scheme played a central part in tanking Lucky Bucks' financial performance—and consequently, the value of Holdings' sole asset—all while Kassam was executing documents necessary for the Note transaction to be effected and helping furnish information for the Notes marketing process.  In light of his participation in Damani's scheme, Kassam, one of three members of Holdings' board, knew the representations made to the Noteholders in the marketing materials and the Note Purchase Agreement were false.  As a reward for approving and executing the transactions, Kassam received $750,000 from the Holdings Distributions.

---

[1]  Citations to "D.I." refer to the docket of this adversary proceeding unless otherwise indicated.
[2]  Capitalized terms not defined in this preliminary statement bear the meanings ascribed below.

3.      Kassam's motion to dismiss—which does little more than incorporate by reference arguments of other Defendant groups (even when the allegations against Kassam and those Defendants differ)—should be denied.

## SUMMARY OF ARGUMENT

4.      ***Fraudulent Transfer Claims***.  Kassam purports to adopt the arguments made by the Trive Defendants and Damani Defendants with respect to the fraudulent transfer claims, while offering no new arguments himself.  Kassam's arguments fail for the same reason the other Defendants' arguments fail.

5.      First, Kassam argues (adopted from Trive) that the Trustee lacks standing to bring fraudulent-transfer claims in his capacity as assignee of the Noteholders because fraudulent-transfer claims may only be asserted by an estate representative until abandoned.   But the Noteholders' fraudulent-transfer claims are asserted *in the alternative* to the Trustee's estate claims for fraudulent transfer, and are therefore subject to first considering whether the estate claims for fraudulent-transfer are viable.

6.      Second, Kassam argues (adopted from Trive) that all of the fraudulent-transfer claims fail because the Noteholders ratified the challenged transfers.  In doing so, Kassam skips over the most important element required for a  ratification defense, namely, full knowledge of all material facts.  The Amended Complaint alleges that Kassam and others concealed critical facts from the Noteholders about the true financial and operating condition of Lucky Bucks.  There is no authority for finding ratification in the face of these allegations, especially at the pleadings stage.

7.      Third, Kassam's argument (adopted from Damani) to dismiss the fraudulent transfer claims against him is premised on the (incorrect) assertion that the Amended Complaint does not plead *Kassam's* fraudulent intent, or badges of fraud that apply to *Kassam's* conduct.  But

even if Kassam were an innocent bystander, this argument misses the point entirely.  It is black letter law that the only relevant intent is that of the debtor, Holdings.  And Kassam does not contest (nor can he now on reply) that the Amended Complaint sufficiently alleges the intent of Holdings, or other individuals whose knowledge can be ascribed to Holdings.

8.      Fourth, Kassam argues (adopted from Damani) that the Trustee does not state a claim for constructive fraudulent transfer because the *Noteholders* received reasonably equivalent value from the *Note Issuance*.  Once again, this completely misses the point.  Kassam presents no argument that *Holdings* received reasonably equivalent value for the *Holdings Distributions—i.e.*, the alleged fraudulent transfers.  Nor can he, as black letter law makes clear that dividends paid to stockholders are made without the exchange of any value.

9.      ***Improper Dividends***.  Kassam moves to dismiss the improper dividends claim, but that claim is not asserted against him.  Accordingly, he has no standing to move to dismiss.

10.     ***Statutory and Common Law Fraud Claims***.  As to securities fraud, Kassam purports to adopt *Damani's* "argument that the Complaint fails to specifically allege any misrepresentations by" *Kassam*.  Except, Damani makes no arguments about Kassam's misrepresentations at all.  In any event, the well-pleaded allegations that Kassam assisted with marketing, and approved and helped execute the transaction, all while simultaneously helping Damani strip Lucky Bucks' assets states a claim for statutory and common law fraud.

11.     For these reasons and those set forth below, the Motion should be denied.

## RELEVANT BACKGROUND

### A.      Kassam Is Appointed To Lucky Bucks' Board After The GLC Bans Damani

12.     Damani founded Lucky Bucks in 2011 as a business premised on ownership of coin-operated amusement machines ("COAMs") located in gas stations, convenience stores, and other retail locations in the state of Georgia.  First Amended Complaint [D.I. 58] ("Amended

Complaint" or "FAC") ¶¶ 62-70.

13.    On June 2, 2020, as a result of allegations that Damani offered illegal inducements to a COAM location license holder, the Georgia Lottery Corporation ("GLC"), Lucky Bucks' regulator, barred Damani from participating in Lucky Bucks' operations.  *Id.* ¶¶ 76-79.  After Damani was forced to step back, he exercised his right as minority shareholder to appoint Defendant Shafik "Tony" Kassam as his designee to Lucky Bucks' board.  *Id.* ¶¶  80, 85.

