## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | Case No. 23-10756 (KBO) |
| Debtor. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of<br>Lucky Bucks Holdings LLC and as<br>assignee, | Adversary Proceeding<br><br>Adv. Proc. No. 24-50130 (KBO) |
| Plaintiff, | Related Adv. Docket Nos. 57, 74, 75, & 88 |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC,<br>TRIVE CAPITAL FUND III LP, TRIVE<br>CAPITAL FUND III-A LP, TCFIII LUCK LP,<br>TCFIII LUCK SPV LP, TCFIII LUCK<br>ACQUISITION LLC, SHRAVAN THADANI,<br>LUCKY BUCKS VENTURES, INC., ANIL<br>DAMANI, SOUTHERN STAR GAMING<br>LLC, SHAFIK KASSAM, JAMES BOYDEN,<br>RYAN BOUSKILL, RYAN C BOUSKILL<br>PROFESSIONAL CORPORATION, 2786692<br>ONTARIO INC., MANU SEKHRI,<br>STEPHANIE LIPPA, and HASSAN IJAZ, | |
| Defendants. | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS LUCKY BUCKS VENTURES, INC. AND ANIL DAMANI'S MOTON TO DISMISS FIRST AMENDED COMPLAINT

BAYARD, P.A.
Ericka Johnson (DE Bar No. 5024)
Steven D. Adler (DE Bar No. 6257)
600 N. King Street, Suite 400
Wilmington, DE 19801

Dated:   July 2, 2025
        Wilmington, Delaware

CHILIVIS GRUBMAN
Lauren A. Warner
Scott R. Grubman
Brittany M. Cambre
1834 Independence Square
Atlanta, Georgia 30338
*Counsel for Defendants Lucky Bucks*
*Ventures, Inc. and Anil Damani*

# TABLE OF CONTENTS

**I.    The Trustee Fails to Adequately Allege Intent for Fraudulent Transfer.** ......................... 2

**II.   The Trustee Ignores the Inconsistencies in His Own Pleading Regarding Insolvency.**.... 4

**III.  The Trustee Does Not Save His Georgia RICO Claims.** ..................................................... 5

    **A. The Trustee Fails to Sufficiently Plead a Georgia RICO.** ............................................... 5

        1.   Federal Pleading Standards Govern the Sufficiency of Trustee's Georgia RICO
Allegations. ............................................................................................................... 5

        2.   The Trustee Fails to Plead Predicate Acts in Conformance with the Applicable
Pleading Standard. ................................................................................................... 6

           a.   Mail and Wire Fraud ................................................................................. 6

           b.   Securities Fraud ........................................................................................ 8

        3.   The Trustee Fails to Adequately Allege a Georgia RICO Conspiracy. ................. 10

    **B. The Trustee Cannot, As A Matter of Law, Satisfy the Causation Requirements of
Georgia RICO.** .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Aquino v. Mobis Alabama, LLC*,
   739 F. Supp. 3d 1152 (N.D. Ga. 2024) ............................................................................. 10, 11

*Bazemore v. U. S. Bank Nat'l Ass'n*,
   363 Ga. App. 723 (2022) ............................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................... 1

*Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida*,
   140 F.3d 898 (11th Cir. 1998) ................................................................................................. 14

*Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*,
   87 F. App'x 227 (3d Cir. 2003) ................................................................................................. 7

*Chin v. Chrysler LLC*,
   538 F.3d 272 (3d Cir. 2008) ....................................................................................................... 5

*Cobb Cnty. v. Jones Grp. P.L.C.*,
   218 Ga. App. 149 (Ga. Ct. App. 1995) ..................................................................................... 6

*Damian v. Montgomery Cnty. Bankshares, Inc.*,
   981 F. Supp. 2d 1368 (N.D. Ga. 2013) ..................................................................................... 9

*Denney v. City of Albany*,
   247 F. 3d 1172 (11th Cir. 2001) .............................................................................................. 12

*Devon IT Inc. v. IBM Corp*,
   805 F. Supp. 2d 110 (E.D. Pa. 2011) ....................................................................................... 7

*Doe v. Wozniak*,
   2009 WL 10715510 (M.D. Pa. Mar. 3, 2009) ....................................................................... 5, 9

*Dover v. State*,
   192 Ga. App. 429 (1989) ............................................................................................................ 5

*Erie v. Tompkins*,
   304 U.S. 64 (1938) ...................................................................................................................... 5

*Faillace v. Columbus Bank & Tr. Co.*,
    269 Ga. App. 866 (2004) ............................................................................ 6

