# EXHIBIT B

WILMERHALE

March 5, 2025

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

Susheel Kirpalani
Andrew J. Rossman
Mario O. Gazzola
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

William F. Taylor, Jr.
Whiteford Taylor & Preston LLC
600 North King Street, Suite 300
Wilmington, DE 19801

*Counsel to Marc Abrams, Chapter 7 Trustee*

Re:  ***Abrams v. Trive Capital Management LLC*, No. 24-ap-50130 (Bankr. D. Del.)**

Dear Counsel:

We write on behalf of our clients, Trive Capital Management LLC, the related Trive entities,[1] and Shravan Thadani (collectively, the "Trive Defendants"), in connection with the above-referenced adversary proceeding.  As we informed you during our January 15, 2025 call, the Trive Defendants intend to serve discovery requests on the Trustee, in his capacity as assignee of the claims of the investors in the November 2021 and January 2022 notes (the "Noteholders") issued by Lucky Bucks Holdings, LLC ("Holdings").  During the call, you informed us that the Trustee would work with the Trive Defendants to produce documents responsive to those requests.

Attached as Exhibit A to this letter is the Trive Defendants' first set of requests for the production of documents from the Trustee in connection with the above-referenced adversary proceeding (the "Document Requests"), seeking documents from the Trustee both in his representative capacity on behalf of the estate of Holdings, and in his capacity as assignee of the claims of the Noteholders.  As we explained during our call, as assignee of the Noteholders' claims, the Trustee has a legal obligation to respond to the Discovery Requests, which concern the documents of the Noteholders, on whose behalf the Trustee brings its claims.  *See JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005) (plaintiff-assignee must respond on behalf of assignors to discovery requests).  Likewise, as assignors of the Trustee's claims, the Noteholders have corresponding discovery obligations regarding documents relevant to this litigation.  *See MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, 2022 WL 11804007, at *4 (D.N.J. Oct. 17, 2022) (holding that each individual assignor of consumer fraud claims must

---

[1] The related Trive entities consist of Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Lucky SPV LP, TCFIII Luck Acquisition LLC, and Southern Star Gaming LLC.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

**WILMERHALE**

Susheel Kirpalani, *et al.*
March 5, 2025
Page 2

produce documents responsive to defendants' written discovery demands, but directing that the defendants serve the requests on the assignee; "a party bringing an assigned claim must produce discovery on the same basis to which the defendants would have been entitled if an assignor had brought the claim directly"). For these reasons, we have addressed the Document Requests to you, as counsel to the Trustee.

Thank you for your cooperation. We are available to meet and confer to discuss the Document Requests. We look forward to your response.

Best regards,


*/s/ Philip D. Anker*
Philip D. Anker


cc:    Ross E. Firsenbaum
       Joel Millar
       Michael McGuinness
       Laura Davis Jones
       Peter J. Keane

       *Counsel to the Trive Defendants*

Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | No. 23-10756 (KBO) |
| *Debtor*. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky<br>Bucks Holdings LLC and as assignee, | Adversary Proceeding |
| *Plaintiff*, | No. 24-ap-50130 (KBO) |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC,<br>*et al.*, | **TRIVE DEFENDANTS' FIRST SET OF<br>DOCUMENT REQUESTS TO THE<br>PLAINTIFF** |
| *Defendants*. | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable here by Federal Rules of Bankruptcy Procedure 7026 and 7034, Defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming, LLC, and Shravan Thadani (together, the "Trive Defendants"), by and through their undersigned counsel, hereby request that Marc Abrams (the "Trustee" or "Plaintiff"), in his capacity as the trustee for the estate of Lucky Bucks Holdings LLC ("Holdings"), and in his capacity as assignee of claims of funds managed by Hamilton Lane Advisors LLC ("Hamilton"), First Trust Capital Management LP ("First Trust"), Monarch Alternative Capital LP ("Monarch"), BC Partners ("BCP"), Marathon Asset Management LP ("Marathon"), and CION Investment Management, LLC ("CION", collectively with Hamilton, First Trust, Monarch, BCP, and Marathon, the "Noteholders"), produce for inspection and copying the documents listed in this First Set of Document Requests to the Plaintiff (the "Requests") to the Trive Defendants' attorneys, Wilmer Cutler Pickering Hale and Dorr LLP, at 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, within 30 days of being served or at a time and place mutually agreed by Plaintiff and the Trive Defendants or ordered by the Court.

