# **<u>EXHIBIT E</u>**

**WILMERHALE**

May 2, 2025

**CONFIDENTIAL**

**(Via Email)**
Mario Gazzola
Quinn Emanuel Urquhart & Sullivan LLP
295 5th Avenue, 9th Floor
New York, NY 10016
mariogazzola@quinnemanuel.com

Ross E. Firsenbaum

+1 212 295 6323 (t)
+1 212 230 8888 (f)
ross.firsenbaum@wilmerhale.com

>  Re:  *Abrams v. Trive Capital Management LLC, et al.*, No. 24-ap-50130 (KBO) (Bankr. D. Del.)

Dear Counsel:

We write on behalf of the Trive Defendants[1] regarding our April 28, 2025 meet and confer (the "Meet and Confer") in connection with the Trustee's *Responses and Objections*, dated April 4, 2025 (the "Responses"), to the *Trive Defendants' First Set of Document Requests to the Plaintiff*, dated March 5, 2025 (the "Requests"), and in furtherance of our letter to you dated April 23, 2025.

A. **Rule 2004 Discovery**

Earlier today, counsel for Anil Damani and Lucky Bucks Ventures, Inc. (the "Damani Defendants") provided their consent to the Trustee to provide their Rule 2004 productions to the Trive Defendants. We anticipate that you will provide such production to us promptly. Please also confirm by May 5, 2025 that, following such production, the Trustee will have produced to the Trive Defendants all documents the Trustee received in Rule 2004 discovery other than documents the Trustee received from Shearman & Sterling LLP ("Shearman").

As for the production that the Trustee received from Shearman in connection with Rule 2004 discovery, you told us that you needed to discuss the issue with Arc Gaming, which, in your view, holds a joint privilege over documents produced by Shearman, but that such conversation still had not yet taken place, despite our service of document requests 58 days ago. You told us that the Trustee and Arc Gaming may be amenable to producing the documents to the Trive Defendants on a non-waiver basis, similar to the agreement reached by the Trive Defendants, Arc Gaming, and the Trustee in connection with the Trive Defendants' Rule 2004

---

[1] The Trive Defendants are Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Lucky SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming LLC, and Shravan Thadani.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

WILMERHALE

Mario Gazzola
May 2, 2025
Page 2

productions.  Please provide us with a status update by May 5, 2025 on your discussions with Arc Gaming regarding this issue.  We also reiterate what we said on our April 18, 2025 meet and confer—that Shearman's Rule 2004 production likely has numerous documents that are not privileged and that can easily be produced to us in short order—and renew our request for a rolling production of Shearman documents that begins with these documents.  Please produce such documents by the end of next week.

### B. Noteholder Discovery

You told us that BC Partners, CION Investment Management, LLC ("CION"), Hamilton Lane Advisors LLC ("Hamilton Lane"), Monarch Alternative Capital LP ("Monarch"), and Marathon Asset Management LP ("Marathon") have authorized the Trustee to search for, collect, and produce documents in response to the Requests.  You told us that you were awaiting authorization from First Trust Capital Management LP ("First Trust", collectively, with BC Partners, Hamilton Lane, Monarch, CION, and Marathon, the "Noteholders"), but did not anticipate that they would oppose our request.  Please let us know by May 5, 2025 whether First Trust has authorized the Trustee to search for, collect, review, and produce documents on its behalf—as is required under applicable law and the Federal Rules.

#### 1. Deal Team Composition and Proposed Custodians

You provided the identities of the members of the Noteholders' deal teams in connection with the November 2021 and January 2022 notes transactions (the "Notes"), as well as the Trustee's proposed custodians for each Noteholder.

Reserving all rights, the Trive Defendants request additional information or custodians for each of the Noteholders, as noted in bold italics below.

**BC Partners:**
- Ivelin Dimitrov (proposed custodian)
- Mike Terwilliger
- Claire Kim (*the Trive Defendants request that Ms. Kim be added as a custodian because she was involved in the Notes transactions*)
- Jason Young (proposed custodian)
- Tina Huang

**CION Investments**:
- Joe Ellsabee (proposed custodian)
- Shane MaGrann (proposed custodian)
- Eva Linan

WILMERHALE

Mario Gazzola
May 2, 2025
Page 3

- Anthony Carracino and Nicholas Tzoumas (*the Trive Defendants request that either Mr. Carracino or Mr. Tzoumas be added as a custodian, whoever was more involved in communications with the Trive Defendants, Houlihan Lokey, and/or Lucky Bucks and/or participated in the review, analysis, and diligence regarding CION's purchase of the Notes*)
- Steve Ronan and Eric Piniero

### Hamilton Lane:
- Nayer Perry (proposed custodian)
- Bill Toner (proposed custodian)
- Olivia Traynor (*the Trive Defendants request that you provide the start and end employment dates for each of the junior deal team members, so that we can better assess who should be included as a custodian and when*)
- Ryan Nassib (*the Trive Defendants request that you provide the start and end employment dates for each of the junior deal team members, so that we can better assess who should be included as a custodian and when*)
- Holly Power (*the Trive Defendants request that you provide the start and end employment dates for each of the junior deal team members, so that we can better assess who should be included as a custodian and when*)

