# **EXHIBIT F**

**quinn emanuel** trial lawyers | los angeles

295 Fifth Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7102**

WRITER'S EMAIL ADDRESS
**mariogazzola@quinnemanuel.com**

May 12, 2025

**VIA EMAIL**

Ross E. Firsenbaum, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Re:   *Abrams v. Trive Capital Management LLC, et al.*,
      Adversary Proceeding No. 24-50130 (Bankr. D. Del.).

Dear Mr. Firsenbaum,

We write in response to your April 23, 2025 and May 2, 2025 meet-and-confer letters. We confirm the contents of your letters subject to the following exceptions below.

Request for Production No. 1

You requested in your April 23 letter that we "commit to producing Rule 2004 documents on a rolling basis, any other discoverable documents produced by Shearman, and a privilege log identifying any withheld documents, all to be completed by May 30, 2025." Trive took over 13 months to finalize its Rule 2004 production and provide a privilege log, and has yet to provide a privilege log that conforms with the requirements of this District. There is no basis in law or fact to demand that the Trustee produce documents and a privilege log on a significantly more expedited basis, particularly where there is no case management schedule in place. Nevertheless, as you are aware, we have been producing 2004 documents on a rolling basis. We are reviewing the Shearman documents for privilege, but we must run the finalized proposed production by Arc Gaming for approval given that their privilege is implicated as well. Accordingly, we are not able to estimate at this time when the Shearman production will be complete.

Moreover, we disagree that the "Trustee must produce any communications between Shearman & Sterling LLP and third parties that break the privilege, as well as any communications involving the Trive Defendants (which, even if privileged, the Trive Defendants would have a right to receive)" as you claim. The Trive Defendants do not automatically have the right to receive such communications where, for example, no Trive individuals are present on emails—unless they contend they were either directing the representation or were party to the representation.

Further, the documents produced in the Revocation Proceeding—which you correctly describe as the adversary proceeding brought on January 23, 2024 by the Trustee against Arc Gaming and Lucky Bucks HoldCo, LLC—are not responsive to Request No. 1 as they are not relevant to this adversary proceeding.

Request for Production No. 3

In your April 23 letter, you state that we "agreed that the Trustee would produce documents related to the listed topics and defined terms with the exception of (1) communications between or among Noteholders that are entirely unrelated to Lucky Bucks (such as for instance, communications between two or more Noteholders relating to separate transactions unrelated to Lucky Bucks); and (2) communications that relate to different Trive sponsorships." Rather, these were just two examples we provided intending to highlight the overbreadth encompassed by Request No. 3.

Request for Production No. 4

With respect to Request No. 4, in your April 23 letter, you claim we "stated that the Trustee agreed to produce all responsive communications other than communications between the Noteholders and Houlihan Lokey that concerned engagements or transactions entirely unrelated to Lucky Bucks." We have the same objection to the production of all documents or communications regarding any other Noteholder, as this could sweep up documents that involve completely different investments.

Noteholder Discovery

In your April 23 letter, you claim that we have not "collected or reviewed any documents from the Noteholders." To clarify, while we have not conducted a formal fulsome collection, we have of course been provided materials by the Noteholders on an ad hoc basis and in response to attorney requests in order to prepare the Complaint.

We are coordinating with the Noteholders regarding hard-copies. Thus far, the Noteholders have conveyed that they either lack any hard-copy materials related to their investment or that such hard-copy materials are duplicative of their electronic materials (*i.e.*, that if any hard copies exist, they would just be printed copies of electronic materials).

We agree to expand the date range through March 31, 2024, so long as Trive agrees to the same date range in response to the Trustee's requests. We have followed up with the Noteholders regarding 2020, and confirmed that the Noteholders did not begin participating in any diligence or evaluation process prior to 2021. If you have documents or information to the contrary, we may be willing to run limited terms in 2020 to evaluate whether there may be responsive documents in that time period, but at the moment we do not see the need to run a search over a time period in which the Noteholders were not involved with Lucky Bucks.

As for custodians, **CION** has informed us that Anthony Carracino took over from a valuation perspective following the bankruptcy filing in June 2023 and therefore had no involvement in the review, analysis, or diligence regarding CION's purchase of notes. Nicholas

2

Tzoumas's correspondence and involvement is duplicative of Shane, Ava, Joe's prior to June 2023. At the time of our last meet-and-confer, we did not have the names of the individuals on **First Trust's** investment team, but we have since obtained those names: Brian Murphy, Rob O'Hara Jacob Puccetti, Colin Pigott, Madeline Schneck, and Charlie Kolacki. The latter three have since left First Trust, and in any event, had minor roles. Accordingly, we propose Brian Murphy, Rob O'Hara, and Jacob Puccetti as custodians. **Monarch** has informed us that Daniel Phelps did not work on this investment and was merely the initial person at Monarch whom Houlihan contacted regarding this investment opportunity. Mr. Phelps passed it on to the investment team to evaluate and make a decision. Monarch also explained that their investment in Lucky Bucks was made by an Irish ICAV entity, and Kevin Johannsen is the primary internal individual who handles the legal mechanics of investments by that entity; therefore it is likely that Mr. Johannsen would only have correspondence related to that process. **Hamilton Lane** shared that juniors Ryan Nassib and Holly Power were the frontliners on the deal team for the initial diligence screening and final investment memos for Lucky Bucks in September 2021. Holly was employed at Hamilton Lane from July 2021 through March 2022, and Ryan began in July 2020 but switched teams later in 2021. Olivia Traynor, who began at Hamilton Lane in July 2022, took over junior monitoring and coverage duties on Lucky Bucks in September 2022. **BC Partners** indicated that Clare Kim was not a core member of the diligence team and was purely involved with legal documentation. Her records would be duplicative of those of the other deal team members.

At this time, we do not agree to make any of these newly requested individuals custodians. However, we may be open to adding more depending on volume and search term negotiations.

Proposed First-Level Search Terms

Below are our proposed first-level search terms. "Project jackpot" and "project charm" are the two pseudonyms used by the Noteholders.

1. "LB"
2. "Lucky Bucks"
3. "Arc Gaming"
4. "Project Charm"
5. "Project Jackpot"
6. "LBVI"
7. "Trive"
8. "TCM"
9. "Damani"
10. "Shravan"
11. "Thadani"
12. "Bouskill"
13. "Manu"
14. "Sekhri"
15. "Searcy"
16. "Shafik"
17. "Kassam"
18. "Ijaz"

19. "Boyden"
20. "Georgia Lottery"
21. "GLC"
22. "coin-operated amusement machine"
23. "COAM"
24. "Southern Star"
25. "TCFIII"
26. "2786692 Ontario"
27. "master license"
28. "location license"

Best,

/s/ *Mario O. Gazzola*

Mario O. Gazzola