# **EXHIBIT G**

**WILMERHALE**

June 3, 2025

**CONFIDENTIAL**

**(Via Email)**
Mario Gazzola
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
mariogazzola@quinnemanuel.com

Ross E. Firsenbaum

+1 212 295 6323 (t)
+1 212 230 8888 (f)
ross.firsenbaum@wilmerhale.com

Re: *Abrams v. Trive Capital Management LLC, et al.*, No. 24-ap-50130 (KBO) (Bankr. D. Del.)

Dear Counsel:

We write on behalf of the Trive Defendants[1] regarding your May 12, 2025 letter (the "Letter") in connection with the Trustee's *Responses and Objections*, dated April 4, 2025 (the "Responses"), to the *Trive Defendants' First Set of Document Requests to the Plaintiff*, dated March 5, 2025 (the "Requests"), and in furtherance of our letters to you dated April 23, 2025 and May 2, 2025. To the extent we ask in this letter that the Trustee provide information or documents, we ask for a response, in writing, by June 10, 2025.

### A.  Trive Defendants' Request for Production No. 1

Your Letter raises a number of matters relating to Request No. 1. We address each in turn.

Trive Defendants' Rule 2004 Productions: The timing of the Trive Defendants' productions in response to the Trustee's March 7, 2024 Rule 2004 subpoena has no bearing on the Requests or the Trustee's obligation to timely respond to the Requests. Nevertheless, the Trustee's assertion that "Trive took over 13 months to finalize its Rule 2004 production and provide a privilege log, and has yet to provide a privilege log that conforms with the requirements of this District" is misleading insofar as it is intended to suggest that the Trive Defendants did not act reasonably in responding to the subpoena. *See* Ltr. at 1. They did. The Trive Defendants began producing documents in June 2024 and ultimately produced 197,926 pages of documents to the Trustee on a rolling basis over the next several months. The supplemental productions beginning in February 2025 came only after the Trustee, Trive, and

---

[1] The Trive Defendants are Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming LLC, and Shravan Thadani.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

WilmerHale

Mario Gazzola
June 3, 2025
Page 2

Arc Gaming agreed that Trive was authorized to produce privileged communications with Shearman & Sterling LLP ("Shearman"), which agreement was not reached until January 23, 2025.

 The Trustee's claim that Trive took over "13 months to . . . provide a privilege log" also conveniently ignores that the Trive Defendants produced an 81-page privilege log to the Trustee on November 26, 2024—when the Trive Defendants substantially completed their response to the Rule 2004 subpoena. And the Trustee's other assertions about the Trive Defendants' supplemental privilege log—that such log purportedly failed to comply with the Federal Rules of Civil Procedure and the Local Rules—are equally without merit. As the Trive Defendants explained in their May 14, 2025 letter, the Trive Defendants' supplemental privilege log complied with the Local Rules and the Federal Rules of Civil Procedure. But even so, the Trive Defendants produced a revised supplemental privilege log on May 14, 2025 in the format requested by the Trustee.

 In short, the Trive Defendants acted reasonably and diligently in producing documents and a privilege log to the Trustee in response to his subpoena, and have every basis to require that the Trustee do the same when responding to their document requests.

 <u>Shearman Rule 2004 Productions</u>: The Trustee's contention that the "Trive Defendants do not automatically have the right to [communications between Shearman & Sterling LLP ("<u>Shearman</u>") and third parties] where, for example, no Trive individuals are present on the emails," Ltr. at 2, is not supported with any legal authority. It is a well-settled principle of law that "[t]he attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); *see also In re Chevron Corp.*, 650 F.3d 276, 289-90 (3d Cir. 2011) ("[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach" (quoting *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 361 (3d Cir. 2007))). The presence of third parties on communications between Shearman, on the one hand, and Lucky Bucks or Holdings, on the other hand, waives any privilege over such communications, meaning the Trustee cannot withhold any such responsive documents on that basis. Accordingly, the Trustee must "produce any communications between Shearman [] and third parties that break the privilege, as well as any communications involving the Trive Defendants." The example in your letter referring to the situation where "no Trive individuals are present on emails" is beside the point—our prior statement that communications "involving" the Trive Defendants automatically must be produced and did not necessitate further review—was about communications in which the Trive Defendants were present.

