# <u>EXHIBIT I</u>

WILMERHALE

July 17, 2025

**Ross E. Firsenbaum**

+1 212 295 6323 (t)
+1 212 230 8888 (f)
ross.firsenbaum@wilmerhale.com

**CONFIDENTIAL**

**(Via Email)**
Mario Gazzola, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
mariogazzola@quinnemanuel.com

Re:  ***Abrams v. Trive Capital Management LLC, et al.***, No. 24-ap-50130 (KBO)
(Bankr. D. Del.)

Dear Mario:

We write on behalf of the Trive Defendants[1] in response to your June 23, 2025 letter (the
"Letter") regarding the Trustee's Responses, and in furtherance of our letters dated April 23,
2025, May 2, 2025, and June 3, 2025.

**A.  Rule 2004 Discovery: Shearman Production**

Thank you for providing us with the number of documents that Shearman produced to the
Trustee in Rule 2004 Discovery.  We are amenable to a Rule 502(d) stipulation, which would
permit the Trustee promptly to provide the entire Shearman production to the Trive Defendants,
provided of course that its terms are acceptable to the Trive Defendants and that the negotiation
and execution of such stipulation do not cause further undue delay in the production of these
documents, as it already has been four months since we served our document requests.  Please
send us the current draft of the stipulation and include us in the correspondence with relevant
parties so we can ensure that this process advances in an expeditious manner.[2]

**B.  Rule 2004 Discovery: Search Parameters**

Your statement that the "Trustee does not know what search parameters all parties and
third-parties used" in response to the Rule 2004 subpoenas surprises us, given that the Trustee
spent weeks negotiating the parameters of the Trive Defendants' searches in response to the Rule
2004 subpoena that the Trustee served on them.  The Letter's use of the word "all" leaves us no

---

[1] Capitalized terms have the same meaning as in my prior correspondence regarding these
topics, unless otherwise defined herein.
[2] The Trive Defendants, of course, reserve all rights, including but not limited to seeking
production of these documents without a such a stipulation.

WilmerHale

Mario Gazzola
July 17, 2025
Page 2

choice but to question whether you are aware of *any* search parameters used by *any* third-party, or, at the very least, what, if any, understanding you have as to the search parameters used by each producing party. To ensure that we understand the scope of the searches conducted and productions made, we request that you promptly produce to us all communications between your firm (and any other counsel for the Trustee), on the one hand, and any producing party (*e.g.*, Arc Gaming, Shearman, Houlihan Lokey, the Management Defendants, and the Damani Defendants) on the other hand, concerning the scope of each producing party's search and/or production Rule 2004 subpoena.

### C.   Revocation Proceeding

Your statement that the "[d]ocuments from the Revocation Proceeding concern distinct legal and factual issues and are unlikely to bear on any subject matter in the instant litigation" is false. *See* Ltr. at 2. The Trustee's Complaint in the Revocation Proceeding explicitly relates to "recent public revelations about a fraud perpetrated on the Court by Lucky Bucks, LLC . . . and Lucky Bucks HoldCo, LLC"—the alleged B-Side business fraud that pervades the Amended Complaint in this adversary proceeding and that is the subject of the "Georgia Action," which the Trustee agrees is relevant in this adversary proceeding. *See Abrams v. Lucky Bucks, LLC, et al.*, No. 24-50009-KBO (Bankr. D. Del. Jan. 23, 2024), Dkt. No. 1 ¶¶ 1, 4-8; Am. Compl., D.I. 58 ¶¶ 98, 199, 228, 239-68; *see also* Trustee Response to Request No. 2. Even if the Trustee "expects such documents would be included in his other document productions," Ltr. at 2, the Trustee must search repositories of documents that are reasonably likely to have discoverable information, and the productions in the related Revocation Proceeding clearly are such repositories. In light of the Trustee's refusal to search these repositories, we have reached an impasse on this issue. If the Trustee is unprepared otherwise to change his position, please let us know your availability next week for a meet and confer.

