## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | Case No. 23-10756 (KBO) |
| Debtor. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky<br>Bucks Holdings LLC and as assignee, | Adversary Proceeding<br><br>Adv. Proc. No. 24-50130 (KBO) |
| Plaintiff, | |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO TRIVE DEFENDANTS'
## MOTION TO COMPEL

QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew R. Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016

WHITEFORD TAYLOR
    & PRESTON LLC
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 295-5674
Email:   wtaylor@whitefordlaw.com
              blehman@whitefordlaw.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...............................................................................................................4

    A.    The Trustee's Lawsuit.............................................................................4

    B.    Trive's Motion to Compel .....................................................................5

LEGAL STANDARD........................................................................................................9

ARGUMENT ..................................................................................................................10

    I.    THE DISCOVERY DISPUTE IS—AND HAS ALWAYS BEEN—MOOT
.....................................................................................................................10

    II.    PRODUCING THE REQUESTED DOCUMENTS SEPARATELY
WOULD REVEAL ATTORNEY WORK PRODUCT ........................................11

    III.    TRIVE HAS NOT SATISFIED THE REQUIREMENTS FOR
IMMEDIATE PRODUCTION............................................................................13

CONCLUSION................................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

<u>Cases</u>

*Allen v. Banner Life Ins. Co.*,
  340 F.R.D. 232 (D.N.J. 2022) .................................................................................13

*Bayer AG v. Betachem, Inc.*,
  173 F.3d 188 (3d Cir. 1999) .......................................................................................9

*Boselli v. Se. Pa. Transp. Auth.*,
  108 F.R.D. 723 (E.D. Pa. 1985) ...............................................................................13

*Decker v. Nagel Rice LLC*,
  716 F. Supp. 2d 228 (S.D.N.Y. 2010) ......................................................................10

*Fin. Guar. Ins. Co. v. Putnam Advisory Co, LLC*,
  314 F.R.D. 85 (S.D.N.Y. 2016) ...............................................................................10

*Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*,
  825 F.2d 676 (2d Cir. 1987) .....................................................................................12

*Hamilton v. Bromley*,
  862 F.3d 329 (3d Cir. 2017) .....................................................................................10

*In re Grand Jury Subpoenas dated Mar. 19 & Aug. 2, 2022*,
  2022 WL 31030322 (S.D.N.Y. Sept. 12, 2022) .......................................................12

*Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*,
  662 F. Supp. 2d 375 (D. Del. 2009) ...........................................................................9

*James Julian, Inc. v. Raytheon Co.*,
  93 F.R.D. 138 (D. Del. 1982) ...................................................................................11

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ........................................................................... 14-15

*Pritchard v. Dow Agro Sciences*,
  263 F.R.D. 277 (W.D. Pa. 2009) ..............................................................................12

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*,
  254 F.R.D. 216 (E.D. Pa. 2009) ...............................................................................13

*Sporck v. Peil*,
  759 F.2d 312 (3d Cir. 1985) ...............................................................................2, 11

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,
   202 F.R.D. 612 (D. Ariz. 2001) ..............................................................................14

## **Rules/Statutes**

Federal Rule of Civil Procedure 16 ...........................................................................13

Federal Rule of Civil Procedure 26 ...................................................................... 12-14

Federal Rule of Civil Procedure 33 ...........................................................................13

Federal Rule of Civil Procedure 34 ...........................................................................13

Federal Rule of Civil Procedure 37 ........................................................................9, 13

Federal Rule of Civil Procedure 45 ...........................................................................13

Federal Rule of Bankruptcy Procedure 7016................................................................13

Federal Rule of Bankruptcy Procedure 7026................................................................13

Federal Rule of Bankruptcy Procedure 7033................................................................13

Federal Rule of Bankruptcy Procedure 7034................................................................13

Federal Rule of Bankruptcy Procedure 7037.............................................................9, 13

Federal Rule of Bankruptcy Procedure 7045................................................................13

Federal Rule of Bankruptcy Procedure 9016................................................................14

## **Other Authorities**

8A *Wright & Miller's Federal Practice & Procedure* § 2046.1 (3d ed. May 2025
   update)................................................................................................................14

Marc Abrams (the "Trustee" or "Plaintiff"), solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Lucky Bucks Holdings LLC ("Holdings") and as assignee of causes of action previously belonging to Holdings' creditors, respectfully submits this memorandum of law in opposition to the motion of defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming LLC, and Shravan Thadani (collectively, the "Trive Defendants" or "Trive") to compel ("Trive Motion" or the "Motion").

