# EXHIBIT 3

WILMERHALE

August 8, 2025

**Charles Bridge**

+1 212 295 6418 (t)
+1 212 230 8888 (f)
charles.bridge@wilmerhale.com

**CONFIDENTIAL**

**(Via Email)**
Mario Gazzola, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
mariogazzola@quinnemanuel.com

> Re: ***Abrams v. Trive Capital Management LLC, et al.*, No. 24-ap-50130 (KBO)
> (Bankr. D. Del.)**

Dear Mario:

I write in response to the questions raised in your email dated July 22, 2025.

*First*, the Trive Defendants have completed their productions in response to the Trustee's Rule 2004 subpoena (the "Subpoena"), including RFP No. 17 in the Subpoena. In their objections and responses to the Subpoena, the Trive Defendants lodged several specific objections to RFP No. 17, including objections that RFP No. 17 was "unlimited in time and scope"; was ambiguous in its usage of several terms, including "subsequent transfers"; assumed the existence of subsequent transfers; and sought documents outside of the Trive Defendants' possession, custody, or control. "Subject to and without waiver of" those specific objections and the Trive Defendants' general objections, the Trive Defendants stated that they would conduct a "reasonable search" for documents responsive to RFP No. 17—and produce responsive, non-privileged documents that they were "able to identify" through that search. In subsequent negotiations, the Trustee and the Trive Defendants agreed that the "reasonable search" would be a review of approximately 40,000 documents (sourced from two custodians, Shravan Thadani and Connor Anderson, as well as from Trive's internal deal folder for Lucky Bucks) that hit on an agreed-upon set of search terms. The Trive Defendants have completed that search and review process and, as you know, have produced more than 21,000 documents to the Trustee (in stark contrast to the zero documents from the Noteholders that the Trustee has produced to date). It is not our position that "all documents showing subsequent transfers through the agreed-upon search term end date of March 31, 2024 have been produced." However, any such documents would have been considered responsive if they were located via the "reasonable search" that your client agreed to as fulfilling the Trive Defendants' obligations in response to the Subpoena.

In an effort to resolve this issue amicably, the Trive Defendants are willing to consider a modest supplemental production of documents, to the extent any are reasonably identifiable, sufficient to identify any transfers of Holdings Distributions proceeds made prior to March 31, 2024 by TCFIII Luck LP, TCFIII Luck SPV LP, and TCFIII Luck Acquisition LLC. We are

**WILMERHALE**

Mario Gazzola, Esq.
August 8, 2025
Page 2

working with our clients now to identify any contemporaneous documents providing such information.

You also asked us whether Holdings Distributions proceeds were "transferred up to Trive Capital Fund III LP and/or Trive Capital Fund III-A LP" and whether, if so, such proceeds were "then transferred further to any other entities before March 31, 2024." The answer to the first question is that some of the Holdings Distributions proceeds were transferred to Fund III and Fund III-A before March 31, 2024. As noted, we are working with our clients now to identify one or more contemporaneous documents sufficient to identify such transfers. The answer to the second question is that some of the Holdings Distributions proceeds were transferred by Fund III and Fund III-A before March 31, 2024, in distributions made to those funds' partners. The details of these distributions by Fund III and Fund III-A, particularly the identities of Trive's external investors, are highly confidential and sensitive. Discovery of such information is not "proportional to the needs of the case," since the burdens associated with disclosing it far "outweigh[] its likely benefit" or any claimed relevance it has to the Trustee's claims against the Trive Defendants. Fed. R. Civ. P. 26(b)(1).

*Second*, we are not aware of any facts indicating that any of the Trive Defendants made any transfers of Holdings Distributions proceeds after March 31, 2024. The Trive Defendants do not agree at this time to search for documents to prove a negative, on the grounds that doing so would be unduly burdensome, but we are willing to meet and confer if you have in mind a specific document that might be reasonably available.

*Third*, with respect to the Trustee's request to add Conner Searcy as an additional custodian, we first note that the two documents cited in your July 31, 2025 letter to us ("Ltr.") do not establish that Mr. Searcy's custodial documents are reasonably likely to contain any non-duplicative documents that are relevant to the Trustee's claims in this adversary proceeding. The first document shows that Mr. Searcy was copied on an email from Mr. Thadani to Lucky Bucks's management circulating draft talking points for management's call with Lucky Bucks's public shareholders about Trive's ongoing negotiations to purchase Lucky Bucks. *See* Trive_00009879; *see also* Trive_00002334. The topics raised in those talking points—which include management's pitch for the deal, the purchase price, and the structure of the deal, *see* Trive_00002334—pre-date Trive's acquisition of the business and have nothing to do with the management of Lucky Bucks or the Trustee's allegations concerning the Notes transactions, which occurred over a year later. In the second email, Mr. Thadani forwards Mr. Searcy an email from Lucky Bucks's management as an "FYI," and Mr. Searcy responds with high-level thoughts on a proposed acquisition of a third-party COAM operator (which was not one of the alleged B-Side businesses), which also occurred over a year before the Notes Transactions at issue. *See* Trive_00008251-8252.

WILMERHALE

Mario Gazzola, Esq.
August 8, 2025
Page 3

Further, the two cited documents (one on which Mr. Searcy was copied, and the other which was forwarded as an "FYI" to him), out of a production of over 21,000 documents. illustrate that Mr. Searcy is not reasonably likely to be the custodian of relevant, non-duplicative emails.  Each of the two emails was sent or received by Mr. Thadani, whose custodial documents were reviewed and produced long ago as part of Rule 2004 discovery.

Nevertheless, in the interest of pursuing a compromise, we are working with our clients to collect information on the volume and types of documents from Mr. Searcy that are covered by your request.  We will respond further on this topic when we have such information.

Very truly yours,

*Charles C. Bridge*

Charles C. Bridge