## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | No. 23-10756 (KBO) |
| *Debtor*. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky<br>Bucks Holdings LLC and as assignee, | Adversary Proceeding |
| *Plaintiff*, | No. 24-ap-50130 (KBO) |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC,<br>*et al.*, | |
| *Defendants*. | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## TRIVE DEFENDANTS' MOTION TO COMPEL

PACHULSKI STANG ZIEHL
  &amp; JONES LLP

Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400

WILMER CUTLER PICKERING
  HALE AND DORR LLP

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363

Dated:  September 2, 2025

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.      THE MOTION IS NOT MOOT .....................................................................................3

II.     THE CORE NOTEHOLDER DOCUMENTS ARE NOT PROTECTED WORK PRODUCT ...................5

III.    ALTHOUGH NOT NECESSARY, GOOD CAUSE EXISTS FOR THE PROMPT PRODUCTION
        OF THE CORE NOTEHOLDER DOCUMENTS ..............................................................9

IV.     THE TRUSTEE'S CLAIMS REGARDING THE TRIVE DEFENDANTS' DISCOVERY
        RESPONSES ARE IRRELEVANT AND MISLEADING ...............................................10

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997) ......................................................................10

*Bartley v. Isuzu Motors Ltd.*,
    158 F.R.D. 165 (D. Colo. 1994) .........................................................................8

*Benevis, LLC v. Mauze & Bagby, PLLC*,
    2015 WL 12763537 (S.D. Tex. Dec. 14, 2015)..................................................6

*Goldberg v. Merrill Lynch & Co. (In re Jet Network, LLC)*,
    2012 WL 2998610 (Bankr. S.D. Fla. July 23, 2012) ..........................................6

*Gould Inc. v. Mitsui Mining & Smelting Co.*,
    825 F.2d 676 (2d Cir. 1987)................................................................................8

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
    213 F.3d 124 (3d Cir. 2000)................................................................................6

*In re Automotive Refinishing Paint Antitrust Litigation*,
    2006 WL 1479819 (E.D. Pa. May 26, 2006)......................................................6

*In re Grand Jury Subpoenas dated March 19 & August 2, 2002*,
    2002 WL 31040322 (S.D.N.Y. Sept. 12, 2002)......................................... 5-6, 7

*In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*,
    318 F.3d 379 (2d Cir. 2003)............................................................................5, 8

*In re Infant Formula Antitrust Litigation*,
    1992 WL 503465 (N.D. Fla. Jan. 13, 1992) .....................................................10

*James Julian, Inc. v. Raytheon Co.*,
    93 F.R.D. 138 (D. Del. 1982) .........................................................................6, 7

*Kartman v. State Farm Mutual Automobile Insurance Co.*,
    247 F.R.D. 561 (S.D. Ind. 2007)...................................................................5, 6, 8

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) .........................................................................9

*Polewsky v. Social Security Administration*,
    101 F.3d 108, 1996 WL 110179 (2d Cir. 1996) .................................................3

*Pritchard v. Dow Agro Sciences*,
    263 F.R.D. 277 (W.D. Pa. 2009) ........................................................................8

*Rejdak v. Worthington Cylinders Wisconsin, LLC*,
  2016 WL 6248183 (N.D. Ill. Oct. 26, 2016) ........................................................................6

*Reybold Group of Cos. v. Does 1-20*,
  323 F.R.D. 205 (D. Del. 2017) ............................................................................................9

*Rhoads Industries, Inc. v. Building Materials Corp. of America*,
  254 F.R.D. 216 (E.D. Pa. 2008) ..........................................................................................8

*Sporck v. Peil*,
  759 F.2d 312 (3d Cir. 1985) .........................................................................................6, 7, 8

*Supreme Fuels Trading FZE v. Sargeant*,
  2011 WL 13172599 (S.D. Fla. Sept. 15, 2011) ...................................................................3

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,
  202 F.R.D. 612 (D. Ariz. 2001) ...........................................................................................9

## RULES

Fed. R. Bankr. P. 2004 ................................................................................................2, 11, 12

Fed. R. Civ. P. 26 ..................................................................................................................8