### B.    Trive Creates A Plan To "Take Cash Out Of The Business," Damani Approves The Transaction And Plays A Role In Marketing

14.    In July 2021, Trive orchestrated a dividend recapitalization of Lucky Bucks (in which it paid out funds to itself and other Defendants), *id.* ¶ 110, and then shortly thereafter, in the face of declining results at Lucky Bucks, began exploring additional ways it could "***take cash out of the business***," including through additional "unrestricted dividends," *id.* ¶ 120.  There was only one problem:  Lucky Bucks was already so heavily indebted that it could not raise additional debt to fund additional payments to shareholders.  *Id.* ¶ 121.  Trive accordingly came up with a plan to create a "super holdco"—Lucky Bucks Holdings LLC ("Holdings")—which could incur still more debt, and purportedly without violating the covenants in Lucky Bucks' existing credit facilities. *Id.* ¶ 122.  Holdings would have no operations and no assets other than its equity interest in Lucky Bucks, and thus Holdings' ability to service and ultimately repay its debt was entirely dependent on the performance of Lucky Bucks' business.  *Id.*  As with Lucky Bucks, Damani appointed Kassam as his designee to the board of Holdings.  *Id.* ¶ 125.

15.    Defendants worked together with Trive and investment banking firm Houlihan Lokey ("Houlihan") to market an investment in notes that would be issued by Holdings for purposes of funding a distribution to Holdings' shareholders (the "Holdings Distributions").  *Id.* ¶¶ 129-30, 200-03.  As is typical in these engagements, while Houlihan prepared the Confidential

Information Memorandum ("CIM") used to market the notes and Trive led the process, Kassam and other members of management helped provide information for the CIM.  *Id.* ¶ 131.  In the course of diligence, Kassam made representations to potential Noteholders and directed the Company and its employees to make representations to potential Noteholders to induce them to purchase the Notes.  *Id.* ¶ 135.  Kassam was kept in the loop throughout the Note marketing process.  *Id.* ¶ 163.

16.     At the same time, Kassam remained intimately involved with the Company, in his dual role as COO of Lucky Bucks, and board member of both Lucky Bucks and Holdings, which placed him in a position to know that many of the CIM's representations were false.  For example, Kassam would receive updates from the Georgia Lottery Corporation ("GLC") when locations were being cancelled.  FAC ¶ 108.  Indeed, as was later revealed, Kassam himself instructed Lucky Bucks employees to file "no challenge" notices to location owners cancelling their contracts, notwithstanding the CIM's promises of stability and safety of location contracts.  *Id.* ¶ 146.  Kassam also knew that, despite promises to Noteholders that Lucky Bucks was a "model COAM operator" doing things the right way, Damani was still involved with and directing the Company's M&A strategy, and exerting power via Kassam.  *Id.* ¶ 182-84.

17.     Kassam also executed key documents that were required to be executed as conditions precedent to the Note issuances under the NPA, including a written consent and Holdings' Incumbency Certificate.  *Id.* ¶ 193.

18.     The Note marketing process was successful.  In November 2021 and January 2022, Holdings issued $250 million in aggregate principal amount of unsecured notes due 2028 (the "Notes," and the purchasers thereof, the "Noteholders") pursuant to a Note Purchase Agreement dated November 29, 2021 (the "NPA").  *Id.* ¶ 192.

C.     **The Holdings Distributions Render Holdings Insolvent, And Kassam's Wrongdoing Is Revealed To The Noteholders**

19.     Shortly after issuing the Notes, Holdings made the Holdings Distributions, approximately $750,000 of which went to Kassam.  *Id.* ¶ 203.  Holdings received no value on account of the Holdings Distributions, and as a result thereof, was rendered insolvent and left with unreasonably small capital to repay the Notes.  *Id.* ¶ 17.  That is because Holdings' only asset— Lucky Bucks—was itself already severely over-levered and in decline at the time the Holdings Distributions were made, rendering its equity essentially worthless (if it had any value at all) and making it next to impossible that Lucky Bucks would ever generate enough cash to pay back Holdings' debts in addition to its own.  *Id.* ¶¶ 204-11.

20.     As was later revealed in a 2024 lawsuit filed by the post-Chapter 11 successor to Lucky Bucks, during the entire time that Trive was purportedly in control of Lucky Bucks, Damani and Kassam were methodically stripping assets from Lucky Bucks and undermining Lucky Bucks for the benefit of their competing businesses.  *Id.* ¶¶ 238-40.  Among other things, Damani and Kassam would direct locations with expiring contracts to enter into contracts with their businesses, divert new opportunities away from Lucky Bucks, and sell diverted locations back to Lucky Bucks at inflated prices (based on the use of fake players artificially increasing pre-sale EBITDA).  *Id.* ¶¶ 241-59.  One of Damani and Kassam's co-conspirators gave extensive deposition testimony about this scheme in October 2022 in arbitration proceedings.  *Id.* ¶¶ 228-29.  As it turns out, Kassam was aware of this scheme the entire time that he was kept up to date on the Note marketing process and assisted with providing information for the CIM.  *Id.* ¶¶ 131, 163.

21.     Damani and Kassam's misconduct helped send Lucky Bucks and Holdings into a downward spiral, culminating in their chapter 11 filing in June 2023.  *Id.* ¶ 234.  Lucky Bucks emerged in October 2023, but this Court converted Holdings' Chapter 11 case to Chapter 7 and

appointed Plaintiff Trustee of the Holdings estate. *Id.* ¶¶ 235-37. Subsequently, the Noteholders assigned their claims arising out of or in connection with the Notes to the Trustee. *Id.* ¶ 35. Kassam remained in complete control of Lucky Bucks' operations while it was in Chapter 11. *Id.* ¶ 234.