*GCA Strategic Inv. Fund*,
    245 Ga. App. 460 (Ga. Ct. App. 2000) ...................................................... 9

*Glock v. Glock*,
    247 F. Supp. 3d 13007 (N.D. Ga. 2017) .................................................. 13

*Guy v. Eliwa*,
    2023 WL 5916468 (M.D. Pa. Sept. 11, 2023) ....................................... 5, 9

*Hansford v. Veal*,
    369 Ga. App. 641 (2023) ......................................................................... 6, 8

*Holmes v. Secs. Inv. Protection Corp.*,
    503 U.S. 258 (1992) ................................................................................ 13

*In re File Storage Partners, LLC*,
    2024 WL 1381643 (Bankr. D. Del. Apr. 1, 2024) .................................... 1

*In re Fruehauf Trailer Corp.*,
    444 F.3d 203 (3d Cir. 2006) ...................................................................... 2

*In re Liberty State Benefits of Del., Inc.*,
    541 B.R. 219, 247-48 (Bankr. D. Del. 2015) ......................................... 10

*In re Millennium Lab Holdings II, LLC*,
    2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) .................................. 3

*Kolar v. Preferred Real Estate Invests., Inc.*,
    361 Fed. App'x 354 (3d Cir. 2010) .......................................................... 7

*Lechter v. Aprio, LLP*,
    565 F. Supp. 3d 1279 (N.D. Ga. 2021) ............................................... 6, 11

*Marshall v. City of Atlanta*,
    195 B.R. 156 (N.D. Ga. 1996) .................................................................. 5

*Papasan v. Allain*,
    478 U.S. 265 (1986) .................................................................................. 1

*Peterson v. Merscorp Holdings, Inc.*,
  2012 WL 3961211 (N.D. Ga. Sept. 10, 2012) ............................................................ 9

*Pollman v. Swan*,
  314 Ga. App. 5 (Ga. Ct. App. 2011) ........................................................................ 13

*Recovery Fund II USA LLC v. Rabobank, Nat'l Ass'n*,
  2020 WL 509166 (D. Del. Jan. 31, 2020) ............................................................... 14

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) .................................................................................... 6

*Sibbach v. Wilson & Co.*,
  312 U.S. 1 (1941) .................................................................................................... 5

*Turk v. Morris, Manning & Martin LLP*,
  593 F. Supp. 3d 1258 (N.D. Ga. 2022) .................................................................... 7

*United States v. Pearlstein*,
  576 F. 2d 531 (3d Cir. 1978) .................................................................................... 8

*Williams Gen. Corp. v. Stone*,
  279 Ga. 428 (2005) ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... 6, 7

iv

The Trustee[1] continues to rely on conclusory allegations and implausible inferences in his second attempt to state a claim against Lucky Bucks Ventures, Inc. ("LBVI") and Anil Damani (collectively, the "Damani Defendants"), underscoring what is made clear across the Defendants' Motions to Dismiss [Docs. 69, 72, 75] – the Trustee fails to state a claim, and his First Amended Complaint ("FAC") should be dismissed with prejudice. "The point of *Twombly* is that where the underlying factual allegations are just as consistent with conduct that comports with the defendants' legal obligations as it is with conduct that would violate those obligations, one cannot 'plausibly' infer that the defendant acted unlawfully." *In re File Storage Partners, LLC*, No. 23-10877, 2024 WL 1381643, at *4 (Bankr. D. Del. Apr. 1, 2024). Yet that is precisely what the Trustee asks this Court to do, consider otherwise innocuous and unconnected facts to *infer* and *conclude* that defendants violated the law.

More importantly for purposes of this reply, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). As set forth below, the Trustee repeatedly cites as factual allegations statements that reflect his conclusions and/or inferences that LBVI, Mr. Damani, and the other defendants violated the law. There are so many links in the inferential chain required to reach the Trustee's desired conclusion that the allegations become more implausible with each leap from one inference to the next.

LBVI and Mr. Damani focus this reply on three main issues. First, the Trustee misinterprets the Damani Defendants' arguments regarding intentional fraudulent transfer. Second, the Trustee ignores the inconsistencies in his own FAC that undercut his claim of insolvency. Third, the Trustee does nothing save his Georgia RICO claim.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Damani Defendants' brief in support of their Motion to Dismiss (Doc. 75) or the FAC, as applicable.