## **DEFINITIONS**

In addition to the definitions set forth above, the following terms shall have the following meanings.  Other capitalized terms not otherwise defined below or above shall have their respective meanings as set forth in the Amended Complaint.

1.    "Adversary Proceeding" means the above-captioned adversary proceeding, *Abrams v. Trive Capital Mgmt., et al.*, Adv. Pro. No. 24-ap-50130 (KBO).

2.    "August 2020 Transaction" shall mean the August 2020 transaction described in paragraph 82 of the Amended Complaint.

3.      "Bankruptcy Cases" means the Chapter 7 case captioned *In re Lucky Bucks Holdings, LLC*, No. 23-10756 (KBO) (Bankr. D. Del.), and the Chapter 11 case captioned *In re Lucky Bucks, LLC*, No. 23-10758 (KBO) (Bankr. D. Del.), and any related appeals, adversary proceedings or other proceedings.

4.      "B-Side Businesses" means Angel Amusements, LLC, Dynamic Gaming, LLC, Unique Amusement, LLC, AKS Amusements, Inc., Advance Amusement, LLC, Klass Amusement, LLC, Prestige Amusement, LLC, Lee Caudell, Inc., Pinball Amusement, LLC, Peak Amusement, LLC, Blue Georgia 1000, Inc, and Georgia Winners, LLC.

5.      "Communication" means every manner of the transmittal of information in the form of facts, ideas, inquiries, or otherwise, whether person-to-person, in a group, orally, in writing, by telephone, by electronic transmission, or otherwise.

6.      "Amended Complaint" means the Amended Complaint, dated January 21, 2025, filed as docket entry number 57 in the Adversary Proceeding.

7.      "Damani Defendants" shall have the meaning ascribed to it in Paragraph 46 of the Amended Complaint.

8.      Document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7034, and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals,

articles from publications, (whether in paper, database, electronic or other format(s)), calculations (whether in paper, database, electronic or other format(s)), books, books of account, statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, deal files, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies, summaries, share-file documents, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets or things similar to any of the foregoing however denominated.  The term "document" further includes email and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disk, or by some other storage mechanism.  The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys). Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.  The term "document" also includes all Electronically Stored Information (defined below).

9.      "Electronically Stored Information" or "ESI" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and refers to all computer or electronically stored or generated data and information and includes all attachments to and enclosures with any requested item, and all drafts thereof.  "Electronically Stored Information" or "ESI" includes information stored in any format and on any storage media, including:  hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" or "ESI" includes:  word-processing Documents; electronic spreadsheets; electronic presentation Documents; email messages; image files; sound files; and material or information stored in a database, or accessible from a database.  "Electronically Stored Information" or "ESI" also includes all associated metadata that is maintained or saved, which includes:  a Document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

10.     "Farm Team" shall mean the team of salespeople described in paragraph 10 of the Amended Complaint.

11.     "Georgia Arbitration" means the arbitration between Lucky Bucks, on the one hand, and Georgia Winners, LLC, on the other hand, described in paragraph 228 of the Amended Complaint.

12.     "Georgia Action" means the action captioned *Arc Gaming and Technologies, LLC f/k/a Lucky Bucks, LLC v. Damani et al.*, No. 24-cv-0000131 (Ga. Sup. Ct. 2024), referenced in paragraph 238 of the Amended Complaint.

13.     "HoldCo" means Lucky Bucks Holdco LLC.