### Monarch
- Patrick Fallon (proposed custodian)
- Riley Casey (proposed custodian)
- Daniel Phelps (*the Trive Defendants request that Mr. Phelps be added as a custodian*)
- Kevin Johannsen (*as discussed, please explain Mr. Johannsen's role on the deal team and let us know whether he was involved in communications with the Trive Defendants, Houlihan Lokey, and/or Lucky Bucks and/or participated in the review, analysis, and diligence regarding Monarch's purchase of the Notes*)

### Marathon
- Jordan Frick (custodian)
- Nate Johnson (custodian)
- William Guo (custodian)

The Trive Defendants, of course, reserve all rights to request collection of documents from additional custodians, whether or not listed above.

WILMERHALE

Mario Gazzola
May 2, 2025
Page 4

    2.      Sources of Discovery

We also discussed the sources of your collections from the Noteholders. You told us that each Noteholder has a shared drive and/or deal folder associated with the Notes, which the Trustee will collect in full in response to the Requests. You proposed running the parties' negotiated search terms through that population before reviewing and producing those documents. So the Trive Defendants can better assess your proposal, please provide the anticipated volume of documents and information included in the deal files and/or shared drives of the Noteholders. The Trive Defendants reserve the right to request that the Trustee review the entire deal and/or shared folders, without application of any search terms across the documents.

You also told us that the Trustee will not collect all e-communications from the custodians during the relevant period, but rather would run broad search terms—which you agreed to provide this week—over their e-communications, and then negotiate a separate set of search terms with us from which the Trustee's counsel would review and produce documents. Your position was that the Trustee's counsel is not counsel for the Noteholders, so you cannot access all of their e-communications. You also explained that, in your view, it would not be efficient for the Noteholders to run successive iterations of negotiated search terms, rather than pulling a subset of those communications, which could be searched directly by the Trustee.

As we explained during the Meet and Confer, we disagree with the logic underlying your proposal. To begin, the Noteholders, as assignors of the Trustee's claims, have an obligation to make available to the Trustee, as assignee, documents in their possession, custody and control.[2] There is no reason why the Trustee should not be able to conduct the same searches of Noteholder files as it would of its own client, based on the common interest agreement that we understand exists between the Trustee and the Noteholders (an agreement which we assume includes confidentiality protections). The Trustee has made no showing that the Noteholders actually refuse to provide entire mailboxes to your firm or to a vendor. And to the extent that they do, the Noteholders are sophisticated and well-heeled entities that are capable of running the searches themselves or through their own outside vendor. Moreover, we are unconvinced that your proposal would increase efficiency, as you contend. As is typical in complex litigation, the Noteholders can provide e-communications for each custodian to a third-party e-discovery

---

[2] *See PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, 2019 WL 1261806, at *11 (S.D. Fla. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1258819 (S.D. Fla. Mar. 19, 2019) (holding that assignors "could not seek to reap the benefits of litigation without assuming the burden of participating in discovery" by refusing to provide documents to the trustee-assignee); *see also Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 148 (S.D.N.Y. 1997) (holding that assignees are treated as parties for purposes of discovery).

**WilmerHale**

Mario Gazzola
May 2, 2025
Page 5

vendor, and that vendor can provide hit counts to test search terms.  The Trustee's counsel can direct that process, regardless of whether it has access to the actual documents.

Without waiving this position, and reserving all rights to request additional searches, we are willing to consider your proposal based on the specific search terms proposed by the Trustee.  You said that you would provide us with such proposal by May 5, 2025.

We also discussed whether the Noteholders had hard-copy files that may be responsive to the Requests.  You said you were not sure whether any such files existed, and that you would confirm with the Noteholders whether this was the case.

We also requested that the personal phones and other devices of custodians who are current Noteholder employees be searched for relevant communications and information.  You said that you did not know to what extent, if any, the Noteholders would agree to such searches.  As you are well aware, the Trive Defendants conducted such searches of current employees in response to the Trustee's Rule 2004 discovery requests.  We see no valid basis for the Noteholders to conduct the same searches.

### 3. Time Period

Finally, we discussed the time period for the Noteholders' searches.  As we discussed, the Trive Defendants request that the searches span the time period from January 1, 2020 to March 31, 2024.  You said that the Noteholders should not have responsive documents prior to January 1, 2021, but that you would confer with the Noteholders regarding the Trive Defendants' requested time period.  We offered to negotiate a subset of proposed search terms that could be run through the Noteholders' custodians files through the 2020 time period to confirm whether that time period is appropriate.  As for the period from June 9, 2023 (in the Trustee's objections) through March 31, 2024, we explained that the alleged fraud at Lucky Bucks continued to be revealed publicly through early-2024 and that the Trive Defendants produced documents through March 31, 2024, and thus production from the Noteholders for the same period is appropriate for the same reasons.

Please let us know if you have a different understanding from the Meet and Confer.  We look forward to the updates promised and requested.

Best regards,

/s/ *Ross E. Firsenbaum*
Ross E. Firsenbaum