 As for timing, my law partner Phil Anker raised in January 2025 that the Trive Defendants would be serving document requests on the Trustee seeking, among other things, the

**WILMERHALE**

Mario Gazzola
June 3, 2025
Page 3

production of Rule 2004 Discovery that the Trustee had received.  The Trustee has thus been on notice for more than four months that these documents would need to be produced.

Nonetheless, you confirmed during our May 23, 2025 meet and confer that the Trustee will begin producing documents from Shearman's Rule 2004 production on a rolling basis within two to three weeks of that call, and that you would more promptly provide us with the total number of documents in the Shearman production, so we can agree to a reasonable production deadline for the documents.  Please provide the Trive Defendants with such information.

Other Rule 2004 Productions:  The Trive Defendants understand from your prior representations that the Trustee has now produced to us all Rule 2004 Discovery that he has received (which consists of productions from the Management Defendants, Arc Gaming, Houlihan Lokey, and the Damani Defendants) except for the Shearman production discussed above.  As the Trive Defendants consider whether and to what extent they need to serve discovery requests on any of these entities or individuals, it would be helpful—to avoid duplication of effort—to understand the search parameters that the Trustee ultimately requested that each producing party use in making its production.  Accordingly, we request that the Trustee provide us with such search parameters.

The Revocation Proceeding:  You state in your Letter that documents concerning the Revocation Proceeding "are not responsive to Request No. 1 as they are not relevant to this adversary proceeding."  Ltr. at 2.  We asked you during our May 23, 2025 meet and confer whether you reviewed the documents before reaching this conclusion, or were taking the position that because the Trustee believes that the Revocation Proceeding is not related to this adversary proceeding, then the documents from the former are not relevant here as a blanket rule.  You confirmed that the Trustee had not reviewed the documents for relevance, but would consider whether he would agree to consider this set of documents as a repository to be searched for relevant documents.  Please let us know the Trustee's position.

### B.    Trive Defendants' Request for Production No. 3

The Letter's position concerning Request No. 3 confuses more than it clarifies.  The Letter states that the two categories of documents you identified during our April 18, 2025 meet and confer—"(1) communications between or among Noteholders that are entirely unrelated to Lucky Bucks (such as for instance, communications between two or more Noteholders relating to separate transactions unrelated to Lucky Bucks); and (2) communications that relate to different Trive sponsorships"—"were just two examples [the Trustee] provided intending to highlight the overbreadth encompassed by Request No. 3."  Ltr. at 2.  If these were just "examples" of categories of documents the Trustee intends to withhold from production, then what other categories of responsive documents is the Trustee refusing to produce in response to

WilmerHale

Mario Gazzola
June 3, 2025
Page 4

the Request? The Trustee's Responses do not so indicate. Please provide us with a list of such categories.

The Trive Defendants also disagree with the Trustee's position that "communications that relate to different Trive sponsorships" would not, as a blanket statement, be responsive to Request No. 3. Nevertheless, reserving all rights, the Trive Defendants will not pursue at this time in response to Request No. 3 "communications between or among Noteholders that are entirely unrelated to Lucky Bucks" and "communications that relate to different Trive sponsorships," Ltr. at 2, with the exception of communications between or among employees of Hamilton Lane discussing the Trive Defendants, as well as communications between Hamilton Lane, on the one hand, and the Trive Defendants, on the other hand, regardless of whether those documents or communications relate to other Trive sponsorships or Lucky Bucks. We understand that Hamilton Lane had an independent business relationship with the Trive Defendants, so documents discussing or reflecting the nature of that relationship, and/or Hamilton Lane's views of that relationship, would be relevant to the Trustee's allegations, including but not limited to the allegation that the Noteholders relied on Trive's sponsorship of Lucky Bucks when investing in the Notes. Please confirm in writing that the Trustee will agree to search for and produce such documents.

### C. Trive Defendants' Request for Production No. 4

The Letter states that the Trustee objects to Request No. 4 to the extent the Request seeks "the production of responsive communications other than communications between the Noteholders and Houlihan Lokey that concerned engagements or transactions entirely unrelated to Lucky Bucks," as well as "the production of all documents or communications regarding any other Noteholder, as this could sweep up documents that involve completely different investments." Ltr. at 2. Reserving all rights, the Trive Defendants will not pursue at this time "communications between the Noteholders and Houlihan Lokey that concerned engagements or transactions entirely unrelated to Lucky Bucks," or "all" documents or communications regarding any other Noteholder, *id.*; the Trive Defendants, do, however, request that the Trustee produce all documents and communications between the Noteholders and Houlihan Lokey, and among any of the Noteholders, to the extent they concern any of the subjects or topics identified in Request No. 3.