### D.   Trive Requests for Production No. 3

Your Letter again fails to explain what documents the Trustee will—and will not—agree to produce in response to Request No. 3. Request No. 3 requires the Trustee to produce "[a]ll Documents regarding" certain listed topics and categories. *See* Request No. 3. Contrary to your position in the Letter (at 2), the Federal Rules of Civil Procedure obligate the Trustee to "state whether any responsive materials are being withheld" and the "basis for the objection," and "specify the part and permit the inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Your Response to Request No. 3 does not state what documents the Trustee intends to withhold from his production, nor did the Response specify what categories of documents the Trustee would produce in response to the Request. Instead, you merely objected to the Request to the extent it requested the production of all documents related to the listed topics and categories "irrespective of their relevance to the current proceeding." *See* Responses, at 9-11. Accordingly, we request that the Trustee identify what categories of documents the Trustee intends to withhold from

WILMERHALE

Mario Gazzola
July 17, 2025
Page 3

production in response to the Request on the basis that such topics or categories are, in the
Trustee's view, not relevant to the adversary proceeding.

### E.      Noteholder Discovery

Your Letter raises a number of topics in connection with discovery from the Noteholders.
We address each such topic in turn.

Ad Hoc Requests from the Noteholders:  You continue to make inconsistent and
contradictory statements concerning the Trustee's collection and review of documents from the
Noteholders.  *See* Ltr. at 2.  During our April 18, 2025 meet and confer, you told us without
qualification that the Trustee had not collected or received any documents from the Noteholders
either in the Adversary Proceeding or in Rule 2004 Discovery.  Your May 12, 2025 letter
backtracked from that statement, claiming that while "you have not conducted a formal fulsome
collection, you have . . . been provided materials by the Noteholders on an ad hoc basis and in
response to attorney requests in order to prepare the Complaint."  *See* May 12, 2025 Ltr. from M.
Gazzola to R. Firsenbaum, at 2.  We called out this inconsistency in our June 3 letter (the "June 3
Letter") and asked that you confirm in writing when the Trustee received documents from the
Noteholders and produce the documents received as part of those "ad hoc" collections.  *See* June
3 Ltr. at 4-5.

Your Letter neither answers this question nor agrees to produce these documents in full
and now, four months after receiving our document requests, when they are obviously relevant.
Search parameters are not needed to make such a production.  We therefore have reached an
impasse on this issue.  If the Trustee is unprepared otherwise to change his position, please let us
know your availability next week for a meet and confer.

Hard Copy Materials:  Your Letter states that it is the Trustee's "understanding from the
custodians, and . . . the Trustee's review of documents collected to date, . . . that hard-copy
materials are entirely duplicative of electronic materials that have been or will be produced."
Ltr. at 2.  It appears, however, from your Letter that this is based at least in part on the
Noteholder custodians' say-so rather than collection and attorney review of all potentially
relevant hard copy documents.  Please confirm whether the Trustee intends to rely on custodian
say-so or do more (and if so what more) before concluding that there are no unique hard copy
documents to be produced.

Noteholder Custodians and Search Terms:  We disagree with your refusal to add the
custodians the Trive Defendants requested in our June 3 Letter.  In addition, the Letter's
comparison of the total number of custodians proposed *collectively* by the six Noteholders, each
of which had its own deal team working on the Notes, with the total number of custodians agreed

WilmerHale

Mario Gazzola
July 17, 2025
Page 4

to by the Trive Defendants in connection with their Rule 2004 productions is entirely inapt. Nevertheless, to facilitate an initial production of documents from the Noteholders' files, the Trive Defendants will not require searches of these additional custodians at this time but reserve all rights to seek to require the Trustee to collect and produce documents from such additional custodians.[3]

Finally, we appreciate the Trustee's agreement to most of the search terms proposed in our June 3 Letter. *See* Ltr. at 3-4. Reserving all rights to request additional or modified search terms, the Trive Defendants agree to the Trustee's proposal in the Letter to generate hit reports applying those search terms to the documents of the agreed-upon custodians. Once those reports are available, the Trive Defendants can assess whether additions or modifications to the search terms are warranted, whether the Trustee must agree to additional custodians, and/or whether the Trustee should proceed to review and produce the documents hitting on those terms.