## PRELIMINARY STATEMENT

1.      Trive is nearly right when it asserts that it "should never have needed to file" its Motion.  Trive Mot. ¶ 1.  Indeed, there was no reason to file it at all.  Trive seeks this Court's intervention in the absence of a genuine discovery dispute: the Trustee has already agreed to produce the documents that Trive wants, and has already produced the vast majority of them. There is thus no basis for the requested relief, which amounts to a request for specific expedited discovery in the context of a case in which no discovery schedule has been set.

2.      This action stems from the fraud and corporate looting of Holdings by Trive and other defendants, several of whom Trive installed on Holdings' board.  Through misleading statements, Trive marketed $250 million in notes (the "Notes"), and then in a fraudulent transfer, caused Holdings to channel over $120 million to entities controlled by Trive, leaving Holdings insolvent as a result.  First Am. Compl. ("FAC") ¶¶ 17, 155-89.  The Trustee has asserted numerous claims against Trive, including fraudulent transfer, securities fraud under Georgia, Texas, and Delaware law, common law fraud, and negligent misrepresentation.  *Id.*  ¶¶ 329-43.

3.      As part of this litigation, the Trustee has attempted to work reciprocally with Trive to engage in a two-way discovery process.  Trive has requested, among other things, the documents that were used to support the Amended Complaint, and the Trustee has repeatedly assured Trive

1

that it will receive those documents.  Indeed, before this Motion was filed, the Trustee **had already produced the overwhelming majority of these documents** among the over 240,000 documents the Trustee has produced to date.  *See* Declaration of Mario O. Gazzola ("Gazzola Decl.") ¶ 9.

4.    The only documents supporting the Amended Complaint that the Trustee has not yet produced are the specific documents compiled by the Noteholders at the request of the Trustee's counsel, pursuant to common interest agreements, following privileged discussions with the Noteholders.  Producing this compilation of documents immediately, in the form in which they were compiled, would reveal attorney work product.  For that reason, the Trustee has made clear that he will produce those documents among the Trustee's first general production of Noteholder documents.  Thus, Trive will receive the few additional documents it seeks promptly, but in a format that does not reveal the "selection and compilation of documents by counsel" that "falls within the highly protected category of opinion work product."  *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

5.    Lost within Trive's intentionally opaque (and incorrect) assertions that the Trustee has not complied with discovery in producing the Noteholder documents is the fact that the Trustee has a burden that Trive does not: as the Court-appointed representative of the Estate, the documents in his possession are exclusively materials generated by others.  In order to facilitate discovery in this action, the Trustee has agreed to collect and produce documents from the Noteholders (defined below, ¶ 8).  To comply with Trive's requests, the Trustee had to enter into NDAs with the Noteholders (covering documents collected that are not relevant to this dispute), and now must coordinate searches and collect, review, and transmit all responsive documents from those separate groups of investors—a time-consuming process that requires the cooperation of third parties.  For these reasons, the Trustee is not yet in a position to make his first production of documents

collected from the Noteholders, though he expects to make that initial production soon.  Notably, there is still no discovery schedule in place, Trive's own motion to dismiss is pending, and the Trustee has already produced over 240,000 documents, such that Trive cannot credibly argue it has suffered any prejudice.

6.      Trive's Motion is thus a poorly disguised attempt to obtain highly protected opinion attorney work product.  Indeed, as the Trustee has explained to Trive, producing these documents as an isolated set will reveal privileged strategic discussions between the Noteholders and the Trustee's counsel regarding which compilation of documents the Trustee's counsel requested for use in the complaint.  Trive's demand to receive this small subset of compiled documents now, in a standalone production, before a discovery schedule has even been set, can only be justified by Trive's desire to receive those documents in a format that permits Trive to violate the Trustee's opinion attorney work product privilege.