Fed. R. Evid. 502 ................................................................................................................12

The Trive Defendants[1] respectfully submit this reply memorandum in support of their *Motion to Compel*, dated August 12, 2025 [D.I. 115] (the "Motion") and in response to the Trustee's *Memorandum of Law in Opposition to Trive Defendants' Motion to Compel*, dated August 26, 2025 [D.I. 118] (the "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

1.      The Trive Defendants are seeking the production of truly core documents: the basic documents pursuant to which the Noteholders made their investments that give rise to all the claims in this case.  The Trive Defendants have waited more than 10 months after the Trustee's lead counsel first promised to provide the Core Noteholder Documents.  The Opposition concedes that the documents are relevant, and must at some point be produced, but instead makes three arguments to attempt to justify the Trustee's continued delay in producing them.   All of the Trustee's arguments fail.

2.      *First*, the Motion is not moot.  By his own admission (Opp. ¶¶ 3-4), the Trustee had not produced a single Core Noteholder Document until the Trive Defendants filed this Motion. Even now, he has still not produced many such documents (if he has produced any at all; *see infra* n.2 and accompanying text), and he continues to refuse to commit to a date certain by which he will produce all of them.  Having failed to do so, the Motion is ripe for this Court's resolution.

3.      *Second*, the Trive Defendants are not seeking the mental impressions of the Trustee's counsel.  They merely seek production of the Core Noteholder Documents—business records that are unquestionably not privileged.  The Trustee makes no showing, as he must to carry his burden when claiming work-product protection, that the Trive Defendants could somehow

---

[1]  Unless otherwise defined herein, all defined terms shall have their meanings as defined in the *Memorandum of Law in Support of Trive Defendants' Motion to Compel* [D.I. 116] ("Mem.").

reverse engineer the Core Noteholder Documents to glean the subject matter of claimed privileged communications between the Trustee's counsel and the Noteholders. In any event, the Trive Defendants have never required that the Trustee produce the Core Noteholder Documents alone; the Trustee could have included all of them in the 75,000-document production that he made *after* the Trive Defendants filed this Motion. The Trustee has no one to blame but himself for his failure to do so.

4.  *Third*, there is no "good cause" requirement, as the Opposition claims (¶¶ 36-39), to obtain discovery six months after the Trive Defendants served their document requests and 10 months after the Trustee's lead counsel promised to provide the documents. But even if there were such a standard, it is easily met here. The Trustee, who stands in the shoes of the Noteholders for many of the claims asserted in the Amended Complaint, has received over 21,000 documents from the Trive Defendants. Yet, despite the Trustee's claim that after the Trive Defendants filed their Motion the Trustee finally began producing a subset of the Core Noteholder Documents, the Trive Defendants are dubious that the Trustee has, in fact, produced a single document from the Noteholders' files.[2] Indeed, the Trustee represented the opposite—that each of these productions was merely a reproduction of documents produced to the Trustee by third parties (not the Noteholders, who are effectively plaintiffs) in response to Rule 2004 discovery requests and in response to document requests made in a separate adversary proceeding. D.I. 117-7 at 3.

---

[2] While the Trustee in his Opposition (¶¶ 1, 3, 15) claims for the first time that he has now produced many of the Core Noteholder Documents, the Trive Defendants have not seen anything in any of the Trustee's productions reflecting that any documents came from the Noteholders' files. Indeed, a review of the metadata from the Trustee's most recent production suggests the opposite. The custodians associated with the Trustee's most recent production of documents did not match any of the Noteholder custodians from whom the Trustee has agreed to collect documents.

5.      At bottom, the Core Noteholder Documents are undisputedly relevant to the claims at issue and may, indeed, be appropriate for this Court's consideration of the Trive Defendants' pending motion to dismiss.  The Trustee's heel dragging has prevented the Trive Defendants from making that critical assessment and potentially providing key information to the Court in support of their dispositive motion.

6.      For these reasons, explained more fully below, the Court should grant the Motion.[3]

## ARGUMENT

7.      The Trustee concedes that the Core Noteholder Documents are relevant and discoverable.  Opp. ¶ 27.  He nevertheless offers three meritless arguments for his continued failure to produce all (or perhaps even any) of them.