## STANDARD OF REVIEW

22.    On review of a motion to dismiss for failure to state a claim, "the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Hartig Drug Co. Inc. v. Senju Pharma. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016).[3] Accordingly, dismissal is proper only when a complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017).

## ARGUMENT

**I.     The Amended Complaint States Claims For Fraudulent Transfer**

    **A.     The Trustee Has Standing To Assert Fraudulent Transfer Claims**

23.    In one short paragraph, Kassam purports to adopt by reference the arguments made by the Trive Defendants that "the Noteholders lack statutory authority to bring the fraudulent transfer claims purported to be assigned to the Trustee." Mot. at 5. Not only does this incorporation fail to state the basis for the supposed lack of statutory authority, but it also incorrectly claims that the Noteholders are the ones "bring[ing] the fraudulent transfer claims," and not the Trustee to whom they were assigned. *Id.*

24.    In any event, like the Trive Defendants, Kassam is wrong. "[A] trustee may assert claims assigned to it by a bankrupt's creditors for the benefit of the estate, because those claims

---

[3] Unless otherwise noted, all internal citations, quotation marks, and brackets in case citations are omitted.

become property of the estate under § 541(a)(7)." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 459 (2d Cir. 2008). The Noteholders have assigned their claims to the Trustee, in an assignment expressly approved by the Court. *In re Lucky Bucks Holdings LLC*, Case No. 23-10756 (KBO), [D.I. 76] (Bankr. D. Del.).

25.     Additionally the Trustee pleads the assigned claims in the alternative to the Trustee's estate causes of action for fraudulent transfer, which only become operative if those Counts fail and, thus, are no longer viable. As a result, the assigned claims do not implicate the Trustee's "exclusive" standing to bring fraudulent-transfer claims under section 544. *See In re Gronczewski*, 444 B.R. 526, 534 (Bankr. E.D. Pa. 2011) ("[The] trustee's exclusive right to maintain [a] fraudulent transfer action is not in perpetuity and [an] individual creditor may resume prosecution of actions when the trustee no longer has a viable cause of action.").

26.     Accordingly, for these reasons and for the additional reasons set forth in the Trustee's memorandum of law in opposition to the Trive Defendants' motion to dismiss the Amended Complaint and in the Trustee's memorandum of law in opposition to the Management Defendants' motion to dismiss the Amended Complaint, the argument lacks merit. Trustee's Opp. to Trive Defendants' Mot. § I.A.; Trustee's Opp. To Management Defendants' Mot. § I.A. The Trustee incorporates by reference all other arguments and authorities set forth therein.

### B.     The Fraudulent Transfer Claims Are Not Barred By Consent, Ratification, Estoppel, or Similar Doctrines

27.     Similarly, Kassam seeks to adopt by reference the arguments made by the Trive Defendants that "the fraudulent transfers claims are barred because the Noteholders consented to, and ratified, the Holdings distributions in the Note Purchase Agreement." Mot. at 5.

28.     Once again, like the Trive defendants, Kassam is wrong. As a matter of law, ratification requires "inten[t] to ratify the wrongful act with full knowledge of all material facts."

*In re Extended Stay, Inc.*, 2020 WL 10762310, at \*74 (Bankr. S.D.N.Y. 2020).  The defense cannot apply where, as here, the plaintiff alleges that the purported ratifiers (*i.e.*, the Noteholders) were misled as to those facts.  *See In re Physiotherapy Holdings*, 2016 WL 3611831, at \*12 (Bankr. D. Del. June 20, 2016) (rejecting ratification defense because there was "a material dispute as to whether or not the Senior Noteholders had knowledge of the material facts surrounding the transaction").

29.      Accordingly, for these reasons and for the additional reasons set forth in the Trustee's memorandum of law in opposition to the Trive Defendants' motion to dismiss the Amended Complaint and in the Trustee's memorandum of law in opposition to the Management Defendants' motion to dismiss the Amended Complaint, this argument that lacks merit.  Trustee's Opp. to Trive Defendants' Mot. § I.B; Trustee's Opp. to Management Defendants' Mot. § I.B. The Trustee incorporates by reference all other arguments and authorities set forth therein.

### C.      The Trustee Adequately Alleges Intentional Fraudulent Transfer Claims

30.      Kassam also argues that the Trustee fails to state a claim for intentional fraudulent transfer because the allegations as to Kassam are "general," and purports to incorporate Damani's arguments that there are no allegations tying Kassam to alleged misrepresentations or badges of fraud.  Mot. at 5.

31.      But like Damani, Kassam's arguments entirely miss the point.  It is black letter law that "***[t]he only relevant intent is that of the debtor***."  *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 300 (D. Del. 2012) (emphasis added).  Kassam does not contest that the Trustee has alleged sufficient badges of fraud regarding the *Debtors'* intent.  Accordingly, he has waived this argument and is precluded from raising it for the first time on reply.  *White Winston Select Asset Funds, LLC v. Good Times Restaurants, Inc.*, 2020 WL 4015327, at \*3-4 (D. Del. July 16, 2020) (On a motion to dismiss, "[t]he court will not entertain arguments that were not asserted

in the movant's opening brief but reserved for the reply.").