I.      **The Trustee Fails to Adequately Allege Intent for Fraudulent Transfer.**

The Trustee argues that LBVI and Mr. Damani misstate the law regarding intent for fraudulent transfer claims. What the Trustee perceives as a purported misstatement reveals the fallacy in his own fraudulent transfer claim – the Trustee alleges an intentional fraudulent transfer claim but relies on allegations about fraudulent inducement. The Trustee conflates his own claim for fraudulent transfer with that of fraudulent inducement, the blame for which he misdirects at LBVI and Mr. Damani. In his opposition, the Trustee struggles to refocus his fraudulent transfer argument on the distributions from Holdings to defendants, but continues to rely on allegations of fraud in the marketing and sale of the Notes to the Noteholders. The Trustee cannot save his claim by relying on case law about fraudulent transfer and misapplying that law to factual allegations of fraudulent inducement. This misalignment of the law to the factual allegations is fatal to his claim.

The Trustee's § 548(a)(1)(A) claim requires him to plead facts sufficient to plausibly allege "actual intent to hinder, delay, or defraud any entity to which the debtor was or became ... indebted." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006).  The purpose of this fraudulent transfer law is "to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Id.* The Trustee wants to avail himself of the fraudulent transfer law, which he argues in his opposition requires only that he allege facts regarding the intent of the *debtor* Holdings. (Doc. 88, ¶ 22.) In so doing, he ignores the absence of any allegations of fraudulent intent by LBVI and Mr. Damani as grounds for dismissal. Yet, he relies almost entirely on factual allegations about how the defendants (sometimes collectively and at other times individually) induced the Noteholders to invest in and transfer money for the Notes, which are irrelevant to the Trustee's claim to avoid Holdings' transfers to the defendants.

LBVI and Mr. Damani made this argument in their motion to dismiss, as did the Management Defendants and the Trive Defendants.[2] LBVI and Mr. Damani explained that the Trustee's focus on "the relationship between the debtor and the transferee vis-à-vis alleged misrepresentations made to the Noteholders to get them to purchase the Notes" was legally insufficient. (Doc. 75 at 15.) The Trive Defendants and the Management Defendants similarly explained that the Trustee impermissibly conflated fraudulent transfer with fraudulent inducement, and that the Noteholders' consent to the distributions barred any subsequent claim for fraudulent transfer. (Doc. 69 ¶¶ 30-41; Doc. 72 ¶¶ 42-48.)

The Trustee offers differing responses in opposition to the same arguments, conveniently pointing to self-serving conclusory allegations and inferences when it suits his claims and ignoring everything else. For example, in response to LBVI and Mr. Damani's Motion to Dismiss, the Trustee glosses over his admission that Mr. Damani had no formal role and characterizes it as of no consequence because the focus is on the Holdings distribution. (Doc. 88 ¶ 24.) Instead, the Trustee argues that Mr. Damani and LBVI's receipt of Holdings distributions, when combined with the conclusory allegation that such distributions conveyed no reasonably equivalent value to Holdings, is enough to support a claim of intentional fraud. *Id.* However, in response to the Management Defendants' Motion to Dismiss, the Trustee argues that the Notes issuance and the Holdings distribution was a "single integrated transaction" and the allegations of fraud regarding the former are relevant to the latter.[3] (Doc. 91 ¶ 28.) In so doing, the Trustee relies on legal arguments that do not fit the facts alleged in the FAC. Here too, the Trustee points to otherwise

---

[2]    LBVI and Mr. Damani incorporated the Trive Defendants' and Management Defendants' arguments by reference. (Doc. 75 n. 2.) Moreover, there is nothing in the MTD that concedes the allegations as to the other defendants are enough.

[3]    The Trustee relies on *In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *4 (Bankr. D. Del. Feb. 28, 2019), which he does not cite in response to LBVI and Mr. Damani's Motion to Dismiss.

innocuous conduct and legal conclusions of the Damani Defendants' purported intent, which the Trustee claims is not relevant to the inquiry, masquerading as facts. (Doc. 88 ¶ 27, citing FAC ¶¶ 13, 26-27, 29, 33-34, 44, 48, 125, 152-53, 163, 168-69, 215, 228-29, 238-59, 338.)[4]