14.    "<u>Holdings</u>" means Lucky Bucks Holdings, LLC.

15.    "<u>Holdings Distributions</u>" shall mean the distributions by Holdings in November 2021 and January 2022 described in paragraphs 15 and 201 of the Amended Complaint.

16.    "<u>Houlihan Lokey</u>" means Houlihan Lokey, Inc.

17.    "<u>Include</u>" or "<u>Including</u>" means including but not limited to.

18.    "<u>January Distribution</u>" shall mean the distributions made by Holdings in January 2022 as described in paragraph 201 of the Amended Complaint, and as referred to by paragraphs 15, 201, 202, and 203 of the Amended Complaint.

19.    "<u>July OpCo Distribution</u>" shall mean the distributions made by HoldCo in July 2021, as described in paragraphs 112 and 118 of the Amended Complaint.

20.    "<u>Lucky Bucks</u>" means Lucky Bucks LLC.

21.    "<u>Management Defendants</u>" shall have the meaning ascribed to it in Paragraph 55 of the Amended Complaint.

22.    "<u>Note CIM</u>" shall have the same meaning as ascribed to it in paragraph 9 of the Amended Complaint.

23.    "<u>Notes</u>" shall have the meaning ascribed to it in Paragraph 8 of the Amended Complaint.

24.    "<u>Notes Issuances</u>" means the November 2022 and January 2022 issuance of the Notes by Holdings.

25.    "<u>Noteholders</u>" means the asset managers and funds referenced in Paragraph 56 of the Amended Complaint.

26.     "<u>November Distribution</u>" shall mean the distributions made by Holdings in November 2021 described in paragraph 201 of the Amended Complaint, and as referred to by paragraphs 15, 201, 202, and 203 of the Amended Complaint.

27.     "<u>Regarding</u>" or "<u>regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, reflecting, referring to, refuting, regarding, relating to, reporting on, reviewing, setting forth, supporting, suggesting, summarizing, stating, showing, touching upon, or undercutting a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

28.     "<u>Rule 2004</u>" means Rule 2004 of the Federal Rules of Bankruptcy Procedure as in effect in either or both of the Bankruptcy Cases.

29.     "<u>Trive Defendants</u>" shall have the meaning ascribed to it in Paragraph 43 of the Amended Complaint.

30.     "<u>Trustee</u>" or "<u>You</u>" means Marc Abrams, both in his capacity as Chapter 7 Trustee of Lucky Bucks Holdings LLC and in his capacity as the purported assignee of claims of the Noteholders.

31.      "<u>Your</u>" refers to You.

### **INSTRUCTIONS**

1.     These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individual requests below.

2.      As used in these requests, (i) the terms "all," "any," and "each" shall each be construed as encompassing any and all, (ii) the connectors "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and (iii) the use of the singular form of any word includes the plural and vice versa.

3.      Each request shall be construed and answered separately.  The specificity of any request shall not be construed or understood as limiting the generality or breadth of any other request.

4.      These requests require You to produce Documents that are in Your possession, custody, or control.  Thus, Your obligation to produce Documents is not limited to Documents in Your physical possession; You must also produce all Documents that You have the right or ability to obtain on demand, Including Documents in the possession, custody, or control of the Noteholders.  Without limiting the foregoing, as the purported assignee of claims of the Noteholders, You are obligated to search, seek and produce all responsive Documents in the possession, custody or control of any of the Noteholders.

5.      If You object to any request, state in full the basis for Your objection.  If You object to part of a request, specify the portion of the request to which You object and answer as much of the request as is not objectionable.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

6.      Pursuant to the Federal Rules of Civil Procedure, You are to produce for inspection and copying original Documents as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof.  A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained,

transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

7.      Each page of each Document produced shall bear a unique number that includes a symbol or abbreviation identifying the producing party ("Bates number").