### D. Noteholder Discovery

The Letter raises a number of issues concerning discovery from the Noteholders. We address each in turn.

<u>Pre-Complaint Collections from the Noteholders</u>: The Letter states that "while we have not conducted a formal fulsome collection, we have of course been provided materials by the

WILMERHALE

Mario Gazzola
June 3, 2025
Page 5

Noteholders on an ad hoc basis and in response to attorney requests in order to prepare the Complaint." Ltr. at 2. This is not consistent with our prior communications, during which the Trustee took the position that he had not received any documents from the Noteholders. Please tell us in writing when the Trustee received documents from the Noteholders and what categories of documents he received.

As we told you during our May 23, 2025 meet and confer, we do not understand why the Trustee has not yet produced to the Trive Defendants any documents or information received from the Noteholders as part of the Trustee's "ad hoc" collections and in response to attorney requests. Please confirm that the Trustee will produce such documents promptly. We would not expect any privilege to apply to the underlying documents, and to the extent you claim any privilege over communications with the Noteholders about these documents, the Trive Defendants request a privilege log that complies with the Local Rules and the Federal Rules of Civil Procedure.

For avoidance of doubt, in addition to the production of any documents or information received from the Noteholders as part of the Trustee's "ad hoc" collections and in response to attorney requests, the Trive Defendants expect a full collection and production of documents from the Noteholders in response to the Requests (which we discuss below to the extent raised in your Letter).

Hard-Copy Documents from the Noteholders: It appears from your letter that certain responsive hard-copy materials exist. *See* Ltr. at 2. Are you representing that you have reviewed them and concluded that they are all perfect duplicates of electronic documents that are going to be produced? If not, then we request production of all such hard copy documents.

Time Period for Productions: Your Letter agrees to "expand the date range through March 31, 2024, so long as Trive agrees to the same date range in response to the Trustee's requests." Ltr. at 2. The Trive Defendants searched for and produced documents through that date in response to the Trustee's Rule 2004 subpoena. Moreover, as stated in the Trive Defendants' *Responses and Objections to the Trustee's Requests for Production*, served on the Trustee on May 12, 2025, the Trive Defendants have agreed to the production date range of January 1, 2021 to March 31, 2024 in response to the Trustee's document requests. *See* Trive Def's Resps. & Objs., Obj. to Inst. No. 14.

As to the period January 1, 2020 to December 31, 2021, the Trive Defendants reserve all rights to request searches from that period.

WILMERHALE

Mario Gazzola
June 3, 2025
Page 6

Noteholder Custodians:  The Trustee's position that the Noteholders "do not agree to make any of the[] [individuals requested by the Trive Defendants] custodians," Ltr. at 3, is not acceptable.  The Trive Defendants respond to the Trustee's position below.

*CION:*  You state in your Letter that the Trustee refuses to add Nicholas Tzoumas as a custodian because his "correspondence and involvement is duplicative of Shane [Magrann], Ava [Lennane], [and] Joe [Elsabee]'s prior to June 2023".  Ltr. at 2-3.  The Trive Defendants disagree that this justifies excluding Mr. Tzoumas as a custodian.  You represented to us during our April 28, 2025 meet and confer that Mr. Tzoumas prepared quarterly valuations of Lucky Bucks as part of CION's investment in the company; such valuations of Lucky Bucks are certainly relevant to this case, in which the Trust alleges that Houlihan Lokey's valuation of Lucky Bucks in the CIM was overstated.  *See* May 2, 2025 Ltr. from R. Firsenbaum to M. Gazzola.  Likewise, your Letter does not dispute that Mr. Tzoumas helped evaluate and conduct diligence for the Notes, so for that reason alone he should be added as a custodian.  *See* Ltr. at 3.  If Mr. Tzoumas' custodial documents are truly duplicative of other custodial documents, as you contend without supporting data, then it would not be unduly burdensome for the Trustee and CION to de-duplicate such documents against the custodial documents of Mr. Magrann, Ms. Lennane, and Mr. Elsabee.  Moreover, your Letter does not dispute that Mr. Tzoumas would have relevant, non-duplicative documents post-dating June 2023, so, at minimum, Mr. Tzoumas must be added as a custodian for the period beginning June 1, 2023 to March 31, 2024.