For avoidance of doubt, the search terms the Trustee agreed to run are:

1. "LB"
2. "Lucky Buck*" OR "*@luckybucksga.com"
3. "Seven Aces" OR "ACE*" OR "*@sevenaces.com" OR "quantum*" [as to Monarch only, "Quantum Gaming"]
4. "Arc Gaming"
5. "Charm*"
6. "Jackpot*"
7. "Project Lucky*"

---

[3] In response to the inquiry in your Letter, the Trive Defendants continue not to see a basis for adding Conner Searcy as a custodian in response to the Trustee's *First Set of Requests for Production of Documents Propounded to the Trive Defendants*, dated April 11, 2025. During our May 23, 2025 meet-and-confer, your only stated basis for this request was that Mr. Searcy was Trive's registered contact with the Georgia Lottery Commission ("GLC") and received GLC emails relating to Trive's investment in Lucky Bucks. That is not a valid basis for making Mr. Searcy a custodian. As is evident from the two documents cited in the Amended Complaint, Mr. Searcy's practice was to forward the GLC email alerts he received to Mr. Thadani, whose custodial documents were long ago produced to the Trustee. Moreover, GLC alerts received by Mr. Searcy were also received by Jamie Boyden, Lucky Bucks's GLC representative, and the Trustee has access to Mr. Boyden's custodial documents from Arc Gaming's servers and its Rule 2004 productions. Thus, based on the Trustee's stated theory of relevance (which we do not concede), the discovery he is seeking from Mr. Searcy's documents is duplicative and unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

**WilmerHale**

Mario Gazzola
July 17, 2025
Page 5

8. "B-Side" OR "Angel Amus*" OR "Dynamic Gam*" OR "Unique Amus*" OR

9. "AKS*" OR "Advance Amus*" OR "Klass" OR "KA*" OR "Prestige" OR "Lee Caudell" OR "LC*" OR "Pinball" OR "Blue Georgia" OR "Georgia Winner*" "LBVI"

10. "LBVI"

11. "Trive" OR "TCM" OR "TCF*"

12. "Damani" OR "Anil" OR "anil@27invest.com" OR "27success@gmail.com"

13. "Shravan" OR "Thadani"

14. "*@trivecapital.com"

15. ("Connor" w/20 "Anderson") OR "Curley"

16. "Bouskill" OR "rbouskill@djb.com"

17. "Manu" OR "Sekhri" OR "manu@sekhri.ca" OR "manu@sevenaces.com"

18. "Shafik" OR "Kassam" OR "kassam@luckybucksga.com" OR "tony@luckybucksga.com"

19. "Hassan" OR "Ijaz" OR "hassan@luckybucksga.com"

20. "Boyden" OR "jamie@luckybucksga.com" OR "jamie@sevenaces.com"

21. ("Stephanie" w/30 ("Lippa" OR "Alito")) OR "stephanie@sevenaces.com"

22. "Georgia Lotter*" OR "GLC"

23. "Coin-operated" OR "Coin operated" OR "COAM" OR "coinop" OR "coin-op" OR "coin op"

24. "Southern Star"

25. "Location contract*" OR "master license*" OR "location license*" OR "location owner*"

26. "Farm Team"

27. "Chisti" OR "Mohammed"

28. "Anand" OR "Vaswani"

29. "Shakeel" OR Haque

30. "Mohubil" OR "Motin"

31. ("Arnaldo" OR "Jonathan" OR "Linares") w/30 "Perez"

32. "Jonathan" w/30 "Howard"

33. "Derrick" w/30 "Smith"

34. "Sayani" OR "Al Amin"

35. "Ali" OR "Imran" [this term will not be run over Monarch custodial documents]

36. "27th Invest*"

37. "2786692 Ontario"

38. ("Neal" w/20 "Goldman") OR "neal.p.goldman@gmail.com"

39. "Abrams" OR "Trustee*"

<u>Sources</u>:  We have not yet received from you (1) the "anticipated volume of documents and information included in the deal files and/or shared drives of the Noteholders," and (2) confirmation that the Noteholders will agree that "the personal phones and other devices of

WILMERHALE

Mario Gazzola
July 17, 2025
Page 6

custodians who are current Noteholder employees [will] be searched for relevant communications and information." *See* May 2, 2025 Ltr. from R. Firsenbaum to M. Gazzola, at 4-5. Please provide us with answers to such request in writing.

We look forward to your response, which we expect to receive by no later than July 31, 2025.

Best regards,

/s/ *Ross E. Firsenbaum*
Ross E. Firsenbaum