7.      Trive advances several arguments to compel immediate production, none of which withstands scrutiny.  *First*, the Trustee has not "fail[ed] to produce documents."  *Contra* Mot. ¶ 19 (citation omitted).  To the contrary, the Trustee has already produced over 240,000 documents (compared to Trive's production of zero documents in this proceeding), Gazzola Decl. ¶ 9, and has given repeated and continued assurance that he will produce all responsive, non-privileged documents, including the "Core Noteholder Documents."  Thus, no justiciable discovery dispute exists.  *Second*, despite Trive's arguments to the contrary (Mot. at 8-9), producing this specific set of documents, as a distinct set, will expose attorney work product by revealing the collection of specific documents assembled through communications between the Noteholders and counsel. Producing these documents in compiled form fits comfortably within the category of privileged communications that courts consistently protect from disclosure.  *Third*, Trive's assertion that the

Trustee would face "no undue burden" (Mot. ¶ 21) from production similarly lacks merit. Compelling immediate production of documents in a form that would reveal work product would substantially burden the Trustee and contravene the guiding principles of the discovery process— particularly when Trive has not demonstrated any urgency warranting production at this stage. Accordingly, this Court should deny the Motion.

## **BACKGROUND**

### A.    **The Trustee's Lawsuit**

8.    The Trustee brings certain claims as assignee on behalf of funds managed by six asset managers: (1) Hamilton Lane Strategic Opportunities Fund VI (Series 2020) Holdings LP, managed by Hamilton Lane Advisors LLC; (2) First Trust Alternative Opportunities Fund, managed by First Trust Capital Management LP; (3) MFI ICAV, managed by Monarch Alternative Capital LP; (4) BCP Special Opportunities Fund II Originations LP, Portman Ridge Finance Corporation, Alternative Credit Income Fund, Logan Ridge Finance Corporation, BCP-Window Secondary Credit Opportunities LP, BCP Special Opportunities Fund II GP LP, Blue Sky Credit Fund LP, managed by BC Partners; (5) Marathon Centre Street Partnership, LP, MCSP Sub, LLC, TRS Credit Fund, managed by Marathon Asset Management LP; and (6) CION Investment Corporation, managed by CION Investment Management, LLC (collectively, the "Noteholders").

9.    To evaluate potential claims, the Trustee carried out his charge to investigate the true history and financial condition of Holdings by using the bankruptcy discovery device available under Federal Rule of Bankruptcy Procedure 2004.  The Trustee filed his First Amended Complaint against Trive and other defendants, asserting claims for, among other things, securities fraud, improper dividends, and common law fraud on January 21, 2025.  ECF 58.  While preparing the Complaint and the First Amended Complaint, the Trustee's counsel had several conversations with each of the Noteholders under applicable common interest agreements.  Based on those

4

privileged conversations, the Trustee's counsel requested specific compilations of documents that the Trustee could review and incorporate into the Complaint.

10.    On March 24, 2025, Trive filed its Motion to Dismiss the Amended Complaint, which the Trustee opposed.  ECF 69, 89, 95.  This Court has neither ruled on nor scheduled a hearing for that motion.  No case management schedule has been entered, and there is not yet a deadline for discovery.

### B.    Trive's Motion to Compel

11.    On October 11, 2024, rather than issue formal discovery requests, Trive emailed the Trustee to request "all documents upon which the Trustee relied in drafting the complaint, including without limitation all documents quoted in or incorporated by reference into the complaint."[1]  ECF 117-1 at 3.  Trive made this informal request even though it had not completed production in response to the Trustee's Rule 2004 subpoena—which the Trustee served months earlier on March 7, 2024, and to which Trive served objections on April 12, 2024.  *See* Gazzola Decl., Ex. 1.

12.    Trive still has not produced a single document responsive to requests served in this adversary proceeding.  Rather, to date, Trive has only produced documents in response to the March 2024 Rule 2004 subpoena.  Incredibly, despite Trive's empty complaints of delay here, Trive did not certify completion of the Rule 2004 production until February 27, 2025, nearly a full year after the Rule 2004 subpoena was served.  *See* Gazzola Decl., Ex. 2.  And even that purported

---

[1]    In order to begin producing documents without delay, the Trustee circulated a draft protective order to the Defendants on November 14, 2024.  Gazzola Decl., Ex. 6 at 9-10.  However, the protective order was not filed until April because counsel to all Defendants did not approve its contents until March 31, 2025.  *Id.* at 1-3.  The Trustee began making his production to Trive in April 2025, after the protective order was entered, and after obtaining consent from the Rule 2004 producing parties (who had each entered into separate confidentiality stipulations with the Trustee governing those productions).