## I.      THE MOTION IS NOT MOOT

8.      The Trustee's argument that the Motion is moot (Opp. ¶¶ 26-27) is wrong as a matter of law.  A motion to compel production of documents is moot only if, after the motion is filed, the party from whom discovery is sought *actually produces the requested documents*.  *See Supreme Fuels Trading FZE v. Sargeant*, 2011 WL 13172599, at *6 (S.D. Fla. Sept. 15, 2011) (motion to compel not moot because "[a]s of the filing of [movant's] reply, [nonmovant] still had not produced any documents" that were the subject of the motion); *accord Polewsky v. Soc. Sec. Admin.*, 101 F.3d 108, 1996 WL 110179, at *2 (2d Cir. 1996) (unpublished table decision) ("Where a litigant *receives* the documents he seeks, an action to compel the production of the documents becomes moot." (emphasis added)).

---

[3]   To avoid risk of waiver or concession, the Trive Defendants also respond to the Trustee's misleading arguments about the Trive Defendants' discovery responses in Section IV below, although those issues are not relevant to the Motion.

9.     As noted, the Trive Defendants have no reason to believe that the Trustee has produced a single document from the Noteholders' files (and indeed, analysis of the most recent production from the Trustee appears to confirm that suspicion, *see supra* n.2 and accompanying text).  But, even if they have received some, the Trustee concedes (Opp. ¶ 4) that he has not produced all of the Core Noteholder Documents.  Thus, the Motion is not moot.

10.     The Trustee's promise to produce the unproduced Core Noteholder Documents "promptly" and "soon" (Opp. ¶¶ 4-5) does not moot the Motion.  He continues to refuse to commit to a date certain as to when he will produce the documents, even though his lead counsel promised to produce them more than 10 months ago and the Trive Defendants served their document requests nearly six months ago.  D.I. 117-1; D.I. 117-2.  Thus, absent an order granting the Motion, there is no reason to think that the Trustee will suddenly change course.

11.     The Trustee's statement (Opp. ¶ 5) that he intends to produce the Core Noteholder Documents along with additional documents collected from the Noteholders' files provides no comfort at all, as the parties have not even completed their negotiations of search terms that the Trustee will use to review such additional documents.  The Trustee has confirmed that he did not do what he should have: collect and review all relevant documents from the Noteholders before filing suit and accusing the Trive Defendants of wrongdoing.  Instead, by the Trustee's admission, he first began a comprehensive collection of documents from all of the Noteholders only after the Trive Defendants filed the Motion (over six months after the Trive Defendants started serving document requests on the Trustee) and first provided the Trive Defendants with his counterproposal for search terms to run across the Noteholders' documents last Friday night (August 29).  Given that such negotiations are ongoing, and the Trustee has not represented that his counsel is reviewing any of the additional Noteholder documents for production in the

meantime, there is no evidence to suggest that the Trustee will be prepared to produce such additional documents anytime "soon."

12.     Finally, even if the Motion were somehow moot (it is not), the record shows that it has already proven justified.  The Trustee does not even claim that *before* the Trive Defendants filed the Motion, he had produced a single Core Noteholder Document.  *See supra* n.2.  *After* the Trive Defendants filed the Motion, the Trustee produced approximately 75,000 documents (which he represented were produced by third parties in a separate adversary proceeding), and then argued for the first time in his Opposition that he has produced "vast majority" of the Core Noteholder Documents.  Opp. ¶ 1.  The Trive Defendants are doubtful that this is the case.  *See supra* n.2 and accompanying text.  But even if it is, the inescapable conclusion is that it was the Motion that prompted the Trustee to produce at most a subset (but, for some unexplained reason, not all) of the Core Noteholder Documents.