32.     Indeed, the Amended Complaint alleges numerous badges of fraud including: (1) the transfers were to insiders, FAC ¶¶ 15 fn.3, 36, 51, 82-83, 86, 123-28, as the insiders were all either direct recipients of the Holdings Distributions or subsequent transferees, *id.* ¶¶ 202-03, 276, 278-80, from whom the Trustee may avoid a transfer; (2) no reasonably equivalent value was made in consideration for the transfers, *id.* ¶¶ 275, 288, 304, 316;  (3) Holdings was or became insolvent upon making the transfers, *id.* ¶¶ 20, 27, 29, 112, 116-17, 145, 204, 240;  (4) the transfer was of substantially all of Holdings' assets, *id.* ¶¶  116, 201, 209, 238-59, 317; (5) the transfers occurred shortly after a substantial debt was incurred, *id.* ¶¶ 14, 192, 200-01.  Badges of fraud are not exhaustive and courts may, and do, consider other factors, *In re Syntax Brillian Corp.*, 2016 WL 1165634, at *4 (Bankr. D. Del. Feb. 8, 2016) ("The badges-of-fraud analysis is not a check-the-box inquiry, and a court may consider other factors relevant to the alleged fraudulent transaction."), such as misrepresentations made to creditors in inducing the loan that funds the purportedly fraudulent transfer.  *See e.g., In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *4 (Bankr. D. Del. Feb. 28, 2019).

33.     Furthermore, even though not required, the Amended Complaint also alleges Kassam specifically made or contributed to misrepresentations regarding (1) the lack of attrition and stability of Lucky Bucks' location contracts, FAC ¶¶ 24, 148, 159; (2) the use of pro forma EBITDA figures to conceal Lucky Bucks' declining performance, *id.* ¶¶ 9, 30(d), 140; (3) Lucky Bucks' relationship with the GLC, *id.* ¶¶ 141, 182; and the materials provided in due diligence (*id.* ¶ 135).

34.     The Trustee additionally incorporates by reference all applicable arguments and authorities regarding Counts 1 and 3 raised in his memorandum of law in opposition to the Damani

Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Damani Defendants' Mot. § I, his memorandum of law in opposition to the Trive Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Trive Defendants' Mot. § I.B, and his memorandum of law in opposition to the Management Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Management Defendants' Mot. § I.C.

### D.    The Trustee Adequately Alleges Constructive Fraudulent Transfer Claims

35.    Next, Kassam purports to adopt Damani's arguments that the Trustee fails to state a claim for constructive fraudulent transfer due to a purported failure to plead Holdings' assets were worthless or that Holdings was insolvent.  Mot. at 5.  Once again, like Damani, Kassam is wrong and misses the point.

36.    Damani's arguments—which Kassam incorporates—relating to reasonably equivalent value  focus on the ***note transaction*** between the Noteholders and Holdings, but present no argument as to whether Holdings received reasonably equivalent value for the ***Holdings Distributions***—*i.e.*, the alleged fraudulent transfers.  But the only transfer for which reasonably equivalent value matters is that between the debtor-transferor and the transferee, *i.e.*, Holdings as transferor and LBVI as initial transferee.  See 11 U.S.C. § 548(B)(i) ("[*D*]*ebtor* voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation") (emphasis added).

37.    As to insolvency generally, the Damani Defendants' own case law, which Kassam purportedly adopts, emphasizes that "a close analysis of insolvency is not necessary at this stage in the proceeding."  *In re Our Alchemy, LLC*, 2019 WL 4447545, at *6 (Bankr. D. Del. Sept. 16, 2019).  In any event, the Amended Complaint provides extensive allegations regarding Holdings' insolvency including alleging that in the span of six months, Holdings and Lucky Bucks on a consolidated basis incurred $450 million of new obligations, the proceeds of which did not stay

with the business but instead went to line shareholders' pockets at the same time that the underlying business was rapidly failing.  FAC ¶¶ 9, 19-20, 113, 206-09. These allegations demonstrate that Holdings was insolvent (or at the very least rendered insolvent) at the time of each of the Holdings Distributions.

38.    The Trustee additionally incorporates by reference all applicable arguments and authorities regarding Counts 2 and 4 raised in his memorandum of law in opposition to the Damani Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Damani Defendants' Mot. § II.

## II.    The Unlawful Dividends Claim Does Not Apply To Kassam

39.    Kassam purports to adopt the Trive Defendants' and the Damani Defendants' arguments to dismiss the improper dividend claim.  Mot. at 5-6.  However, no unlawful dividend claim is asserted against Kassam.  FAC ¶¶ 326-28.  Accordingly, Kassam lacks standing to move to dismiss the unlawful dividend claim, as a defendant may not move to dismiss claims not asserted against him.  *Rodriguez v. City of Camden*, 2013 WL 530863, at *4 (D.N.J. Feb. 11, 2013) ("Defendants cannot move to dismiss claims that were not brought against them").