## II.    The Trustee Ignores the Inconsistencies in His Own Pleading Regarding Insolvency.

The Trustee misstates LBVI and Mr. Damani's argument regarding insolvency and ignores the allegations in his own FAC that undercut his argument. The Trustee argues that Lucky Bucks was insolvent at the time of the Holdings distributions, but the FAC includes factual allegations that belie any such argument. Yes, LBVI and Mr. Damani point to public documents regarding the overall increase in lottery revenue during the very year in which the Trustee claims that Lucky Bucks, the largest COAM operator in the state, suffered a decrease in earnings. That is but one piece of publicly available information that makes the Trustee's allegations less plausible, but that's the least of it. The Trustee ignores the other arguments, which point out the more than $12.3 million Holdings retained in January 2022 after the distributions at issue, the nearly two years Holdings had before November 2024 when the first payment of $15.95 million was due, that Holdings had no operations to deplete those funds, and that the alleged attrition rate the Trustee ascribes to Lucky Bucks of between 11 and 16% was hardly enough to wipe away the remaining value which the FAC puts at tens of millions of dollars. (Doc. 75 at 20.) All of these allegations make the Trustee's claim of insolvency implausible.

---

[4]    Several of these FAC paragraphs regurgitate allegations from the Georgia Action, *Arc Gaming and Technologies, LLC f/k/a Lucky Bucks, LLC v. Damani, et al.*, Fulton County Superior Court Civ. Action No. 24CV000131, which is subject to a pending motion to dismiss after the Court granted a motion to dismiss the initial complaint.

III.    **The Trustee Does Not Save His Georgia RICO Claims.**

    A.    **The Trustee Fails to Sufficiently Plead a Georgia RICO.**

        *1.    Federal Pleading Standards Govern the Sufficiency of Trustee's Georgia RICO Allegations.*

The Trustee takes umbrage with the Damani Defendants' citation to federal RICO case law. (Doc. 88 ¶ 42.) As an initial matter, federal case law is instructive, and indeed binding, when determining whether the FAC satisfies the applicable pleading requirements. It is axiomatic that when a federal court hears a state-law claim, federal law controls procedural matters. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (citing *Erie v. Tompkins*, 304 U.S. 64 (1938)). Pleading requirements are procedural, thus whether the pleading requirements are met is a question of federal law. *Doe v. Wozniak*, No. 3:08-CV-1951, 2009 WL 10715510, at *13 (M.D. Pa. Mar. 3, 2009); *Guy v. Eliwa*, No. 4:23-CV-00412, 2023 WL 5916468, at *5 (M.D. Pa. Sept. 11, 2023) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941) (holding requirements of 9(b) are procedural and require application of federal courts' interpretation of the pleading requirements).

Moreover, as the Trustee acknowledges, federal authority is useful and persuasive in interpreting Georgia RICO because the state statute was modeled after the federal RICO statute. *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 430 (2005); *see also* Doc. 88 ¶ 42. Although there are differences[5] between federal and Georgia RICO, the Trustee does not argue or cite to any authority showing that the arguments raised by the Damani Defendants are inconsistent with Georgia RICO. Indeed, for the issues raised in the motion to dismiss (i.e. standing/causation, and the substantive elements of conspiracy) there is no difference between federal and Georgia law. *See e.g.*, *Marshall v. City of Atlanta*, 195 B.R. 156, 179 n. 22 (N.D. Ga. 1996) ("Although federal RICO and Georgia

---

[5]    *See Dover v. State*, 192 Ga. App. 429, 430–31 (1989) (explaining the differences between federal and Georgia RICO and noting that Georgia RICO is both broader and narrower than its federal counterpart.)

RICO have certain differences, it is likely that Georgia courts would reach a similar conclusion with regarding to standing or causation requirements . . ."); *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1308; 31–32 (N.D. Ga. 2021) ("Cases interpreting a plaintiff's standing to pursue Federal RICO are instructive for purposes of a plaintiff's standing to pursue Georgia RICO claims," and "[t]here is no apparent substantive difference between the requirements for establishing a conspiracy to violate Federal RICO claim and a conspiracy to violate Georgia RICO claim.").

## 2. ***The Trustee Fails to Plead Predicate Acts in Conformance with the Applicable Pleading Standard.***

The Trustee concedes that to state a claim under Georgia RICO, he must show (1) a pattern of racketeering activity, which requires the commission of two or more predicate acts and (2) that Mr. Damani specifically committed two or more predicate acts. *See Cobb Cnty. v. Jones Grp. P.L.C.*, 218 Ga. App. 149, 154 (Ga. Ct. App. 1995); *Faillace v. Columbus Bank & Tr. Co.*, 269 Ga. App. 866, 869 (2004). The FAC alleges two predicate acts: federal mail and wire fraud and Georgia securities fraud. However, if the Court finds that either predicate act has not been plausibly pled with particularity or that the allegations do not plausibly allege Mr. Damani's participation in both predicate acts, then the Georgia RICO claim must be dismissed as a matter of law.