8.      All Documents that are stored in electronic or computer format shall be produced in compliance with Rule 7026-3(e) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

9.      All Documents and ESI shall be produced with metadata, including, but not limited to, the date created/sent, author, recipients, cc-copies, and bcc-blind copies.

10.     If and to the extent Documents are maintained in a database or other electronic format, you shall produce along with the Document(s) software that will enable access to the electronic Document(s) or database as you would access such electronic Document(s) or database in the ordinary course of your business.

11.     Documents shall be produced in such fashion as to identify the department, branch, or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

12.     If You withhold a Document from production on the basis of a privilege or any other protection from disclosure, You shall provide the information required by Federal Rule of Civil Procedure 26(b)(5).

13.     Documents attached to each other should not be separated.

14.     Documents not otherwise responsive to this discovery request shall be produced if such Documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

15.     The fact that a Document is produced by another party does not relieve you of the obligation to produce your copy of the same Document, even if the two Documents are identical.

16.     Each Document request shall be construed independently and not with reference to any other Document request for the purpose of limitation.

17.     Unless otherwise stated, the relevant time period for these requests is from January 1, 2020 until the present.

18.     This request shall be deemed continuing in nature, and You are under a duty to supplement or correct any responses that are incomplete or incorrect and otherwise supplement Your responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## **DOCUMENTS REQUESTED**

1.     All Documents that are (or have been) produced to You or that You otherwise receive (or have received) from any person or entity in response to a Rule 2004 request, discovery request, subpoena, or otherwise, in or regarding the Adversary Proceeding, the Bankruptcy Cases, the Georgia Action, or any other proceeding regarding Lucky Bucks, Holdings or HoldCo.

2.     All Documents You produce or provide (or have produced or provided) to any person or entity in response to a Rule 2004 request, discovery request, subpoena, or otherwise, in or regarding the Adversary Proceeding, the Bankruptcy Cases, the Georgia Action, or any other proceeding regarding Lucky Bucks, Holdings, or HoldCo.

3.     All Documents regarding:

     a.      The Holdings Distributions;

     b.      The November Distribution;

     c.      The January Distribution;

     d.      Lucky Bucks;

     e.      HoldCo;

f.      Holdings;

g.      The Note CIM;

h.      The Notes;

i.      The Notes Issuances;

j.      The Trive Defendants;

k.      The August 2020 Transaction;

l.      The Management Defendants;

m.      The Damani Defendants;

n.      The Noteholders;

o.      The Bankruptcy Cases;

p.      The Georgia Arbitration;

q.      The Georgia Action;

r.      The B-Side Businesses;

s.      The Farm Team; and/or

t.      Any diligence, evaluation, or analysis performed by any of the Noteholders in connection with their acquisition of or investment in the Notes, or any other Documents prepared in connection with the Noteholders' consideration of the Notes.

4.      All Documents constituting or otherwise regarding Communications between any of the Noteholders on the one hand, and any of the Management Defendants, Damani Defendants, Houlihan Lokey, the Trive Defendants, Holdco, Holdings, and/or Lucky Bucks, on the other hand.

5.      All Documents constituting or otherwise regarding Communications (whether internal or with any other individual or entity) involving any Noteholder regarding any of the topics in paragraph 3(a)-(t) above.

6.      All Documents regarding any of the allegations in the Amended Complaint, including but not limited to:

a.     The allegation in paragraph 9 of the Amended Complaint that the Note CIM was "prepared by Lucky Bucks's advisors at the direction and with the assistance of the Trive entities, [Shravan] Thadani and the Management Defendants";

b.     The allegations in paragraph 9 of the Amended Complaint regarding the "road show" described therein;

c.     The allegations in paragraph 10 of the Amended Complaint regarding the statements made by Mr. Thadani and Manu Sekhri regarding Lucky Bucks's "farm team";

d.     The allegation in paragraph 17 of the Amended Complaint that the November Distribution and the January Distribution "rendered [Holdings] insolvent and left [it] with unreasonably small capital to repay the Notes";