As to Anthony Carracino, the Letter represents that Mr. Carracino "took over from a valuation perspective following the bankruptcy filing in June 2023 and therefore had no involvement in the review, analysis, or diligence concerning CION's purchase of notes."  Ltr. at 2.  Based on that representation, we will not pursue Mr. Carracino as a custodian at this time; the Trive Defendants reserve the right to request that he be added as a custodian, including in the event discovery or further investigation shows that such representation is inaccurate.

*First Trust:*  As to the three proposed custodians identified in your Letter (listed below), please provide the following information:  (a) an explanation of the custodian's role on the Notes transactions; (b) confirmation that that the below-listed positions accurately reflect each custodian's current position and title; and (c) the position(s) and title(s) held by each of the custodians at the time of the Notes transaction:

- Brian Murphy (Portfolio Manager, Co-Chief Investment Officer)
- Rob O'Hara (Principal)
- Jacob Puccetti, CFA (Principal)

Your letter also states that "Colin Pigott, Madeline Schneck, and Charlie Kolacki . . . have since left First Trust, and in any event, had minor roles," which, in your view, justifies excluding

**WILMERHALE**

Mario Gazzola
June 3, 2025
Page 7

them as custodians. Ltr. at 3. Based on this limited information, the Trive Defendants cannot assess whether any (or all) of these deal team members should be added as custodians. Indeed, it is particularly unclear what a "minor" role on the deal team means. Accordingly, please provide us with the following information for each of Mr. Pigott, Ms. Schneck, and Mr. Kolacki: (a) his or her position(s) and title(s) at First Trust; (b) his or her start and end date(s) at First Trust; and (c) his or her role(s) in connection with the Notes transactions.

*Monarch:* In your Letter, you represent that Daniel Phelps was "merely the initial person at Monarch whom Houlihan contacted regarding this investment opportunity," and that he simply "passed [the opportunity] on to the investment team to evaluate and make a decision" on the investment. Ltr. at 3. The Trive Defendants continue to request that Mr. Phelps be added as a custodian. Based on your representations, Mr. Phelps' custodial documents could provide, among other potentially relevant information, the statements Houlihan Lokey allegedly made to Monarch regarding the nature of the investment in Lucky Bucks and Houlihan Lokey's views on Lucky Bucks, as well as Monarch's initial impressions of the Lucky Bucks investment. Based on that representation, we will agree to limit the searches of Mr. Phelps' mailbox and other custodial documents to one month before and one month after Mr. Phelps was approached by Houlihan Lokey with the Lucky Bucks opportunity. The Trive Defendants reserve the right to request that additional searches be run, including in the event that discovery or further investigation shows that such representation is inaccurate.

As to Mr. Johannsen, based on your representation that Mr. Johannsen "would only have correspondence related to . . . the legal mechanics of investments by" Monarch's Irish investment vehicle, Ltr. at 3, the Trive Defendants will not pursue searches of his custodial documents at this time; however, they reserve their right to request that he be added as a custodian at a later date, including in the event that this representation proves to be inaccurate.

*Hamilton Lane:* In the Letter, the Trustee represents that Ryan Nassib and Wendy Power were "the frontliners on the deal team for the initial diligence screening and final investment memos for Lucky Bucks in September 2021"; yet, the Trustee refuses to add them as custodians. Ltr. at 3. Given Mr. Nassib and Ms. Power's significant involvement in conducting diligence for and evaluating the Notes transaction (which the Trustee assuredly must agree means their custodial documents will be highly relevant to his claims), the Trive Defendants request—and expect—that both will be added as custodians. Additionally, the Letter represents that Mr. Nassib "switched teams later in 2021." *Id.* If you can represent in writing that his new team had nothing to do with Lucky Bucks or other issues relevant to this case, then we may be willing to consider a date cut off shortly after the time he switched teams.

As to Olivia Tranyor, the Letter represents that Ms. Traynor "who began at Hamilton Lane in July 2022, took over junior monitoring and coverage duties on Lucky Bucks in

WILMERHALE

Mario Gazzola
June 3, 2025
Page 8

September 2022." *Id.* at 3. Based on that representation, we will agree for now not to pursue searches of her custodial documents. The Trive Defendants reserve the right to request that Ms. Traynor be added as a custodian, including in the event discovery or further investigation shows that such representation is inaccurate.