certification of completion was premature—Trive made subsequent productions responsive to that Rule 2004 subpoena up until May 14, 2025, fourteen months after receiving the subpoena. Gazzola Decl. ¶ 8. Making matters worse, in recent discussions, Trive has conceded that it failed to produce critical documents regarding subsequent transfers. Gazzola Decl., Ex. 3 (conceding that, prior to the Trustee filing his Complaint, Trive transferred proceeds from fraudulent transfers to Trive's investors, but that Trive did not produce documents reflecting those transfers in response to the Trustee's Rule 2004 request for documents reflecting subsequent transfers).[2]

13.     Though recognizing that the Trustee's "requests to Trive have been outstanding many months longer than your … request," the Trustee nonetheless expressed willingness to engage in a "reciprocal undertaking." ECF 117-1 at 2. In his response, the Trustee noted that, while he wished to work reciprocally with Trive, he assumed that Trive was investigating its own documents so that the Trustee could raise any potential issues with Trive's production. *Id.* Subject to that assumption, the Trustee agreed to produce what Trive wanted. *Id.* The Trustee noted that this mutual understanding and production would ensure that discovery would not be "a one way street." *Id.*

14.     A production burden that impacts only the Trustee—and which Trive ignores—is that the Trustee did not generate or create any relevant documents of his own: he was not appointed as Trustee until November 2023. The documents Trive seeks from the Noteholders must be collected from other parties—six distinct groups of investors. *See supra*, p. 4.

---

[2] Indeed, Trive filed this misguided Motion in the midst of the Trustee's discussions with Trive about Trive's non-compliance with the Rule 2004 subpoena, as well as Trive's refusal to review just 10,000 additional documents from a key custodian's inbox. The timing of Trive's motion, which seeks documents the Trustee has already agreed to produce, suggests it was filed tactically as an attempt to distract from Trive's actual refusal to produce—or even search for—relevant materials.

15.     Still, in response to requests Trive served in this proceeding, the Trustee has already produced over 240,000 documents,[3] including documents the Trustee received in Rule 2004 discovery and documents the Trustee received in a separate adversary proceeding against Arc Gaming.  Gazzola Decl. ¶ 9.  Critically, the overwhelming majority of documents underlying the Complaint have ***already been produced***.[4]  *Id.*

16.     With its Rule 2004 production still incomplete—as it continued to produce documents after its premature certification of completion on February 27, 2025—on March 5, 2025, the Trive Defendants served their *First Set of Document Requests to the Plaintiff* (the "Document Requests").  *See* ECF 117-2.

17.     Trive's Document Requests went beyond what Trive originally requested in its October 11 email.  In addition to requesting "[a]ll Documents regarding any of the allegations in the Amended Complaint" (Request No. 6), ECF 117-3 at 15-22, Trive additionally sought, among other things, all documents regarding the Notes (Request No. 3).  ECF 117-2 at 14-15.

18.     The Trustee agreed to produce documents underlying the First Amended Complaint in October 2024.  ECF 117-1 at 2.  In April 2025, in his Responses and Objections to Trive's Document Requests ("Responses"), the Trustee reiterated that he would produce non-privileged

---

[3]   At the same time, in seventeen months since receiving a Rule 2004 subpoena, Trive has reviewed just 40,000 documents from two custodians, of which Trive has produced just 21,000 documents.  *See* Gazzola Decl., Ex. 3.  Trive has not produced a single document in response to the Trustee's Requests for Production, served in this action, and among others, has taken the position that Trive will not add a relevant custodian whose involvement has been clearly established by Trive's existing production.  The Trustee expects to file a motion to compel in short order if Trive continues to stonewall any further discovery.

[4]   The only documents that the Trustee received during Rule 2004 discovery that he has not produced are those concerning the Trustee's legal advisors.  To produce these documents, the Trustee sent Trive a Federal Rule of Evidence 502(d) Stipulation on July 18, 2025.  *See* Gazzola Decl., Ex. 4 at 1-2.  Trive did not respond for nearly four weeks, only sending edits to the document on August 14, 2025.  *Id.* at 1.

responsive documents underlying the First Amended Complaint.  ECF 117-3 at 23.  However, the Trustee objected to those requests for the specific compilation of Noteholder documents—in the form they were compiled pursuant to specific attorney requests—on the basis of the attorney work product doctrine.  ECF 117-3 at 5, 13.