## II.     THE CORE NOTEHOLDER DOCUMENTS ARE NOT PROTECTED WORK PRODUCT

13.     The Trustee's next argument—that producing the Core Noteholder Documents in isolation would reveal protected attorney work product (Opp. ¶¶ 28-35)—is wrong as a matter of law.  The Trustee concedes that the Core Noteholder Documents were prepared "by the Noteholders," not by the Trustee's attorneys.  *Id.* ¶¶ 4, 30.  That is dispositive.  "Merely gathering documents from third parties does not gloss the documents with an attorney's mental impressions any more tha[n] simply sharing documents with an attorney stamps the documents with the imprimatur of attorney-client privilege."  *Kartman v. State Farm Mut. Auto. Ins. Co.*, 247 F.R.D. 561, 564 (S.D. Ind. 2007).  Indeed, courts routinely reject "speculative[] concern[s] that the ordered production [of documents obtained from a third party] will reveal counsel's thought processes and strategies."  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 381 (2d Cir. 2003) ("*Grand Jury Subpoenas II*") (quotation marks omitted), *aff'g In re Grand Jury*

*Subpoenas dated Mar. 19 & Aug. 2, 2002*, 2002 WL 31040322, at *5-7 (S.D.N.Y. Sept. 12, 2002)

("*Grand Jury Subpoenas I*").[4]

14.    This Court should do the same here.  As the party invoking the work-product

doctrine, the Trustee has the burden to establish protectible work product.  *See Holmes v. Pension*

*Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).  He has not come even close to

carrying that burden.  He provides no privilege log, and no factual information sufficient to show

that the Trive Defendants could somehow reverse engineer his counsel's mental impressions by

receiving the Core Noteholder Documents.  *See Rejdak v. Worthington Cylinders Wis., LLC*, 2016

WL 6248183, at *3 (N.D. Ill. Oct. 26, 2016) (when large document productions are at issue, "the

possibility of the opposing party discerning any litigation strategy is highly unlikely").  The Trive

Defendants "seek[] the entire universe of documents [the Trustee] obtained … pre-suit" from the

Noteholders, which is not protected work product.  *Kartman*, 247 F.R.D. at 565.

---

[4] *See also, e.g.*, *Goldberg v. Merrill Lynch & Co. (In re Jet Network, LLC)*, 2012 WL 2998610, at *4-5 (Bankr. S.D. Fla. July 23, 2012) (rejecting trustee's assertion of work-product protection over documents received from third party, and explaining that "the facts here are notably different from the facts in *Sporck*," one of the principal cases cited by the Trustee here: "[I]n selecting documents to prepare one's own witness for deposition, counsel may reasonably expect that the selection process would remain confidential.  That is not the case when a party is asked to provide the facts and documents it relied upon in asserting claims or defenses. … This proceeding should not be a game of hide the ball." (citation omitted)); *Benevis, LLC v. Mauze & Bagby, PLLC*, 2015 WL 12763537, at *16 (S.D. Tex. Dec. 14, 2015) (rejecting assertion that documents obtained from third party were work product in light of "the sheer number of pages and the fact that Plaintiffs lack the means to infer Defendants' thought processes"); *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7 (E.D. Pa. May 26, 2006) (unlike *Sporck*, "Defendants are not inquiring into whether or how Plaintiffs used documents in preparing their case," but instead "are merely seeking to uncover the factual basis for Plaintiffs' claims—the central purpose of discovery.  Plaintiffs cannot avoid disclosure based upon the simple fact that counsel obtained certain documents from third parties."); *Kartman*, 247 F.R.D. at 565 ("Unlike in *James Julian* and *Sporck*, State Farm is not seeking a subset of documents assembled by opposing counsel.  Nor is State Farm seeking a folder of documents that Plaintiffs have used to prepare the Plaintiffs or witnesses for depositions.  Nor does State Farm otherwise seek to determine how the Plaintiffs have compiled, selected, or organized key documents.").