## III.    The Securities Fraud Claims Are Adequately Pleaded

40.    Kassam purports to adopt "Mr. Damani's argument that the [Amended] Complaint fails to specifically allege any misrepresentations by Mr. Kassam to the Noteholders."  Mot. 6.  As a preliminary matter, Damani ***did not make any arguments about statements by Kassam***. Therefore, even if Damani's arguments were correct as to Damani (they are not), they do not help Kassam, who made his own, separate misstatements, and played a critical part in approving the fraudulent transaction through his role on Holdings' board.

41.    The Amended Complaint states a claim for securities fraud against Kassam. "[T]o satisfy Rule 9(b), a plaintiff must state the circumstances of the alleged fraud with sufficient

particularity to place the defendant on notice of the precise misconduct with which [it is] alleged." *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010).

42.     The Amended Complaint meets this standard as it alleges Defendants, including Kassam, made misrepresentations to the Noteholders concerning Lucky Bucks' financial health. *See* FAC ¶¶ 334-36, 338-39, 341.   Kassam acknowledges that there are numerous factual allegations about Kassam's participation, Mot. at 6, such as his role in "approve[ing] the transactions associated with the issuance of the Notes." Mot. at 7; *see also* FAC ¶ 339.  In addition, the Trustee alleges that Kassam "directed Holdings to enter into the note transaction and make representations in the [Note Purchase Agreement]." FAC ¶ 341.  This alone is sufficient to survive the motion to dismiss as, in interpreting the federal analogue of the Georgia Uniform Securities Act, courts have held that corporate executives are liable as control persons when they "had intimate knowledge of the business, or otherwise had decision-making power." *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 907-08 (E.D. Pa. 2018) (collecting cases); *see also Rochez Bros. v. Rhoades*, 527 F.2d 880, 891 (3d Cir. 1975) (noting a corporate executive was a "controlling person" when he "had the power to influence the policies and actions" of other individuals).  Here, Kassam, as COO of Lucky Bucks and member of both Holdings and Lucky Bucks' boards, was intimately familiar with Holdings, and had the power to influence its statements.  FAC.  ¶¶ 48, 341.  And Georgia law, like federal law, provides for liability against controllers like Kassam for securities fraud violations.  *See* O.C.G.A 10-5-58(g)(1) (establishing liability for an "executive officer, or director" of the seller, "unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known" about the wrongful conduct).

43.     Kassam's reliance on out-of-Circuit case *In re Enron Corp. Securities, Derivative*

& *"ERISA" Litigation*, 540 F. Supp. 2d 759 (S.D. Tex. 2007) is inapposite, as the Amended Complaint does provide, "as to each individual defendant, the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *In re Enron Corp. Sec.*, 540 F. Supp. 2d at 765. The Amended Complaint alleges that Kassam helped provide information used in the CIM, which was riddled with misstatements including (1) the lack of attrition and stability of Lucky Bucks' location contracts, FAC ¶¶ 24, 148, 156-60; (2) the use of pro forma EBITDA figures to conceal Lucky Bucks' declining performance, *id.* ¶¶ 9, 30(d), 140; and (3) Lucky Bucks' relationship with the GLC, *id.* ¶¶ 141, 182. It further sets out how Kassam had information that all of these representations were false, in light of his participation in Damani's unlawful asset-stripping scheme. *Id.* ¶¶ 250-59. The Amended Complaint provides significant details about "how the fraudulent scheme operated," *see In re Enron Corp. Sec.*, 540 F. Supp. 2d at 765; FAC ¶¶ 155-203, discusses the fraudulent activity in states including Georgia, Texas, and Delaware, *see id.* ¶¶ 339-41, and presents an extensive description of the parties who participated*, see id.* ¶¶ 36-55. Therefore, even under Kassam's cited authority, the Trustee's allegations are sufficient.

## IV.    The Securities-Fraud Claims Are Not Time-Barred

44.    Kassam's contention that the Trustee's claims for securities fraud are time-barred similarly lacks merit. Mot. 7-8. The Trustee has plausibly alleged securities fraud under both Delaware and Texas law, and the claims fall within the applicable limitations periods.

45.    Delaware law provides that "[n]o person may sue" for securities fraud "more than 3 years after the contract of sale." Del. Code Ann. tit. 6, § 73-605(e). Holdings issued the Notes in November 2021 and January 2022. FAC ¶ 14. The Trustee initiated this action in September 2024, comfortably within Delaware's limitations period, which would have expired in November 2024 at the earliest. *See* Del. Code Ann. tit. 6, § 73-605(e).