### a. Mail and Wire Fraud

To state a claim under Georgia RICO, allegations of mail and wire fraud must be pled in accordance with the federal pleading requirements of Rule 9(b). *Hansford v. Veal*, 369 Ga. App. 641, 650–51 (2023); *Bazemore v. U. S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 728 (2022); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The Trustee fails to satisfy the requirements of Rule 9(b) by simply alleging "upon information and belief" that Mr. Damani committed securities fraud.

6

Unlike in the case relied upon by the Trustee, where the plaintiff specifically alleged which key facts were omitted from communications to potential investors ("recent comparable listings, recent sales, and prior unsuccessful attempts to develop the land for the same use as set forth in the Appraisals"), *Turk v. Morris, Manning & Martin LLP*, 593 F. Supp. 3d 1258, 1304 (N.D. Ga. 2022),[6] the FAC merely alleges that Mr. Damani "used email . . . to further the fraudulent scheme." (FAC ¶ 352.a.) This allegation does not specify the fraudulent statement, identify the purpose of the mailing to the overall fraudulent scheme, or the time, place, or content of the alleged misrepresentation as required by Rule 9(b) in this Circuit. *See Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). Nor do the allegations even establish to whom such email communications were sent or how those communications ultimately resulted in any representation to the Noteholders. The Court should not permit the Trustee to dodge the heightened requirement of Rule 9(b) with generalized allegations and citation to nonprecedential out-of-circuit opinions on the pleading standard for mail and wire fraud because the Third Circuit has explicitly cautioned against allowing RICO claims premised on mail and wire fraud allegations given the "relative ease" with which a plaintiff may craft RICO allegations without support. *See Kolar v. Preferred Real Estate Invests., Inc.*, 361 Fed. App'x 354, 363 (3d Cir. 2010).

Even if, as the Trustee contends, the emails themselves need not be fraudulent, (*see* Doc. 88 ¶ 50), the elements of mail and wire fraud "must be established adequately with respect to each defendant," including the requirement that the FAC must allege with particularity "culpable participation" by Mr. Damani specifically. *United States v. Pearlstein*, 576 F. 2d 531, 534 (3d Cir.

---

[6]     Similarly, unlike in *Devon IT Inc. v. IBM Corp*, where the "participation and activity of each Individual Defendant [with respect to the fraudulent misrepresentations were] set forth in the Complaint" and included "specific acts occurring on specific dates that were done with the intent to deceive or cheat Plaintiffs," the FAC does not contain the level of factual detail regarding Mr. Damani's email communications or representations that would allow the Court to conclude a claim for mail and wire fraud had been plausibly alleged under Rule 9(b). 805 F. Supp. 2d 110, 124 (E.D. Pa. 2011).

1978). The FAC alleges that the Noteholders were defrauded into purchasing Notes based on fraudulent representations – not alleged to have been made by Mr. Damani[7] – regarding the financial condition of Lucky Bucks. The allegations pertaining to Mr. Damani relate solely to the operational decisions made by Lucky Bucks that ultimately had a detrimental effect on the financial conditions. The scheme to defraud at issue here – misrepresentations made to the Noteholders – is distinct from any fraud that Mr. Damani is alleged to have been involved in (i.e. conflating the value of COAM locations that were ultimately sold back to Lucky Bucks). *See* FAC ¶ 353 ("Damani's emails in further of the scheme related to . . . causing Lucky Bucks to acquire locations at inflated prices…."). To the extent that Mr. Damani is alleged to have sent emails in furtherance of a scheme, it is not a scheme to defraud the Noteholders.

b.    Securities Fraud

The FAC makes a conclusory assertion – based on information and belief – that Mr. Damani engaged in the predicate act of Georgia securities fraud. (FAC ¶ 360.) The Trustee acknowledges that to state a claim for securities fraud, he must allege "(1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." (Doc. 88 ¶ 45.) The FAC's allegations with respect to the predicate act of securities fraud fail to meet the heightened requirements of Rule 9(b) or the requirement to plausibly plead scienter.