e.     The allegation in paragraph 24 of the Amended Complaint that "the Company experienced an attrition rate of 11.1% of total machines in just half of 2021—proving that the true annual attrition rate of 2021 was about *20 times higher* than the expected 1.1% annual COAM attrition rate derived from the Note CIM's 2020 data" (emphasis in original);

f.     The allegation in paragraph 29 of the Amended Complaint that there are "facts that show Thadani's entire pitch to the Noteholders was a ruse" and which "explains Trive's rush to 'take cash out of the business' in late 2021";

g.     The allegation in paragraph 32 of the Amended Complaint that "Thadani and Trive [as such term is used in the Amended Complaint] knew their representations about Lucky Bucks's financials were false";

h.     The allegation in paragraph 33 of the Amended Complaint that "he [Thadani] and others at Trive were aware something was deeply wrong with the stability of locations at Lucky Bucks";

i.     The allegation in paragraph 88 of the Amended Complaint that "other than the most basic day-to-day operations, Trive maintained explicit approval rights over every material aspect of Lucky Bucks's business";

j.     The allegation in paragraph 131 of the Amended Complaint that "Houlihan itself did little to vet the financial and operational information, relying exclusively on what it was fed by insiders, including Thadani, Sekhri, Ijaz, Bouskill, Boyden, and Kassam";

k.     The allegations in paragraph 133 of the Amended Complaint regarding the diligence conducted by various Noteholders;

l.      The allegation in paragraph 138 of the Amended Complaint that "[i]n calls on August 24, 2021, November 2, 2021, and November 22, 2021, Thadani gave a very aggressive pitch for the company", and the additional allegations regarding those (or other) calls in paragraphs 139-150 of the Amended Complaint;

m.      The allegation in paragraph 145 of the Amended Complaint that "[Trive Capital Management LLC's] own valuations of Lucky Bucks never came close to the $1 billion valuation Thadani gave to Noteholders";

n.      The allegation in paragraph 151 of the Amended Complaint that "Trive's participation . . . in the process was significant for the Noteholders";

o.      The allegation in paragraph 155 of the Amended Complaint that "Trive and the Management Defendants made and caused Holdings to make a series of material misrepresentations in inducing the Noteholders to invest", and the additional allegations regarding those supposed misrepresentations in paragraphs 156-189 of the Amended Complaint;

p.      The allegation in paragraph 175 of the Amended Complaint that the reference to "bs" in the document identified in that paragraph was to a profanity, and not to "balance sheet," and that this suggested that "Anderson—and the partners to whom he presented, including, upon information and belief, Searcy and Thadani—knew the financials were "'bullshit'";

q.      The allegation in paragraph 190 of the Amended Complaint that "[e]ach of the Noteholders relied on Thadani's, Trive's, Sekhri's and Management's false statements";

r.      The allegation in paragraph 193 of the Amended Complaint that "[t]he Trive Defendants and Management Defendants, through control of Holdings, caused Holdings to make several representations and warranties in connection with the Note Purchase Agreement which . . . were false when made" and the related allegations in paragraphs 194-199 of the Amended Complaint;

s.      The allegations in paragraphs 275 and 304 of the Amended Complaint that the "Holdings Distributions were made with the intent to hinder, delay, or defraud creditors";

t.      The allegations in paragraphs 277 and 293, 306, and 320 of the Amended Complaint that the Trive Defendants "received the distributions for no value" or for "inadequate value";

u.      The allegations in paragraphs 288 to 290 and 316 to 318 of the Amended Complaint that:

(i)   "Holdings received no equivalent value in return for the Holdings Distributions";

(ii)  "Holdings received nothing in return" for the Holdings Distributions;

(iii) "[t]he Holdings Distributions left Holdings with no cash" and "caused Holdings to engage in a business or transaction for which Holdings's remaining assets were unreasonably small";