**BC Partners:** The Trustee represents in the Letter that Clare Kim "was not a core member of the diligence team and was purely involved with legal documentation" and that her custodial documents would "be duplicative of those of the other deal team members." Ltr. at 3. Based on that representation, we will agree for now not to pursue searches of her custodial documents. The Trive Defendants reserve the right to request that Ms. Kim be added as a custodian, including in the event discovery or further investigation shows that such representation is inaccurate.

<u>Collection Parameters</u>: While the Letter offers collection search terms, it provides no way for the Trive Defendants to assess whether such terms would sufficiently capture all documents relevant to this matter. Additionally, it is unclear to us whether the Trustee also proposes running more targeted search terms after the documents are collected.

To reiterate our request during our May 23, 2025 meet and confer, the Trive Defendants request that you provide us with detailed hit reports showing, for each Noteholder, (a) the total document review population generated by the Trustee's proposed collection search terms, and (b) hit totals, including total hits with families and unique hits with families, for each of the Trustee's proposed collection search terms. Additionally, and reserving all rights to request that the Noteholders pull full mailboxes from all custodians and/or to request additional search terms beyond those listed below, the Trive Defendants request that the Noteholders provide the same information for the Trive Defendants' proposed additional first-level search terms, which are noted in red text below:

1. "LB"
2. "Lucky Buck*" OR "*@luckybucksga.com"
3. "Seven Aces" OR "ACE*" OR "*@sevenaces.com" OR "quantum*"
4. "Arc Gaming"
5. "Charm*"
6. "Jackpot*"
7. "Project Lucky*"
8. "B-Side" OR "Angel Amus*" OR "Dynamic Gam*" OR "Unique Amus*" OR "AKS*" OR "Advance Amus*" OR "Klass" OR "KA*" OR "Prestige" OR "Lee Caudell" OR "LC*" OR "Pinball" OR "Blue Georgia" OR "Georgia Winner*"
9. "LBVI"
10. "Trive" OR "TCM" OR "TCF*"

WILMERHALE

Mario Gazzola
June 3, 2025
Page 9

    11. "Damani" OR "Anil" OR "anil@27invest.com" OR "27success@gmail.com"
    12. "Shravan" OR "Thadani"
    13. "*@trivecapital.com"
    14. ("Connor" w/20 "Anderson") OR "Curley"
    15. "Bouskill" OR "rbouskill@djb.com"
    16. "Manu" OR "Sekhri" OR "manu@sekhri.ca" OR "manu@sevenaces.com"
    17. "Shafik" OR "Kassam" OR "kassam@luckybucksga.com" OR "tony@luckybucksga.com"
    18. "Hassan" OR "Ijaz" OR "hassan@luckybucksga.com"
    19. "Boyden" OR "jamie@luckybucksga.com" OR "jamie@sevenaces.com"
    20. ("Stephanie" w/30 ("Lippa" OR "Alito")) OR "stephanie@sevenaces.com"
    21. "Georgia Lotter*" OR "GLC"
    22. "Coin-operated" OR "Coin operated" OR "COAM" OR "coinop" OR "coin-op" OR "coin op"
    23. "Southern Star"
    24. "Location contract*" OR "master license*" OR "location license*" OR "location owner*"
    25. "Farm Team"
    26. ("M&A" OR acquisition* OR merger*) w/20 "pipeline"
    27. "Chisti" OR "Mohammed"
    28. "Anand" OR "Vaswani"
    29. "Shakeel" OR Haque
    30. "Mohubil" OR "Motin"
    31. ("Arnaldo" OR "Jonathan" OR "Linares") w/30 "Perez"
    32. "Jonathan" w/30 "Howard"
    33. "Derrick" w/30 "Smith"
    34. "Sayani" OR "Al Amin"
    35. "Imran" OR "Ali"
    36. "27th Invest*"
    37. "2786692 Ontario"
    38. ("Neal" w/20 "Goldman") OR "neal.p.goldman@gmail.com"
    39. "Abrams" OR "Trustee*"

    We are available to meet and confer to discuss these issues further.

Best regards,


/s/ *Ross E. Firsenbaum*
Ross E. Firsenbaum