19.     On April 18, 2025, Trive and the Trustee (together, the "Parties") met and conferred to discuss the Responses.  *See* ECF 117-4 at 1.  During that meet-and-confer, contrary to Trive's misrepresented summary, the Trustee did not state he had reviewed no documents from the Noteholders; rather, the Trustee explained that no formal collection had been conducted.  In response to Trive's apparent misunderstanding, the Trustee reiterated this position in his May 12 letter, noting that, although he had not yet done a "formal fulsome collection," he had been provided materials by the Noteholders.  ECF 117-6 at 3.

20.     On June 23, 2025, the Trustee again noted that "[o]n no occasion has the Trustee represented that he has not received any documents from the Noteholders whatsoever."  ECF 117-8 at 3.  Rather, "the Trustee has only stated that he has not conducted any coordinated discovery efforts with the Noteholders in response to the Trive Defendants' Requests for Production."  *Id.* The Trustee, for the third time, confirmed that he "will produce all responsive, non-privileged documents he has received from the Noteholders."  *Id.*

21.     In the July 22 meet-and-confer, the Trustee reiterated that production of certain documents from the Noteholders could constitute disclosure of attorney work product, just as he had noted in his initial Responses, *see* ECF 117-3 at 5, 14, 23, but that he would ultimately produce the "Core Noteholder Documents" to Trive.  *See* ECF 117-10 at 2-3.

22.     On July 31, 2025, the Trustee notified Trive that he was working diligently to collect documents from the six groups of distinct Noteholders.  *See* ECF 117-11 at 3.  He informed

Trive of his substantial progress in document collection, explaining that he "has received documents from four Noteholders, and the remaining two expect to produce their documents … in the coming days." *Id.*  The Trustee has collected these documents and run Trive's initial search terms, which have yielded a total reviewable population of over 660,100 documents.  *See* Gazzola Decl., Ex. 5.  By contrast, the total number of documents Trive reviewed for its Rule 2004 production—which review Trive took over fourteen months to complete—was just 40,000.  *See* Gazzola Decl., Ex. 3.

23.     Despite the Trustee's repeated assurances of fulsome production and continued progress towards making that production, Trive filed its motion to compel on August 12, 2025, seeking immediate production of documents that the Noteholders provided to the Trustee to support allegations in the amended complaint related to the Notes.  *See* Mot. ¶¶ 1, 25.  Trive contends that the Trustee: (i) has waived any assertion of privilege; (ii) failed to establish that the requested documents are privileged; and (iii) would not face undue burden from immediate production.  *Id.* ¶¶ 22-24.

## **LEGAL STANDARD**

24.     "A party seeking discovery may move for an order compelling" production if the opposing "party fails to produce documents."  Fed. R. Civ. P. 37(a)(3); *see* Fed. R. Bankr. P. 7037 (applying Rule 37 to bankruptcy adversary proceedings).  The movant "bears the burden of demonstrating the relevance of the sought information to either the claims, defenses, or the subject matter of the litigation."  *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009).  But the right to discovery "is not unlimited," and courts must deny requests that are "unreasonably cumulative or duplicative, or … obtainable from" a "more convenient, less burdensome or less expensive" source.  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citation omitted).

9

## ARGUMENT

25.      This Court should deny the Motion for three reasons.  *First*, there is no actual discovery dispute because the Trustee has already agreed to produce these documents.  *Second*, producing documents that the Noteholders compiled for the Trustee at request of the Trustee's counsel—in that specific compiled form—would reveal privileged attorney work product.  *Third*, Trive has demonstrated no immediate need for the documents, and compelling production now would unduly burden the Trustee.

## I.      THE DISCOVERY DISPUTE IS—AND HAS ALWAYS BEEN—MOOT

26.      Ultimately, Trive is not entitled to its requested relief because there is no actual dispute.  "Where the party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co, LLC*, 314 F.R.D. 85, 88 (S.D.N.Y. 2016); *see also Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 236 (S.D.N.Y. 2010) (determining that "plaintiffs' first motion to compel is moot" because "Defendants agreed to produce" the relevant documents).