15.    Moreover, the Trustee claims that he now has produced some of the Core Noteholder Documents (Opp. ¶ 3); thus, if that statement is accurate (it seems not), production of the remaining subset makes it less likely that the Trive Defendants could divine counsel's mental impressions by reviewing only a portion of the documents at issue.  And if any work-product concerns remain, that is a problem of the Trustee's own making.  After the Trive Defendants filed the Motion, the Trustee produced approximately 75,000 documents, which he now claims *include* some (but not all) of the Core Noteholder Documents.  *Id.* ¶¶ 3, 15.  If the Trustee wanted to protect counsel's mental impressions with regard to whatever documents remain to be produced, the obvious course would have been to produce all of them along with 75,000 other documents.  The Trustee's failure to do so suggests that his concern is not the disclosure of work product, but rather disclosure of underlying documents that would undermine the allegations in the Amended Complaint.

16.    The cases cited by the Trustee (Opp. ¶ 28)—*Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), and *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138 (D. Del. 1982)—are inapposite.  In both cases, the requesting party sought a specific folder or binder of documents that "*counsel* selected and compiled … solely" to prepare a client for a deposition.  *Sporck*, 759 F.2d at 313 (emphasis added); *see James Julian*, 93 F.R.D. at 144.  And in both cases, the "requests aimed at a small part of extensive discovery *already available to the requesting party*."  *Grand Jury Subpoenas I*, 2002 WL 31040322, at *5 (emphasis added).  *Sporck* and *James Julian* thus stand for the modest proposition that the work-product doctrine protects document compilations when (1) counsel (not the witness) assembled the compilations, (2) the documents have already been produced, and (3) the compilations legitimately "represent[] … counsel's mental impressions and legal opinions" about a small subset of a larger universe of already produced documents.  *Sporck*,

759 F.2d at 315. Here, by contrast, the Core Noteholder Documents were prepared and assembled "by the Noteholders," not the Trustee's counsel, Opp. ¶ 4; the documents have not been produced; and the underlying documents do not, by themselves, "represent[] … counsel's mental impressions and legal opinions," *Sporck*, 759 F.2d at 315. Thus, the Trustee cannot avail himself of *Sporck*'s "'narrow exception' to the general rule that third-party documents in the possession of an attorney do not merit work product protection." *Grand Jury Subpoenas II*, 318 F.3d at 386 (quoting *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987)); *see supra* n.4 (citing cases).

17.     Finally, the Trustee waived any work-product protection in at least two ways. The Trustee's response to Document Request No. 6 (which requested the Core Noteholder Documents) did not object to producing the Core Noteholder Documents on work-product grounds. *See* D.I. 117-3 at 21-22. And he failed to produce a privilege log. The Opposition cites no authority for the proposition that the Trustee need not produce a privilege log where a "*compilation* of documents [purportedly] create[s] the privilege." Opp. ¶ 33. Indeed, the case law says otherwise. *See, e.g.*, *Kartman*, 247 F.R.D. at 563 (compilation of documents not protected by work-product doctrine where producing party "provided no privilege log or other list that would indicate what documents they possess that have not been made available for inspection"); *Bartley v. Isuzu Motors Ltd.*, 158 F.R.D. 165, 167 (D. Colo. 1994) (same).[5]

---

[5] The Trustee's attempts to distinguish *Pritchard v. Dow Agro Sciences*, 263 F.R.D. 277 (W.D. Pa. 2009), and *Rhoads Industries, Inc. v. Building Materials Corp. of America*, 254 F.R.D. 216, (E.D. Pa. 2008), are unavailing. The Trustee mischaracterizes *Pritchard*'s holding. In *Pritchard*, the court denied the defendants' motion to compel because the plaintiffs sought leave to amend their responses and objections to assert a work-product objection. *See* 263 F.R.D. at 293. In so doing, the court ordered the plaintiff to produce a privilege log simultaneously with his amended objections, as required by Rule 26. *See id.* The Trustee also ignores a key holding of *Rhoads*: the plaintiffs' failure to log purportedly protected attorney-work product four months after identifying those documents violated Rule 26 and constituted waiver. *See* 254 F.R.D. at 223, 226.