46.     Nor does Kassam's argument that the Delaware securities-fraud claim is time-barred because the Trustee first alleged it in the Amended Complaint withstand scrutiny.  Mot. 8.  While the Trustee added the Delaware cause of action in the Amended Complaint, the original complaint alleged securities fraud based on the exact same conduct, though under Georgia law.  In these circumstances, it is the filing date of the original Complaint—not the Amended Complaint—that governs the timeliness of the Delaware securities-fraud claim.  "[A]n amendment to a pleading relates back to the date of the original pleading where 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012); *see* Fed. Civ. P. 15(c)(1)(B); Fed. R. Bank. P. 7015 ("Fed. R. Civ. P. 15 applies in an adversary proceeding.").  The Delaware securities-fraud claim involves the same "common core of operative facts" alleged in the original Complaint, the timeliness of which Kassam does not dispute.  *See Glover,* 698 F.3d at 145; FAC ¶¶ 329-43; Mot. 7-8.  The original Complaint likewise provided Kassam with "fair notice of the general fact situation"—that Kassam played a crucial role in approving a fraudulent transaction and making misrepresentations to the Noteholders—"and the legal theory upon which the" Amended Complaint proceeds—securities fraud.  *See Glover*, 698 F.3d at 146.

47.     The Trustee's Texas securities fraud claim is also timely.  Although Texas law—like Delaware—bars certain securities fraud actions filed "more than three years after the date of sale," Tex. Gov't Code § 4008.062(a)(1), that limitation does not apply to claims under section 4008.052, which the Trustee invokes here, *see* FAC ¶ 331.  When alleging a violation of section 4008.052, the three-year period runs from "the date of *discovery* of the untruth or omission, or after the date discovery should have been made by the exercise of reasonable diligence."  Tex. Gov't Code § 4008.062(b) (emphasis added).  Because the fraud orchestrated by Kassam and

others permeated both the diligence process and Notes' issuance, the Noteholders could not have

reasonably discovered Kassam's misconduct before Holdings' default and subsequent petition for

bankruptcy protection in June 2023.  *See* FAC ¶¶ 234, 334-36.  Accordingly, the limitations period

does not lapse until June 2026—well after the Trustee filed both the initial and amended

complaints.  But even if the clock started as early as November 2021, the Trustee's claim would

remain timely because it relates back to (and indeed, is based on the exact same factual core as) to

the securities fraud claim asserted in the opening Complaint.  *See supra*, ¶ 2; Fed. Civ. P.

15(c)(1)(B).

## V.     The Complaint's Common Law Claims Are Adequately Pleaded

48.     Similar to what he does for the security fraud claims, Kassam purports to adopt "the

arguments made by the Trive Defendants as to the common law fraud and negligent

misrepresentation claims."  Mot. at 8.  But once again, as a preliminary matter, the Trive

Defendants *did not make any arguments about statements by Kassam*.  Therefore, even if the

Trive Defendants' arguments were correct as to the Trive Defendants (they are not), they do not

help Kassam, who made his own misstatements, had separate scienter, and played his own role in

approving the fraudulent transaction through his role on Holdings' board.

49.     To state a claim for fraud, a complaint must plead: "1) a false representation,

usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the

representation was false, or was made with reckless indifference to the truth; 3) an intent to induce

the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable

reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance."  *In re

Med. Wind Down Holdings III, Inc.*, 332 B.R. 98, 102 (Bankr. D. Del. 2005).  A claim for negligent

misrepresentation "requires the same elements, except the plaintiff need not demonstrate that the

misrepresentation was made knowingly or recklessly."  *Id.*  Further, under Rule 9(b), "the Trustee

must plead fraud with particularity," but "intent, knowledge and other conditions of a person's mind may be alleged generally.'" *In re Glencoe Acquisition, Inc.*, 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015).

50.     Here, the fraud is straightforward:  Among other things, Kassam helped prepare the CIM, which had at least three misrepresentations.  FAC ¶¶ 130-31.  These misrepresentations include: (1) the lack of attrition and stability of Lucky Bucks' location contracts, *id.* ¶¶ 24, 148, 156-60; (2) the use of pro forma EBITDA figures to conceal Lucky Bucks' declining performance, *id.* ¶¶ 9, 30(d), 140; and (3) Lucky Bucks' relationship with the GLC, *id.* ¶¶ 141, 182.  If a "misrepresentation is made for the purpose of having it communicated, the maker is subject to liability." *Clark v. Davenport*, 2019 WL 3230928, at *13 (Del. Ch. July 18, 2019) ("For example, one who, to aid a friend in selling his land, gives him for transmission to a prospective purchaser a fraudulent misrepresentation as to the quantity or quality of the land, is subject to liability to the purchaser under the rule stated in this Section.").[4]  Kassam is therefore liable for the misrepresentations he caused to appear in the CIM.

### A.     The Alleged Misstatements Were False Statements Of Fact Or Otherwise Actionable Misrepresentations

51.     Kassam incorporates the Trive Defendants' arguments that "[m]ost of the alleged misstatements were not false statements of fact." *See* Trive Defendants' Mot. ¶¶ 61-70.  But as set forth below, the Amended Complaint alleges numerous false representations of fact.  And even for statements that could be considered opinions, estimates, or projections, the Amended Complaint alleges that Kassam made those statements with an intent to deceive, and thus those statements are actionable.  *See In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 458 (Bankr. D. Del. 2006) (finding plaintiff stated a claim where party made "false statements with an intent to deceive …

---

[4]  Kassam does not contest this principle directly or via incorporation of the Trive Defendants' arguments.

regardless of whether the statements expressed opinions, estimates, or projections of the future”); *see also Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *13 (Del. Ch. Jan. 26, 2024) (“False forecasts cannot be considered mere puffery or future predictions if they were made with an intent to deceive, even if the statements were presented as opinions, estimates or projections.”).