Securities fraud must be plead with particularity under Rule 9(b). The Trustee asserts that under *Hansford* a securities fraud predicate act need not be pled with specificity. *Hansford*, 369 Ga. App. at 651, however, dealt solely with the pleading standard for the Georgia RICO claim that is brought in Georgia state court. As explained above, pleading standards are procedural and thus,

---

[7]    The only representations alleged to have been made by Mr. Damani are those contained in his email communication. Thus, while emails, as a general matter, need not be fraudulent to state a claim for mail fraud, where, like here, the emails are the only representations alleged to have been made, they must contain the purported fraudulent statement.

when state law claims are brough in federal court, the federal pleading standard applies notwithstanding contrary state court requirements. *See Doe*, 2009 WL 10715510, at *13; *Guy*, 2023 WL 5916468, at *5; *see also Peterson v. Merscorp Holdings, Inc.*, 2012 WL 3961211, at *7 (N.D. Ga. Sept. 10, 2012). ("[I]f a plaintiff raises . . . RICO claims based on predicate acts of fraud, the plaintiff must comply not only with the plausibility standard articulated in *Twombly* and *Iqbal*, but also with [Rule 9(b)]'s heightened pleading standard."). Because a Georgia securities fraud claim requires the same showing as a common law fraud claim (*see* Doc. 88 ¶ 46), it is subject to the heightened pleading standard of Rule 9(b).

In *GCA Strategic Investment Fund*, 245 Ga. App. 460, 463-64 (Ga. Ct. App. 2000), a case relied upon by Trustee, the Georgia Court of Appeals noted that scienter is an essential element of a securities fraud claim. (Doc. 88 ¶ 45.) "[T]o adequately plead scienter for a securities fraud claim, the plaintiff must set forth with particularity facts giving rise to a strong inference that the defendants either intended to defraud investors or were seriously reckless when they made the allegedly false or incomplete statements." *Damian v. Montgomery Cnty. Bankshares, Inc.*, 981 F. Supp. 2d 1368, 1380 (N.D. Ga. 2013); *accord GCA Strategic*, 245 Ga. App. at 463-64. "[T]he inference of scienter is 'strong' when it is more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Damian*, 981 F. Supp. 2d at 1380.

The FAC does not include any allegations that Mr. Damani made any misrepresentation to the Noteholders, much less made the representations with the requisite scienter. The Trustee attempts to sidestep this glaring omission by arguing that Mr. Damani made "indirect" fraudulent representations and cites to various paragraphs in the FAC that purportedly contain allegations that Damani intended or expected inflated EBITDA numbers would be communicated to the

Noteholders. (Doc. 88 ¶ 46, citing FAC ¶¶ 125, 146, 168-69, 262, 353, 356.) However, none of the paragraphs cited by the Trustee relate at all to Mr. Damani's intent to inflate EBITDA numbers, much less his intent that those inflated numbers would be communicated to the Noteholders in connection with the marketing or issuance of the Notes. Indeed, the cited allegations are that "Sekhri and Trive … directly participated in making false material statements to Noteholders."). The Trustee attempts to lump Mr. Damani with other Defendants who are alleged to have engaged in securities fraud under Georgia law. However, this strategy does not satisfy Rule 9(b) and does not comport with Georgia law. Accordingly, the FAC fails to allege the predicate act of securities fraud, which is fatal to the Trustee's Georgia RICO claims.

### 3.   The Trustee Fails to Adequately Allege a Georgia RICO Conspiracy.

The Trustee fails to adequately allege a Georgia RICO conspiracy. The essential element of any conspiracy is an *agreement* "to pursue the same criminal objective." *In re Liberty State Benefits of Del., Inc.*, 541 B.R. 219, 247-48 (Bankr. D. Del. 2015); *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1193 (N.D. Ga. 2024) ("[T]o state a claim for civil RICO conspiracy, [Plaintiffs] must have alleged 'an illegal agreement to violate a substantive provision of the RICO statute.'").

The FAC contains no plausible allegations that any Defendant agreed to conspire to violate Georgia RICO.[8] The only allegations are that the Defendants agreed to form Holdings for the purpose of taking on additional debt to finance distributions. (FAC ¶ 347.) At no point, does the FAC allege that Mr. Damani – or anyone else – *agreed* to inflate the value of Lucky Bucks for the purpose of getting the Noteholders to invest in Holdings. Instead, the Trustee argues that the

---

[8]   The Trustee argues that FAC ¶¶ 121-25, 347, and 371 are the allegations that plausibly allege an agreement to conspire in violation of RICO. (Doc. 88 ¶ 62.) None of those paragraphs, however, contain any allegations regarding an agreement amongst Damani, Sekhri, and Trive, much less an agreement to violate a substantive provision of Georgia RICO.