(iv)  "Holdings's only remaining asset were its shares of Lucky Bucks—which were themselves nearly valueless if not entirely worthless—in light of Lucky Bucks's maxed out leverage and stripped assets"; and

(v)   the Holdings Distributions were "a business or transaction for which Holdings's remaining assets were unreasonably small in relation to the Distribution";

v.    The allegations in paragraphs 310 and 324 of the Amended Complaint that "the Trustee has standing to assert this Cause of Action as the lawful assignee of all right, title, and interest in claims of the Noteholders against Defendants arising out of or in connection with the Notes, the issuance of the Notes, and/or the Note Purchase Agreement";

w.    The allegation in paragraph 327 of the Amended Complaint that "The Holdings Distributions were issued in violation of Del. Code Ann. tit. 6, § 607 because following the distributions, the liabilities of Holdings exceeded the fair value of Holdings's assets";

x.    The allegation in paragraph 328 of the Amended Complaint that the Trive Defendants "knew that the distribution violated Del. Code Ann. tit. 6, § 607";

y.    The allegations in paragraph 334 of the Amended Complaint that the Trive Defendants "made numerous misrepresentations to the Noteholders, including false and misleading statements and omissions concerning" the following:

(i)   "lack of attrition and stability of Lucky Bucks's location contracts";

(ii)  "the EBITDA generated by Lucky Bucks's prior M&A activity";

(iii) "Lucky Bucks's ability to continue growing after the issuance through M&A activity";

14

(iv)    "the accuracy of Lucky Bucks's financial condition and growth projections, in light of the active and ongoing B-Side Racket and poor performance in 2021 that was hidden through the use of pro forma estimates";

(v)    "representing that Holdings was solvent and that Bouskill had conducted an analysis to assess that it was";

(vi)    "Lucky Bucks's relationship with the GLC";

(vii)    "the strength of Lucky Bucks's 'farm team,' which turned out to be an operation run by certain insiders' family members"; and

(viii)    that "Thadani mispresented his and Trive's day-to-day involvement in the business";

z.    The allegations in paragraph 335 of the Amended Complaint that the Trive Defendants:

(i)    "made untrue statements of material fact and omitted to state material facts regarding these schemes and/or made projections concerning the Company that lacked any basis in fact"; and

(ii)    "made numerous material representations or omitted facts about the accuracy and effectiveness of Lucky Bucks's internal controls or financial reporting and corporate governance, as well as Lucky Bucks' disclosure controls and procedures";

aa.    The allegations in paragraph 336 of the Amended Complaint that the Trive Defendants "engaged in a device, scheme, or artifice to defraud, as well as committed acts, engaged in practices and a course of business which is fraudulent, deceptive or manipulative," and that the Trive Defendants "statements were made with scienter" and/or "with severely reckless disregard for their truth," and that the Trive Defendants "intended to defraud" the Noteholders;

bb.    The allegations in paragraph 337 of the Amended Complaint that the Noteholders "relied on" the Trive Defendants' alleged "misrepresentations and omissions," and that the Noteholders' alleged reliance "was justifiable and reasonable";

cc.    The allegation in paragraph 352 of the Amended Complaint that one or more of the Trive Defendants "intentionally and willingly devised and participated in a scheme to defraud the Noteholders of funds";

dd.    The allegation in paragraph 354 of the Amended Complaint that the Trive Defendants' sent or received "emails in furtherance of the scheme related to, among other things, compiling false and misleading information to be

used in the marketing of the Notes to potential noteholders", and similar allegations in paragraph 356 of the Amended Complaint;

ee.    The allegation in paragraph 355 of the Amended Complaint that one or more of the Trive Defendants "made false statements to the Noteholders to induce them in purchasing the notes";

ff.    The allegations in paragraph 358 of the Amended Complaint that one or more of the Trive Defendants "abused the corporate form in order to conceal the enterprise's crimes and to frustrate efforts to detect or remedy those crimes," "used Holdings to steal money from the Noteholders," and used complex structures and other entities in order to receive and distribute payments, including LBVI, and the Trive entities";