27.      This is not a situation where the Trustee took a contrary position and then reversed that position upon receiving a motion to compel—rather, as the Trustee has made clear again and again, the Trustee will produce all responsive non-privileged documents from the Noteholders. *See* ECF 117-1 at 2; 117-3 at 23; 117-8 at 3.  In his Responses to Trive's Document Requests, the Trustee stated he would produce responsive, non-privileged documents in response to the request for documents regarding the allegations in the First Amended Complaint.  ECF 117-3 at 23.  That remains true: the Trustee will provide Trive with all non-privileged documents responsive to its request.  The lack of any genuine dispute between the parties renders the Motion moot and as such, non-justiciable.  *See Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017).

## II.   PRODUCING THE REQUESTED DOCUMENTS SEPARATELY WOULD REVEAL ATTORNEY WORK PRODUCT

28.     Trive's assertion that the requested documents are not privileged (Mot. at 8-9) likewise lacks merit.  The Third Circuit has made clear that "the selection and compilation of documents by counsel … falls within the highly protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).  This is true even when "[i]t is conceded that none of the individual documents … contain[] work product."  *Id.* at 313.  "In selecting and ordering a few documents out of thousands counsel [can] not help but reveal important aspects of his understanding of the case."  *Id.* (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982)).

29.     Here, producing documents that the Noteholders provided to the Trustee's counsel—in response to counsel's specific requests—in a specific production, in which only those specific compilations of documents are produced will reveal attorney work product because it will show the materials counsel selected and requested from the Noteholders for the specific purpose of initiating litigation.  *See* Gazzola Decl. ¶ 10.  These are documents that counsel discussed with the Noteholders and handpicked to draft the Amended Complaint.  And it would be particularly concerning to produce them because in cases "involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research."  *Raytheon*, 93 F.R.D. at 144.

30.     Indeed, particularly in light of the Trustee's agreement to produce the documents compiled by the Noteholders at the Trustee's attorneys' request in the very first production of documents collected from the Noteholders, the only reason for Trive to insist on receiving those documents now, in a separate bundle, is precisely so that Trive has the opportunity to peer behind the curtains at the Trustee's counsel's strategic decisions and deliberations with the Noteholders.

31.    Trive's authorities are not to the contrary.  Even if, as Trive asserts, it is true that "the mere acquisition" of documents does not establish attorney work product, Trive Mot. ¶ 23 (quoting *In re Grand Jury Subpoenas dated Mar. 19 & Aug. 2, 2022*, 2022 WL 31030322, at \*6 (S.D.N.Y. Sept. 12, 2022)), the production here would not simply reveal documents counsel acquired, but would reveal specific documents that counsel selected and compiled through counsel's conversations with the Noteholders pursuant to a common interest agreement.

32.    Trive's reliance on *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676 (2d Cir. 1987), is equally misplaced.  Mot. ¶ 23.  There, the Second Circuit explicitly recognized that "the selection and compilation by counsel for litigation purposes is protected work product." *Id.* at 680.  In *Gould*, there were no facts supporting such a privilege, and concern about revealing attorney work product was "speculative."  *Id.*  Here, however, the risk is concrete: producing documents that the Trustee compiled in anticipation of litigation will disclose his requests to and discussions with the Noteholders.

33.    The cases on privilege logs that Trive invokes are similarly inapposite.  Neither of the two cases Trive cites determined that a privilege log is necessary when it was the *compilation* of documents that created the privilege.  Additionally, even if the Trustee must eventually produce a privilege log, there is no requirement that the moving party is entitled to a privilege log whenever it wants—let alone before the Court has ruled on the defendant's motion to dismiss.  *See* Fed. R. Civ. P. 26(b)(5) (describing the circumstances in which a privilege log must be provided, but not *when* it must be provided).  In *Pritchard*, the court only mandated that the plaintiffs produce a privilege log after denying the defendants' motion to compel.  *Pritchard v. Dow Agro Sciences*, 263 F.R.D. 277, 293 (W.D. Pa. 2009).  And in *Rhoads*, the court only determined there to be a waiver of the privilege when the plaintiff, in addition to not producing a privilege log, inadvertently

*produced* privileged documents. *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 221-27 (E.D. Pa. 2009).