8

### III.   ALTHOUGH NOT NECESSARY, GOOD CAUSE EXISTS FOR THE PROMPT PRODUCTION OF THE CORE NOTEHOLDER DOCUMENTS

18.    The Trustee's final argument—that the Trive Defendants purportedly seek improper "expedited" discovery (Opp. ¶¶ 36-39)—fares no better.  The Trive Defendants served their document requests on March 5, 2025, and diligently sought the production of the Core Noteholder Documents over the next six months.  It can hardly be said that the Trive Defendants' requested relief is for "expedited" discovery, *id.* ¶ 37, and thus there is no required showing of "good cause" to obtain the requested relief in this Motion.[6]

19.    But even if the Trustee were correct in characterizing the Motion as seeking "expedited discovery" (and he is not), good cause exists to grant the Motion.  Courts consider several factors when determining whether good cause exists, including "(1) the timing and context of the discovery requests; (2) the scope and purpose of those requests; and (3) the nature of the burden to the respondent." *Reybold Grp. of Cos. v. Does 1-20*, 323 F.R.D. 205, 208 (D. Del. 2017) (brackets and ellipsis omitted).  These factors "depend[] on the particular kind of case at issue and the particular type of expedited discovery sought." *Id*.

20.    Here, each of these factors supports finding good cause.  *First*, "the timing and context" of the document requests justify the Motion.  *Reybold*, 323 F.R.D. at 208.  The Trustee filed suit on September 13, 2024 (a year ago); the Trustee's lead counsel agreed to produce the Core Noteholder Documents on October 11, 2024 (over 10 months ago); the Trive Defendants served the document requests on the Trustee on March 5, 2025 (six months ago); and, at the time

---

[6] The Trustee relies on cases (Opp. ¶ 37) that are inapposite, where the party *was* seeking expedited discovery within days after the case was first filed—or even sooner. *See Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 612 (D. Ariz. 2001) (plaintiff sought documents from defendants before serving the complaint); *Notaro v. Koch*, 95 F.R.D. 403, 404 (S.D.N.Y. 1982) (plaintiff sought deposition of defendant within 30 days of filing of complaint).

the Motion was filed, the Trive Defendants had already produced over 21,000 documents to the Trustee—whereas the Trustee (despite the Opposition's representations to the contrary) does not appear to have produced a single document from the Noteholders.  Mem. ¶¶ 6, 8-9.  *Second*, "the scope and purpose" of the Trive Defendants' request for the Core Noteholder Documents is straightforward: these documents underlie the Trustee's allegations and thus bear directly on the Trustee's claims, and some or all of them may be integral to the Amended Complaint or otherwise properly considered in connection with the Trive Defendants' pending motion to dismiss.  Indeed, the Trustee brings many of his claims as assignee of, and thus standing in the shoes of, the Noteholders; they are the real plaintiffs.  *Third*, the Trustee would face no undue burden in producing the Core Noteholder Documents in his possession.  Opp. ¶ 4.[7]

IV.    **THE TRUSTEE'S CLAIMS REGARDING THE TRIVE DEFENDANTS' DISCOVERY RESPONSES ARE IRRELEVANT AND MISLEADING**

21.    Seeking to distract from the frailties of his arguments against the Motion, the Trustee litters the Opposition with irrelevant misdescriptions of the Trive Defendants' discovery responses.  While these issues are not relevant to the resolution of the Motion, the Trive Defendants address the main ones here to clarify the record.

---

[7] While the Trustee highlights burdens imposed by producing *all* documents from the Noteholders, *see* Opp. ¶¶ 4, 22, that has no bearing on whether producing *the Core Noteholder Documents* would be unduly burdensome.  The Trustee's related argument (*id.* ¶ 5) that he has an added "burden" because he must collect and produce documents from the Noteholders, who he characterizes as "third parties," is wrong as a matter of law.  The Trustee brings many of his purported claims as assignee of the Noteholders; as such, the Noteholders are parties for purposes of discovery.  *See Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd.*, 171 F.R.D. 135, 148 (S.D.N.Y. 1997) ("[T]reatment of both assignor and assignee as parties for discovery … is proper when to do otherwise would frustrate discovery. … Otherwise a litigant by contracting with a third party could nullify and evade the rules of procedure." (second ellipsis added)); *In re Infant Formula Antitrust Litig.*, 1992 WL 503465, at *10 (N.D. Fla. Jan. 13, 1992) (same).