52.     ***Lack of attrition and stability of Lucky Bucks’ location contracts.***  The Amended Complaint alleges the CIM, to which Kassam contributed information, misrepresented Lucky Bucks’ attrition and the stability of location contracts. FAC ¶¶ 24, 148, 156-60.  But Kassam knew that Lucky Bucks would routinely file “no challenge” notices *at his direction*, allowing location owners to quickly switch to competing license holders—including entities *he controlled with Damani*.  *Id.* ¶¶ 146, 240.  Moreover, Kassam did not provide any qualifying information to cure the Noteholders’ mistaken belief.

53.     ***Use of pro forma EBITDA figures to conceal Lucky Bucks’ declining performance.***  The Amended Complaint alleges that the CIM, to which Kassam contributed information, used *pro forma* EBITDA numbers “intentionally to hide [Lucky Bucks’] poor performance in the second half of 2021” from the Noteholders.  FAC ¶¶ 9, 30(d), 140, 173.  But Kassam knew that the *pro forma* EBITDA figure—which was derived from pre-acquisition EBITDA for acquisitions made in 2021—was misstated in light of his role in Damani’s scheme to steal locations from Lucky Bucks and sell them back at inflated prices through the use of fake players.  *Id.* ¶¶ 250-59.

54.     ***Lucky Bucks’ relationship with the GLC.***  The CIM, to which Kassam contributed information, touted Lucky Bucks’ purportedly “strong relationship” with the GLC and stated that the GLC saw Lucky Bucks as a “model COAM operator from the State’s perspective.”  FAC ¶¶ 141, 182.  But, Kassam knew these statements were false because he was actively “diverting

location contracts to B-Side businesses" and "stealing COAMs from Lucky Bucks for use in [his] B-Side Businesses." *Id.* ¶¶ 250-59.

**B.      The Amended Complaint Adequately Alleges Justifiable Reliance**

55.      Kassam incorporates the Trive Defendants' argument that "[e]ven if the alleged misrepresentations were actionable, the Noteholders could not have justifiably relied upon them." *See* Trive Defendants' Mot. ¶¶ 76-78.   This argument fails procedurally and substantively. Procedurally, the argument fails because the Trive Defendants raise factual arguments that are not suitable for resolution on a motion to dismiss.  *See* Trustee's Opp. to Trive Defendants' Mot. § IV.A.2; *see also Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 431, 444-45 (S.D.N.Y. 2012) (cited at Trive Defendants' Mot. ¶ 77) ("reasonable reliance is often a question of fact for the jury rather than a question of law for the court").   And the argument fails substantively because the Amended Complaint in no way affirms the Noteholders' awareness of Kassam's fraud, and indeed describes in detail his co-defendants' efforts to prevent Noteholders from learning the truth.  *See Arwood v. AW Site Servs., LLC*, 2022 WL 705841, at *24 (Del. Ch. Mar. 9, 2022) ("A failure to discover [ ] fraud through due diligence does not excuse it" because "[t]here is no defense of contributory negligence to an intentional tort, including fraud").

**C.      The Amended Complaint Alleges That Kassam Is Liable For Fraud By Omission**

56.      Kassam incorporates the Trive Defendants' argument that "[he] cannot be liable for fraud by omission."  *See* Trive Defendants' Mot. ¶¶ 79-80.  This argument ignores the well-established principle that a party has a "duty to disclose" any information necessary "to prevent statements actually made from being misleading." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  Although the representations in the CIM, to which Kassam contributed information, were affirmatively misleading in themselves, they were likewise misleading because

Kassam omitted corrective information that could clarify the statement.  *See* Trustee's Opp. to Trive Defendants' Mot. § IV.A.3.

57.     Indeed, Kassam knew that much of the information in the CIM could not be true in light of his role in Damani's asset-stripping scheme.  FAC ¶¶ 250-59.  *See Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 708–09 (D. Del. 2010) (plaintiff stated a claim for common law fraud by omission against seller and president of seller's company because, *inter alia*, president approved the transaction but failed to disclose material facts that would have prevented seller's misrepresentations from inducing plaintiff to enter the transaction).

### D.      The Amended Complaint's States A Claim For Negligent Misrepresentation

58.     Kassam incorporates the Trive Defendants' argument that "[the] negligent misrepresentation claim fails because [he] did not owe a "duty" of care to the Noteholders.  *See* Trive Defendants' Mot. ¶¶ 81-82.  That is not the law.  Delaware law imposes a "pecuniary duty to provide accurate information" whenever "the information provider expects to profit from the course of conduct in which he provides the information."  *Lieberman v. BeyondTrust Corp.*, 2020 WL 1815547, at *4 (D. Del. Aug. 9, 2020).  Georgia law likewise does not restrict negligent-misrepresentation claims in the manner the Trive Defendants—and the Kassam by incorporation—claim, and in fact has no duty element at all.  *See First Bank of Georgia v. Robertson Grading, Inc.*, 761 S.E.2d 628, 638 (Ga. 2014).  And under New York law, a party may be liable for negligent misrepresentation if it has "an awareness … that [its statement] is to be used for a particular purpose," "reliance by a known party on the statement in furtherance of that purpose," and "some conduct by the maker of the statement linking it to the relying party and evidencing its understanding of that reliance."  *Marcellus Const. Co., Inc. v. Vill. of Broadalbin*, 302 A.D.2d 640 (N.Y. App. Div. 3d Dep't 2003).  All of these elements are clearly satisfied with respect to

Kassam's furnishing of information to the Noteholders for the express purpose of extending credit to Holdings.