"Defendants…acted in concert to conceal from the Noteholders the fact that the stated value of Lucky Bucks…was wildly inflated in an attempt to finance Defendants' dividend payments. (Doc. 88 ¶ 62.) However, similar behavior is insufficient to establish a Georgia RICO conspiracy – an agreement is critical. *Aquino*, 739 F. Supp. 3d at 1194 ("To establish a conspiracy to violate Georgia RICO, Plaintiffs would have to show that the Defendants were knowing and willing participants in the alleged conspiracy rather than independent actors who were just going about their own business." (internal citation omitted)).

Moreover, even if it is possible that some Defendants committed predicate acts, without any factual allegations that the Defendants *agreed* to commit such predicate acts, the RICO conspiracy claim fails. *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1331–32 (N.D. Ga. 2021). As a rule of thumb, "dismissal of a RICO conspiracy claim is proper where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations." *Aquino*, 739 F. Supp. 3d at 1193. That is the case here. The Trustee's conspiracy allegations are co-extensive with its allegations of substantive RICO violations. There are no additional facts alleged that would plausibly establish the existence of an agreement to violate Georgia RICO.

Even if the Georgia RICO claims are plausibly alleged, they are barred by the intra-corporate conspiracy doctrine. The Trustee's only response is that Mr. Damani and Trive were not alleged to be officers or involved in the management of Lucky Bucks or Holdings. (Doc. 88 ¶ 64.)

As an initial matter, the intracorporate conspiracy doctrine is not limited only to officers or a corporation but applies more broadly. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself . . . Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment cannot conspire among themselves." *Denney v. City of Albany*, 247 F. 3d 1172,

1190 (11th Cir. 2001). The FAC alleges that Damani and Sekhri were insiders of Holdings and that Trive exerted control over Holdings through its appointment of Sekhri to the board. {FAC ¶¶ 10, 15, 47, 82, 84.) Thus, irrespective of whether the three defendants were officers of Holdings is immaterial to whether the Trustee's claim is barred by the intracorporate conspiracy doctrine.

Moreover, this argument is inconsistent with other arguments attempting to establish Mr. Damani's liability for other causes of action. For example, in response to Mr. Damani's contention that he had no formal role in approving or leading the Note issuance, the Trustee argues this "ignores (1) Damani's 25% ownership in Holdings and Lucky Bucks, (2) Damani's appointment of Kassam as one of three Holdings board members, and (3) that Damani was included in discussions, updates, and questions in connection with Holdings' marketing of the Notes," and therefore, "the Trustee has adequately alleged that Damani committed multiple predicate acts of securities fraud in furtherance of his scheme with Sekhri and Trive to defraud the Noteholders." (Doc. 88 ¶ 47.) Similarly, the FAC alleges that Sekhri was Trive's appointee to the Holdings and Lucky Bucks' boards and Trive exerted control over Holdings through Sekhri. (FAC ¶¶ 10, 15, 47, 82, 84.) Thus, the allegations themselves identify Damani, Sekhri and Trive as insiders of Holdings.

The Trustee uses Mr. Damani's involvement in Holdings offensively when it suits him, yet deems his lack of formal title as an officer is immaterial when such facts are inconvenient. The Trustee cannot have his cake and eat it too. If Mr. Damani is potentially liable for the conduct of Holdings by virtue of the conduct of his board appointee, then Mr. Damani must be deemed a part of Holdings for purposes of applying the intracorporate conspiracy doctrine.

**B.      The Trustee Cannot, As A Matter of Law, Satisfy the Causation Requirements of Georgia RICO.**

Both federal and Georgia courts have held that a RICO plaintiff must show that the alleged racketeering activity proximately caused the alleged injury. *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 265-68 (1992); *Pollman v. Swan*, 314 Ga. App. 5, 7 (Ga. Ct. App. 2011). The Trustee does not refute that to state a claim under Georgia RICO, he must allege facts showing Mr. Damani's conduct was the proximate cause of the injuries to the Noteholders. He simply asserts he has done so. However, the allegations in the Amended Complaint establish that the proximate cause requirement of RICO cannot be satisfied, and allegations to the contrary are simply legal conclusions that are not entitled to any deference under the applicable pleading standard.