gg.    The allegation in paragraph 368 of the Amended Complaint that one or more of the Trive Defendants "agreed with [] other [Defendants] and with such persons to 'take cash out of the business' from Lucky Bucks and the Estate in every possible way, including through stripping Lucky Bucks's assets, committing securities fraud, and executing a series of fraudulent transfers";

hh.    The allegation in paragraph 377 of the Amended Complaint that one or more of the Trive Defendants engaged in racketeering activities that "took place in . . . Georgia";

ii.    The allegation in paragraph 383 of the Amended Complaint that one or more of the Trive Defendants "made material misrepresentations and concealed material facts in their dealings with Lucky Bucks, Holdings, and the Noteholders";

jj.    The allegation in paragraph 387 of the Amended Complaint that one or more of the Trive Defendants "knew that the Noteholders would receive and rely upon" representations by the Trive Defendants, "and intended that their false and/or misleading statements would induce the Noteholders to purchase the Notes and/or would induce the Noteholders not to investigate Defendants' wrongdoing once results started to decline";

kk.    The allegation in paragraph 388 of the Amended Complaint that the Trive Defendants' "misrepresentations were material";

ll.    The allegations in paragraphs 389 and 390 of the Amended Complaint that "[t]he Noteholders reasonably and justifiably relied on such misrepresentations and omissions", that "[t]he Noteholders would not have purchased Notes at all, or at the prices they paid, had the Noteholders known the true facts regarding Defendants' various schemes", that "the Noteholders were induced by Defendants to forebear from investigating Defendants' various schemes, based on the misrepresentations that were directed to the causes of Lucky Bucks's declining performance", and that

"[t]he Noteholders specifically and actually relied on those misrepresentations in not investigating Lucky Bucks's poor performance earlier";

mm.    The allegation in paragraph 394 of the Amended Complaint that one or more of the Trive Defendants "negligently made misrepresentations and/or concealed or failed to disclose material facts about Holdings's financial performance and business operations, its reported financial information, and internal controls and corporate governance" and that such statements were made by virtue of one or more of the Trive Defendants' "statements to the Noteholders that purported to provide an accurate and honest reporting of Lucky Bucks's business operations and financial condition";

nn.    The allegation in paragraph 396 of the Amended Complaint that one or more of the Trive Defendants "had a duty of care to, and special relationship with, the Noteholders";

oo.    The allegation in paragraph 397 of the Amended Complaint that each of the Trive Defendants "personally induced the Noteholders' investment in Notes by leveraging their senior management positions and their unique knowledge of Lucky Bucks's finances and business operations, due to their access to inside information," and that each Trive Defendant "developed a special degree of trust with the Noteholders in making their investment decision regarding the purchase of the Notes"; and

pp.    The allegation in paragraph 398 of the Amended Complaint that, "[t]he Noteholders actually read, reviewed and relied on, and were misled by [one or more of the Trive] Defendants' misrepresentations."

7.    All document retention notices, litigation holds, or other legal holds prepared in connection with the Adversary Proceeding or the Bankruptcy Cases, including without limitation any such notices, or litigation or legal holds, prepared by, sent to, or put in effect by any of the Noteholders.

Dated:   New York, NY
         March 5, 2025                      Respectfully submitted,

/s/ Philip D. Anker
Philip D. Anker
Ross E. Firsenbaum
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8890
philip.anker@wilmerhale.com
ross.firsenbaum@wilmerhale.com

*Counsel for Defendants Trive Capital
Management LLC, Trive Capital Fund III
LP, Trive Capital Fund III-A LP, TCFIII
Lucky LP, TCFIII Luck SPV LP, TCFIII
Luck Acquisition LLC, Southern Star
Gaming, LLC, and Shravan Thadani*