34.     Contrary to Trive's assertion, the Trustee has not waived his privilege objection. *Contra* Trive Mot. ¶ 22.  In response to the Document Request for documents supporting the allegations in the Amended Complaint, the Trustee specifically invoked the attorney work product doctrine and noted that he would "produce *non-privileged* and responsive documents," an assertion he repeated on the July 22 meet and confer.  ECF 117-3 at 5, 23 (emphasis added).

35.     Trive's contrary authority is not availing.  *See* Trive Mot. ¶ 22.  In *Boselli v. Southeastern Pennsylvania. Transportation Authority*, the defendant "failed to file answers to [the] particular interrogatories and it failed to timely object to them."  108 F.R.D. 723, 726 (E.D. Pa. 1985).  But, as Trive concedes, the Trustee served Responses and Objections on April 4, 2025. Trive Mot. ¶ 10.  Even more fundamentally, *Boselli* recognized that "it is within the Court's discretion not to compel discovery which is patently improper."  108 F.R.D. at 726; *see also Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 241 (D.N.J. 2022) ("[E]ven if this Court found a waiver of any objections and/or found no good cause in justifying Plaintiff's delay in objecting, the ultimate decision as to whether to compel production nevertheless remains within the sound discretion of the Court.").  Thus, even if the Trustee waived the objection (he has not), the Court may still deny Trive's Motion because disclosure of this material will reveal attorney work product.  *See supra*, pp. 11-12.

## III.    TRIVE HAS NOT SATISFIED THE REQUIREMENTS FOR IMMEDIATE PRODUCTION

36.     Finally, Trive has not established circumstances that justify immediate production of the requested documents.  Rules 16, 26, 33, 34, 37, and 45 govern the production of documents in an adversary proceeding.  *See* Fed. R. Bankr. P. 7016, 7026, 7033, 7034, 7037, 7045,

9016. Taken together, these rules stress that burden, proportionality, and reasonableness guide the discovery process. *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C)(i) (prohibiting discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

37.    Because the Trustee has already produced over 240,000 documents, Gazzola Decl. ¶ 9, intends to produce the specific additional documents Trive is requesting now in due course, and this Court has not ruled on Trive's Motion to Dismiss, Trive's request for immediate production is best understood as a motion for expedited production. *See Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613 (D. Ariz. 2001). Some courts have "treated the question whether to authorize" immediate discovery "as governed by a good cause standard." 8A *Wright & Miller's Federal Practice & Procedure* § 2046.1 (3d ed. May 2025 update). Others—invoking first principles of remedies law—have gone a step further and applied the more demanding preliminary-injunction standard, requiring the movant to show an "irreparable injury." *See, e.g.*, *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) (describing elements).

38.    Trive has satisfied none of those standards. Even if Trive could overcome the privilege barrier, *see supra*, pp. 11-13, it has offered no justification—let alone demonstrated good cause or irreparable injury—for immediate production of the specific documents compiled at counsel's request. This is even more true in light of the fact that the vast majority of documents supporting the Complaint have already been produced.

39.    The Court has yet to schedule a hearing on Trive's motion to dismiss, and no case management order is in place. The Trustee has not violated any agreement or order, and has committed to producing the relevant documents before any substantial completion deadline. Similarly, review of the requested material is not urgent or time-sensitive; receiving it

within the ordinary discovery schedule will not cause Trive irreparable harm.  *See Notaro*, 95 F.R.D. at 405.  To compel production now, prior to any discovery deadline being set, and absent any showing of urgency, would be at odds with the principles governing discovery.  Requiring the Trustee to expedite this production would also unduly burden the Trustee, requiring him either to produce documents in a format that reveals attorney work product, or accelerate review of documents for which the parties are still negotiating search terms in order to make a first generalized Noteholder document production in under a week.  *Contra* Mot. ¶ 21.  As he has explained to Trive many times, the Trustee will produce all responsive documents well in advance of any substantial-completion deadline set by the Court, and will produce this specific set of "Core Noteholder Documents" within the Trustee's first rolling production of Noteholder documents.

## CONCLUSION

40.    For the foregoing reasons, the Court should deny the Motion.

Dated: August 26, 2025
      Wilmington, Delaware

WHITEFORD TAYLOR & PRESTON LLC

By: */s/ Bradley P. Lehman*
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 295-5674
Facsimile: (302) 295-5678

-and-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew R. Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel to the Chapter 7 Trustee*