22.     *First*, the Trustee's assertion that "Trive still has not produced a single document responsive to requests served in this adversary proceeding," Opp. ¶ 12, is completely misleading. The Trive Defendants produced approximately 21,000 documents in response to the Trustee's Rule 2004 subpoena served before his filed suit, and the Trustee's document requests in this adversary proceeding are substantially duplicative of his Rule 2004 requests, *compare, e.g.*, D.I. 119-1 at 7, Request No. 1 (requesting "All documents and communications relating to the decision to issue the PIK Notes"), *with* Second Declaration of Ross E. Firsenbaum, dated September 2, 2025 ("Second Firsenbaum Decl."), Ex. A at 8, Request for Production No. 1 (requesting "All Documents and Communications regarding or relating to the PIK Notes and the Note Purchase"). Accordingly, the Trive Defendants have already produced thousands of documents—the overwhelming majority of documents in their possession—that are "responsive to requests served in this adversary proceeding." Opp. ¶ 12.

23.     *Second*, the Trustee conveniently omits from his Opposition that, in response to the Trustee's document requests served in this adversary proceeding, the Trive Defendants have agreed to search for relevant documents from an additional custodian and have sought to engage with the Trustee about search terms to be used for that search. Moreover, the Opposition overlooks that the Trive Defendants agreed to search for several categories of documents in response to the Trustee's document requests. Unlike the Core Noteholder Documents, which the Trustee has had at his fingertips since he filed the Complaint, the Trive Defendants had to search for these additional documents.

24.     *Third*, the Trustee wrongfully insinuates (Opp. ¶ 15 n.4) that the Trive Defendants are somehow responsible for *the Trustee's* own failure to timely produce documents that the Trustee received in response to a Rule 2004 subpoena that he served on the Debtors' former

counsel, Shearman & Sterling LLP.  As is clear from the email attached to the Trustee's attorney's declaration, D.I. 119-4, the Trive Defendants worked with counsel for three other groups of defendants to simplify a draft Rule 502(d) stipulation proposed by the Trustee.  And the Trustee only proposed such a stipulation for the first time after he had refused to produce the documents in response to the Trive Defendants' repeated requests *for over five months*.  D.I. 117-8 at 1; D.I. 117-9 at 1.  That stipulation has now been filed [D.I. 120], and the Trustee still has not produced the documents.

25.    *Finally*, the Trustee's comparison of the number of custodians and documents collected by the Noteholders in response to the document requests (Opp. ¶ 15 n.3) with the Trive Defendants' collections and custodians in response to the Trustee's Rule 2004 subpoena compares apples to oranges.  There are six Noteholders, each of whom employed separate deal teams comprised of multiple members who, based on the Trustee's own representations, fulfilled different roles in the transaction.  *See* D.I. 117-5 at 2-3.  It therefore should come as no surprise that the Noteholders, collectively, must review and produce more documents than the Trive Defendants.

## CONCLUSION

26.    For these reasons, the Trive Defendants respectfully submit that the Court should grant the Motion, and enter an order substantially in the form attached to the Motion as Exhibit A.

Dated: September 2, 2025
      Wilmington, Delaware

Respectfully submitted,

**WILMER CUTLER PICKERING
   HALE AND DORR LLP**

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
philip.anker@wilmerhale.com
ross.firsenbaum@wilmerhale.com
charles.bridge@wilmerhale.com

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363
joel.millar@wilmerhale.com

*Attorneys for Defendants Trive Capital
Management LLC, Trive Capital Fund III LP,
Trive Capital Fund III-A LP, TCFIII Luck LP,
TCFIII Luck SPV LP, TCFIII Luck
Acquisition LLC, Southern Star Gaming LLC,
and Shravan Thadani*

**PACHULSKI STANG ZIEHL
   & JONES LLP**

By: */s/ Laura Davis Jones*

Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Defendants Trive Capital
Management LLC, Trive Capital Fund III LP,
Trive Capital Fund III-A LP, TCFIII Luck LP,
TCFIII Luck SPV LP, TCFIII Luck
Acquisition LLC, Southern Star Gaming LLC,
and Shravan Thadani*