### E.    The Amended Complaint's Fraud Allegations Satisfy Rule 9(b)

59.    Kassam incorporates the Trive Defendants' argument that the claims sounding in fraud lack the particularity required by Rule 9(b).  *See* Trive Defendants' Mot. ¶¶ 83-87.  This argument falls short.  "To satisfy Rule 9(b), a plaintiff must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010).  The Amended Complaint unquestionably does so—it alleges that Kassam made specific misrepresentations about Lucky Bucks in the CIM furnished to the Noteholders.  *See supra* § V.A.

60.    The Amended Complaint's allegations about specific misrepresentations made by Kassam do not amount to impermissible "group pleading," and in any event, "there is no *per se* rule that group pleading cannot satisfy Rule 9(b)," "provided [the] plaintiff alleges sufficiently particularized allegations," as the Amended Complaint does here.  *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004).[5]  Furthermore, Rule 9(b)'s heightened pleading standard may be relaxed when "factual information regarding the alleged fraud is peculiarly within the defendant's knowledge."  *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 455 (Bankr. D. Del. 2006).  Because Kassam's fraud does not stem from representations made directly to the Noteholders, the Trustee "should not be expected to describe the individual defendants['] actions in committing the fraud with great specificity."  *Id.*

---

[5]  The Trive Defendants provided no support for their assertion (Trive Defendants' Mot. ¶ 86) that these allegations fail to satisfy Rule 9(b) merely because the Amended Complaint does not specify which of the Noteholders attended these calls.   The Amended Complaint's detailed allegations about the diligence calls and the specific misrepresentations that Mr. Kassam made on them have clearly given Mr. Kassam and the other defendants "notice of the precise misconduct with which they are charged."  *Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1072, 1076 (D. Del. 2013).

61.    The Trustee additionally incorporates by reference all other applicable arguments and authorities regarding requisite intent for Counts 9 and 10 raised in his memorandum of law in opposition to the Trive Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Trive Defendants' Mot. § IV.A.

## VI.    Kassam's Remaining Arguments Are Meritless

62.    The Trustee has sufficiently pleaded claims for attorney's fees and punitive damages under Georgia law.  A bankruptcy court is entitled to rely on state law in granting attorney's fees and punitive damages where the bankruptcy code does not otherwise provide such measures. *In re Lyon*, 644 B.R. 211, 214 (Bankr. D. Or. 2022).  Kassam's request to dismiss these claims hinges on his incorporated arguments that the claims under Georgia law must be dismissed, but, for reasons set forth above, those claims are properly pleaded.  *See supra* §§ I, III, IV.

63.    Further, though Kassam attempts to adopt the Trive Defendants' arguments with respect to attorney's fees and punitive damages, those arguments are partly based on its extraterritoriality argument.  Nowhere in his motion to dismiss does Kassam allege that the Georgia claims are impermissibly extraterritorial as to him, nor could he, as he was a Georgia resident at all relevant times.  FAC ¶ 154. Additionally, via the Damani Defendants' arguments, Kassam asserts that the Georgia attorney's fees and punitive damages statutes are not available for the negligent misrepresentation claim because it does not allege bad faith.  Mot. at 8.  Not so. Georgia law permits an award of attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13–6–11.

64.    The Trustee additionally incorporates by reference all other applicable arguments and authorities regarding Counts 11 and 12 raised in his memorandum of law in opposition to the Damani Defendants' motion to dismiss the Amended Complaint, Trustee's Opp. to Damani

Defendants' Mot. § V and in his memorandum of law in opposition to the Trive Defendants'

motion to dismiss the Amended Complaint, Trustee's Opp. to Trive Defendants' Mot. § V.

### <u>CONCLUSION</u>

For all the reasons explained above, the Court should deny the Motion.

Dated: June 2, 2025           WHITEFORD TAYLOR & PRESTON LLP
       Wilmington, Delaware      By: */s/ Bradley P. Lehman*_____
                              William F. Taylor, Jr. (DE No. 2936)
                              Bradley P. Lehman (DE No. 5921)
                              600 North King Street, Suite 300
                              Wilmington, DE 19801
                              Telephone: (302) 353-4144
                              Facsimile: (302) 357-3286

                              -and-

                              QUINN EMANUEL URQUHART
                              & SULLIVAN LLP
                              Susheel Kirpalani
                              Andrew J. Rossman
                              Matthew R. Scheck
                              Mario O. Gazzola
                              Kenneth B. Hershey
                              295 Fifth Avenue, 9th Floor
                              New York, New York 10016
                              Telephone: (212) 849-7000
                              Facsimile: (212) 849-7100

                              *Counsel to the Chapter 7 Trustee*