The FAC and the Trustee's Response Brief make clear that proving an injury to Noteholders requires multiple steps in the inferential chain. Specifically, the Trustee argues that "Damani's fraudulent conduct directly affected the Noteholders' ability to recover on debts *owed by Holdings* because Holdings' only asset was ownership of Lucky Bucks shares, meaning that Holdings' ability to repay the Notes was entirely dependent on the value of Lucky Bucks, which had been severely overstated and misrepresented to the Noteholders as a direct and proximate result of Damani's conduct. (Doc. 88 ¶ 56.) This is precisely the type of injury that was deemed insufficient to confer RICO standing on plaintiffs in *Glock v. Glock*, 247 F. Supp. 3d 13007, 1318 (N.D. Ga. 2017).[9] "Losses suffered by a company's stakeholders as a result of racketeering activity against the company do not give [plaintiffs] standing under RICO." *Id.* Here, the injury is even more indirect and remote than that in *Glock* as the Noteholders are one layer further removed than the plaintiffs in *Glock*. The Noteholders are not even stakeholders in Lucky Bucks. Instead, they are

---

[9]      The Trustee contends that *Glock* is inapplicable because it addresses RICO's domestic injury requirement. (Doc. 88 at 31.) That issue was only a portion of the opinion and the Court address both the domestic injury and direct injury requirements of RICO. *Glock*, 247 F. Supp. 3d at 1318-19.

creditors of the stakeholders of Lucky Bucks. Accordingly, the RICO claim fails as a matter of law and must be dismissed. *Recovery Fund II USA LLC v. Rabobank, Nat'l Ass'n*, 2020 WL 509166, at *7 (D. Del. Jan. 31, 2020) (dismissing RICO claim for failure to satisfy proximate cause requirement).

The Trustee's reliance on *Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida*, 140 F.3d 898 (11th Cir. 1998) is inapposite. *Bivens* actually supports the Damani Defendants' position. In that case, the plaintiff alleged he had RICO standing as a creditor, which allowed him to pursue RICO claims with regard to the skimming of profits and the fraudulent sale of an assert for less than is fair market value. *Id.* at 907. The Eleventh Circuit, citing *Holmes*, held that "[a] creditor will have RICO standing only when his injury passes the directness test … which will not be the case if the injury alleged was suffered only as a result of harm to the corporation." *Id.* at 908. Under that test, the Eleventh Circuit held that the plaintiff did not have standing on his individual claims with regard to the skimming of profits because "the skimming was aimed primarily at the corporation, not at its creditors." *Id.*

Although in *Bivens* the court held that a creditor had RICO standing with respect to the sale of an asset for less than fair market value, the facts here are distinguishable. At the time of the sale, the asset holder was in bankruptcy seeking protection from its creditors. *Id.* Thus, "as a creditor, [the plaintiff] had a direct interest in seeing the hotel sold for as high a price as possible," whereas "the sale of the hotel for a higher price would have little impact on the shareholders and the corporation since the additional funds from the sale would have been used to satisfy creditors instead of going to shareholders." *Id.* Here, none of the allegations of wrongdoing against the Damani Defendants occurred in the context of any bankruptcy proceeding such that the injuries flowed directly to the creditors of Lucky Bucks or any of its parent holding companies. *See* Doc.

88 ¶ 57 ("[T]he harm here occurred prior to the bankruptcy proceeding, not during the bankruptcy proceeding," and "the Noteholders were harmed . . . separate and apart from any harm done to the bankruptcy estate."). Instead, the Damani Defendants are alleged to have caused injury to the financial condition of Lucky Bucks, which eventually resulted in Holdings' failure to repay the Noteholders.

For the foregoing reasons, and those contained in their brief in support of Motion to Dismiss, along with the Trive Defendants and Management Defendants' arguments incorporated by reference, the Damani Defendants respectfully request that the Trustee's First Amended Complaint be dismissed in its entirety with prejudice.

Dated:   July 2, 2025
         Wilmington, Delaware

BAYARD, P.A.

*/s/ Steven D. Adler*
Ericka F. Johnson (Del. Bar No. 5024)
Steven D. Adler (Del Bar No. 6257)
600 N. King Street, Suite 400
Wilmington, DE 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
ejohnson@bayardlaw.com
sadler@bayardlaw.com

-and-

CHILIVIS GRUBMAN
Lauren A. Warner (GA 425769)
Scott R. Grubman (GA 317011)
Brittany M. Cambre (GA 350793)
1834 Independence Square
Atlanta, Georgia 30338
Telephone: (404) 233 4171
Facsimile: (404) 261 2842
lwarner@cglawfirm.com
sgrubman@cglawfirm.com
bcambre@cglawfirm.com

*Counsel for Defendants Lucky Bucks*
*Ventures, Inc. and Anil Damani*