# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUCKY BUCKS HOLDINGS LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 23-10756 (KBO) |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky Bucks Holdings LLC and as assignee,<br><br>Plaintiff,<br><br>v.<br><br>TRIVE CAPITAL MANAGEMENT LLC, *et al.*,<br><br>Defendants. | Adversary Proceeding<br><br>Adv. Proc. No. 24-50130 (KBO) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL

| | |
|---|---|
| QUINN EMANUEL URQUHART<br>  & SULLIVAN LLP<br>Susheel Kirpalani<br>Andrew J. Rossman<br>Matthew Scheck<br>Mario O. Gazzola<br>Kenneth B. Hershey<br>295 Fifth Avenue, 9th Floor<br>New York, New York 10016 | WHITEFORD TAYLOR<br>  & PRESTON LLP<br>William F. Taylor, Jr. (DE No. 2936)<br>Bradley P. Lehman (DE No. 5921)<br>600 North King Street, Suite 300<br>Wilmington, DE 19801<br>Telephone: (302) 295-5674<br>Email: wtaylor@whitefordlaw.com<br>         blehman@whitefordlaw.com |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1
RELEVANT BACKGROUND ..................................................................................................3
    A.    The Trustee's Lawsuit ..............................................................................................3
    B.    The Trustee's Requests for Production ..................................................................3
    C.    The Discovery Disputes ..........................................................................................4
LEGAL STANDARD ..................................................................................................................7
ARGUMENT ................................................................................................................................7
I.    KASSAM'S UNSUPERVISED SELF-COLLECTION AND UNSUPERVISED RESPONSIVENESS REVIEW FELL BELOW ANY STANDARD OF REASONABLENESS ................................................................................................7
II.    THE TRUSTEE IS ENTITLED TO DISCOVERY CONCERNING SUBSEQUENT TRANSFERS ................................................................................11
CONCLUSION ...........................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Acevedo v. eXp World Holdings, Inc.*,
 2024 WL 5466466, at *2 (C.D. Cal. Dec. 3, 2024) ............................................................8, 10

*Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*,
 No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100 ...............................11, 13

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
 513 F. Supp. 3d 839 (N.D. Ill. 2021) ...................................................................................8, 9

*Dymarkowski v. Iland Green Techs., Inc. (In re Xunlight Corp.)*,
 2016 Bankr. LEXIS 4279 (Bankr. N.D. Ohio Dec. 14, 2016) ...........................................11, 13

*In Re Glob. Prot. USA, Inc.*,
 546 B.R. 586 (Bankr. D.N.J. 2016) ..........................................................................................12

*Goldstein v. Denner*,
 310 A.3d 548 (Del. Ch. 2024) ...................................................................................................8

*IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*,
 408 F.3d 689 (11th Cir. 2005) ..................................................................................................12

*Johnson v. J. Walter Thompson U.S.A., LLC*,
 2017 U.S. Dist. LEXIS 176815 (S.D.N.Y. Oct. 25, 2017) .......................................................9

*N.V.E., Inc. v. Palmeroni*,
 2011 WL 4407428 (D.N.J. Sept. 21, 2011) ..............................................................................8

*Roffe v. Eagle Rock Energy GP*,
 C.A. No. 5258-VCL (Del. Ch. Apr. 8, 2010), ECF No. 67 ......................................................8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 650 B.R. 5 (Bankr. S.D.N.Y. 2023) ........................................................................................12

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
 2024 WL 4125618 (N.D. Cal. Sept. 6, 2024) ...........................................................................8

*Younes v. 7-Eleven, Inc.*,
 312 F.R.D. 692 (D.N.J. 2015) ............................................................................................7, 11

*ZAGG Inc. v. Ichilevici*,
 2024 WL 557899 (S.D. Fla. Jan. 30, 2024) ...........................................................................8, 9

**Statutes**

11 U.S.C. § 550..................................................................................................................3, 11, 13

**Other Authorities**

Fed. R. Bankr. P. 2004..........................................................................................................3

Fed. R. Bankr. P. 7026..........................................................................................................7

Fed. R. Bankr. P. 7034..........................................................................................................7

Fed. R. Civ. P. 26........................................................................................................7, 10, 11

Fed. R. Civ. P. 34..................................................................................................................7

Fed. R. Civ. P. 37..................................................................................................................7

Marc Abrams (the "Trustee" or "Plaintiff"), solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Lucky Bucks Holdings LLC ("Holdings") and as assignee of causes of action previously belonging to Holdings' creditors, respectfully submits this memorandum of law in support of his motion to compel Defendant Shafik Kassam ("Kassam") to locate and produce documents responsive to the Trustee's First Set of Requests for Production (the "Motion").

## PRELIMINARY STATEMENT

1. Defendant Kassam is a former board member of Holdings who assisted with the Note marketing process and approved the Note Issuance, all while he was engaged in a scheme to strip Lucky Bucks' assets.

2. Pursuant to that scheme, Kassam helped Defendant Anil Damani steal location contracts from Lucky Bucks, use fake players to artificially boost the EBITDA of those location contracts, and sell the location contracts back to Lucky Bucks at inflated prices. In light of his participation in this scheme, Kassam knew the representations made to the Noteholders in the marketing materials and the Note Purchase Agreement were false. Yet as a reward for approving and executing the transactions, Kassam received $750,000 from the Holdings Distributions.

3. Despite playing a central role in the events giving rise to this action, Kassam has produced a grand total of *zero* documents in response to discovery requests served in June 2025.

4. And as Kassam has admitted, his production of zero documents to date is not due to the fact that he is still reviewing documents or working in good faith towards a production; rather, Kassam has made the incredible assertions that (1) he does not possess a single responsive communication to any of the Trustee's 31 requests for production; and that (2) bank statement information regarding subsequent transfers of his distribution is not relevant and would be overly burdensome to collect. But these self-serving assertions do not license Kassam to shirk his

discovery obligations.

5.   *First*, as Kassam's counsel has made clear, the basis for Kassam's assertion that he does not possess a single responsive communication is nothing more than his own say-so. Counsel has admitted that the ***only*** person who reviewed Kassam's documents for relevance is Kassam himself. Counsel has not made any collection from Kassam, did not oversee Kassam's purported review of his own documents, and has not engaged any vendor to collect electronically stored information.[1]

6.   Black letter law in this (and every) district makes clear that permitting a client to self-collect documents and make his own judgment calls on responsiveness falls woefully short of complying with discovery obligations. Accordingly, the Court should compel Kassam's counsel to conduct a formal document collection from Kassam's personal email addresses, work email addresses (if any), and phone using reasonable search parameters, and for ***counsel***, not Kassam, to conduct a responsiveness review.

7.   *Second*, while Kassam has not denied that he made subsequent transfers of the funds he received from the Holdings Distributions, Kassam has offered shifting excusing for refusing to produce documents relating to such subsequent transfers, ranging from burden to relevance. However, Kassam has not substantiated his burden objection with any facts, such as volume or hit count, nor could he, given that producing bank statements relating to any subsequent transfers cannot possibly be burdensome under any test. And as to relevance, discovery concerning subsequent transfers is clearly relevant—even before the Trustee obtains a final

---

[1] On November 12, 2025, Counsel to Kassam stated that Kassam himself "reviewed his emails and text messages." Gazzola Decl., Ex. A at 3. Upon questioning as to whether counsel did anything to oversee the search, counsel dodged the question, claiming counsel was not required to inform the Trustee whether "we used an ESI vendor and whether we oversaw the search." *Id.* at 1. The implication from counsel's non-answer is clear.

2

judgment avoiding the initial transfer. This accords with precedent under 11 U.S.C. § 550 and makes practical sense, because requiring the Trustee to wait for a judgment before pursuing subsequent transferees would cause unnecessary delay and impair his ability to collect any judgment. Additionally, the timing and nature of any subsequent transfers may be relevant to liability, as they could prove disputed facts about Kassam's state of mind.

8. For these reasons and those set forth below, the Court should grant the Motion.

## RELEVANT BACKGROUND

**A. The Trustee's Lawsuit**

9. The Trustee was appointed on November 29, 2023.

10. To evaluate potential claims, the Trustee carried out his charge to investigate the true history and financial condition of Holdings and its main operating subsidiary, Lucky Bucks LLC, by using the bankruptcy discovery device available under Federal Rule of Bankruptcy Procedure 2004.

11. The Trustee filed his Complaint on September 13, 2024, and his First Amended Complaint on January 21, 2025. ECF 1, 57. The First Amended Complaint asserts claims against Kassam and other defendants for, among other things, securities fraud, improper dividends, and common law fraud. ECF 57.

12. On March 24, 2025, Kassam filed a Motion to Dismiss the Amended Complaint, which the Trustee opposed. ECF 64, 92, 99. On December 10, 2025, this Court held a hearing on that Motion, but has not yet ruled. The Court has not entered a case management schedule or set a deadline for discovery.

**B. The Trustee's Requests for Production**

13. On June 24, 2025, the Trustee served requests for production on Kassam (the "Requests"). *See* Declaration of Mario O. Gazzola dated January 26, 2026 (the "Gazzola

3

Declaration" or "Gazzola Decl."), Ex. A at 11.  The Requests sought, among other things:

- **Request 8:**  All Documents and Communications between OpCo, Kassam, and any Location Owner other than the B-Side Businesses, in addition to all Documents and Communications sufficient to identify the names and addresses of any such businesses.[2]

- **Request 19:**  All Documents and Communications relating to any subsequent transfers from the Insiders of the Holdings Distributions, including the existence, nature, and timing of such subsequent transfers.

- **Request 20:**  All Documents and Communications relating to the existence, nature, or timing of any subsequent transfers of dividends Kassam received through the Holdings Distributions.

- **Request 23:**  All Documents and Communications relating to any transfers of proceeds in connection with the Holdings Distributions received by or transferred from Kassam during the period of November 1, 2021, to present, including the amount, date, ultimate recipient, and the disclosure of any such transfers.

- **Request 24:**  All Documents and Communications sufficient to identify all initial, intermediate, and subsequent transferees of the proceeds from the Holdings Distributions during the period of November 1, 2021, to present.

- **Request 25:**  All Documents and Communications relating to any value or consideration given by all initial, intermediate, and subsequent transferors in exchange for receiving proceeds from the Holdings Distributions during the period of November 1, 2021, to present.

- **Request 27:**  All Documents sufficient to show all distributions by Kassam, including the amount, date, ultimate recipient, and disclosure of any such distributions.

Gazzola Decl., Ex. B.

C.     **The Discovery Disputes**

14.    On August 7, 2025, after requesting a 14-day extension, Kassam responded to the Trustee's Requests (the "Responses and Objections").  Gazzola Decl., Ex. C.  Kassam did not agree to produce a single document; instead, he objected to each Request or claimed he had no responsive documents.  *Id.*

---

[2] As discussed below, *infra* ¶ 17, the scope of this RPF has been significantly limited.

15.     On August 14, 2025, counsel for the Trustee and counsel for Kassam met and conferred to discuss Kassam's objections. During that conference, the parties disagreed as to whether Requests 19-25 and 27 relating to subsequent transfers (the "<u>Subsequent Transfer Requests</u>") were relevant. Gazzola Decl., Ex. A at 7-8 (memorializing the parties' August 14 meeting). Kassam's counsel agreed to review the Trustee's arguments and let the Trustee know within one week whether Kassam would respond to the Subsequent Transfer Requests. *Id.* at 7.

16.     During the meet and confer, counsel for Kassam also represented that Kassam had performed "ad hoc searches" and determined that he was not in possession of any communications, including text messages, WhatsApp messages, or personal emails responsive to Request Number 8. *Id.* at 7-8. Counsel further represented that counsel collected no files or data from any of Mr. Kassam's personal devices. *Id.*

17.     On August 15, 2025, the Trustee proposed narrowing the scope of Request Number 8 to only those communications relating to "(i) Locations' operations or (ii) the purchase or sale (including offers to purchase or sell) of Locations to or from Lucky Bucks." *Id.*

18.     On August 22, 2025, Kassam's counsel accepted the revised scope of Request Number 8, agreeing to "confer with Mr. Kassam and update our response." *Id.* at 7. Kassam maintained his objection to the Subsequent Transfer Requests, but conceded they "may become relevant if the trustee prevails against Mr. Kassam in the adversary action." *Id.*

19.     On August 27, 2025, the Trustee's counsel sought clarification on two points: (1) whether Kassam made subsequent transfers of funds to other parties, and (2) whether Kassam was objecting to the Subsequent Transfer Requests on relevance or burden grounds. *Id.* at 6. Kassam did not respond.

20.     On September 10, 2025, counsel for the Trustee followed up on his August 27

5

email. *Id.* Kassam again did not respond. On October 13, 2025, the Trustee's counsel followed up a second time. *Id.* at 5-6.

21. On October 21, 2025—nearly two months after the Trustee's counsel sought clarification—Counsel for Kassam confirmed that Kassam's objection to the Subsequent Transfer Requests rested on both relevance and burden grounds. *Id.* at 5. Counsel also promised to "have you an answer tomorrow" about whether Kassam made subsequent transfers. *Id.* Counsel did not have an answer the next day.

22. On October 23, 2025, counsel for the Trustee disputed Kassam's grounds for objecting to the Subsequent Transfer Requests. *Id.* at 4-5. The Trustee's counsel also asked when Kassam would produce documents responsive to the revised Request No. 8. *Id.* Kassam's counsel did not respond.

23. On November 6, 2025, Kassam's counsel informed the Trustee that Kassam had no documents responsive to Request Number 8. *Id.* at 3-4. That same day, the Trustee's counsel asked what sources Kassam had searched. *Id.* at 3. On November 12, Kassam's counsel answered that "[Kassam] reviewed his emails and text messages," explaining that "the biggest issues are that a) he no longer has access to his work email and b) you are asking about communications that—if they happened—took place years ago and are no longer available." *Id.*

24. On November 17, 2025, the Trustee's counsel asked Kassam's counsel to confirm that Kassam used an ESI vendor to collect responsive communications from his personal devices and asked whether counsel or an ESI vendor oversaw Kassam's search for responsive documents. *Id.* at 2. The Trustee's counsel also requested that Kassam substantiate his burden objection with a hit count or any other metric. *Id.* Kassam did not respond. On December 4, 2025, Counsel for Kassam followed up on the November 17 email. *Id.*

6

25.     On December 4, 2025, Kassam's counsel responded that she "disagree[d]" that Kassam must undergo a proper ESI collection or that she was "required to tell you whether we used an ESI vendor and whether we oversaw the search." *Id*. at 1. Counsel maintained her relevance objection to the Subsequent Transfer Requests "given where we are in the litigation." *Id.*

## LEGAL STANDARD

26.     Federal Rule of Civil Procedure 37 provides that a party "seeking discovery may move for an order compelling a [] … production … if … a party fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The scope of discovery under Rule 34 is governed by Rule 26(b), which authorizes parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure make these rules applicable to this adversary proceeding.

## ARGUMENT

27.     The Court should grant the Motion for two reasons. First, it is improper for Defendant Kassam to self-collect communications and make his own judgment calls on responsiveness. Reviewing documents and making responsiveness calls is the responsibility of counsel, not the litigants. Second, discovery concerning subsequent transfers is relevant, and Kassam has not even attempted to substantiate his burden objections.

**I.    KASSAM'S UNSUPERVISED SELF-COLLECTION AND UNSUPERVISED RESPONSIVENESS REVIEW FELL BELOW ANY STANDARD OF REASONABLENESS**

Kassam's unsupervised self-collection and responsiveness review was unreasonable. It is well-established that counsel is "responsible for coordinating the[ir] client's discovery efforts so that responsive documents are located and produced." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692,

7

707 (D.N.J. 2015). Accordingly, an attorney "cannot simply permit a client to 'self-collect' ESI without proper supervision." *Acevedo v. eXp World Holdings, Inc.*, 2024 WL 5466466, at *2 (C.D. Cal. Dec. 3, 2024); *see also ZAGG Inc. v. Ichilevici*, 2024 WL 557899, at *3 (S.D. Fla. Jan. 30, 2024) ("[A]n attorney has a duty and obligation to have knowledge of, supervise, or counsel the client's discovery search, collection, and production."); *N.V.E., Inc. v. Palmeroni*, 2011 WL 4407428, at *5 (D.N.J. Sept. 21, 2011) (finding that party was "grossly negligent in [ ] its … review and collection efforts" where "there has not been a single attorney reviewing the documents to confirm" that it "has produced all relevant information"); *Goldstein v. Denner*, 310 A.3d 548, 581 (Del. Ch. 2024) ("An attorney may not simply rely on custodian self-collection of ESI" and instead "must test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected — and eventually reviewed and produced"); Tr. of Tel. Conf. on Discovery Dispute at 10:10-20, *Roffe v. Eagle Rock Energy GP*, C.A. No. 5258-VCL (Del. Ch. Apr. 8, 2010), ECF No. 67 ("[Y]ou do not rely on a defendant to search their own e-mail system. … There needs to be a lawyer who goes and makes sure the collection is done properly.").

28. These duties exist because unsupervised self-collection is "risky." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 935 (N.D. Ill. 2021). Defendants tasked with identifying and collecting documents without oversight frequently "fail[] to identify all sources of responsive information." *Id.* A lay person "may not be aware of ESI accessible on his phone"—especially if the data has been "deleted or [is] not otherwise visible to him"—including data that requires technical expertise to locate and recover. *Acevedo*, 2024 WL 5466466, at *2; *see In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 4125618, at *14 (N.D. Cal. Sept. 6, 2024) (explaining that lay persons "do not normally

8

have the knowledge and expertise to understand their discovery obligations"). And a defendant "whose conduct might have been embarrassing or compromising," may not "provide all responsive information for the additional reason of self-interest." *DR Distributors*, 513 F. Supp. 3d at 936.

29. Courts accordingly "express concern when it comes to a lay-person's self-collection of relevant discovery on an electronic device," *ZAGG*, 2024 WL 557899, at *3, and "view the self-collection of data with skepticism," *Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 U.S. Dist. LEXIS 176815, *9-10 (S.D.N.Y. Oct. 25, 2017) (collecting cases). And courts routinely order re-collection under proper supervision. *See, e.g.*, *ZAGG*, 2024 WL 557899, at *3 (ordering counsel to review defendants' records and produce responsive documents following client's self-directed review and collection).

30. Kassam's counsel ignored these risks and let a defendant with hundreds of thousands of dollars at stake search for his own responsive communications, unsupervised. Counsel's investigation apparently consisted of asking Kassam whether responsive documents existed and taking his word that they did not. *See* Gazzola Decl., Ex. A at 7-8 (memorializing counsel for Kassam's representation that "Mr. Kassam is not in possession of any otherwise responsive documents … and that [counsel] reached this conclusion based on ad hoc searches performed by Mr. Kassam because no files/data have been collected from his personal devices, including his phone."). When the Trustee asked directly whether "you or [an] ESI vendor oversaw Mr. Kassam's search of his emails and text messages," Kassam's counsel dodged the question, maintaining that "we are [not] required to tell you whether we used an ESI vendor and whether we oversaw the search." *Id.* at 2.

31. The age of the requested communications heightens the need for supervised collection. Kassam's counsel acknowledged that many of the communications "took place years

9

ago." *Id.* at 3. Older messages are more likely to reside in sources a lay person, like Kassam, is unlikely to search without technical assistance (e.g., cloud backups, archived folders, or deleted but recoverable files). *Acevedo*, 2024 WL 5466466 at *2 (explaining that laypeople "may not be aware of ESI accessible on [their] phone even if deleted or not otherwise visible to him."). Moreover, Kassam appears to have changed devices since the relevant period, making proper collection targeting backups or other stored messages even more critical. Gazzola Decl., Ex. A at 3 (Kassam's counsel explained that "the device used" to send the requested communications "is no longer in Mr. Kassam's possession.").

32. The Trustee respectfully asks this court to compel counsel for Kassam to conduct a formal document collection from Kassam's personal email addresses, work email addresses (if any), and phone using reasonable search parameters, and conduct a responsiveness review. The Amended Complaint alleges that Kassam regularly communicated with Lucky Bucks employees and management via messaging apps and email to coordinate his asset-stripping scheme.[3] Yet, **Kassam has not produced a single communication.** Without this Court's intervention, the Trustee must rely solely on Kassam's say-so that there are *no* responsive communications.

33. Any burden to Kassam is minor and incidental considering that his counsel is already obligated to reasonably and diligently search for and produce responsive documents. *See* Fed. R. Civ. P. 26(g).[4]

---

[3] *See*, *e.g.*, Amended Complaint ¶ 219 (alleging that a Georgia master license holder emailed Kassam that he had become aware of a fraudulent scheme that they could profit from); *id.* ¶ 247 (alleging that Kassam communicated with other Lucky Bucks employees and Mohammad Chisti through a Signal group chat); *id.* ¶ 163 (alleging that Thadani, Sekhri, and Boyden communicated with Damani and Kassam throughout the note marketing process).

[4] Federal Rule of Civil Procedure 26(g)(1) requires that when an attorney signs a discovery response, he or she "certifies that to the best of the person's knowledge, information and belief

10

## II. THE TRUSTEE IS ENTITLED TO DISCOVERY CONCERNING SUBSEQUENT TRANSFERS

34.     The Trustee is entitled to discovery concerning subsequent transfers Kassam made, even before obtaining a final judgment avoiding the initial transfer. A trustee may pursue "discovery relating to the statutory remedy provided under § 550" at the same time as "discovery relating to the avoidance claims." *Dymarkowski v. Iland Green Techs., Inc. (In re Xunlight Corp.)*, 2016 Bankr. LEXIS 4279, *8 (Bankr. N.D. Ohio Dec. 14, 2016).

35.     Courts do not require a trustee to avoid an initial transfer before seeking discovery about subsequent transfers. In *Dymarkowski*, the Chapter 7 trustee sought to avoid a transfer of collateral and moved to compel the initial transferee to produce "documents related to any subsequent transactions which occurred with respect to the [collateral]." *Id.* at *3. The defendant argued—as Kassam has here—that such discovery was irrelevant "until the [t]rustee prevail[ed] on his avoidance claim." *Id.* at *7. The court squarely rejected this argument, holding that discovery relating to avoidance claims may proceed at the same time as discovery relating to the statutory remedy. *Id.* at *9-10. The court granted the trustee's motion to compel. *Id.* at 11.

36.     This Court follows the same approach. Last year, in *Byju's Alpha*, Judge Dorsey ordered the production of subsequent transfer information before the debtor prevailed on its avoidance claims. Hr'g Tr. at 17:18-23, *Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*, No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100, Ex. D. Indeed, Judge Dorsey found the information "relevant to the adversary proceeding itself"—prior to the entry of judgment—in "a number of ways." *Id.* at 4:10-5:12.

---

formed after a reasonable inquiry" that the response is not "unreasonable[.]" Fed. R. Civ. P. 26(g)(1); *see also Younes*, 312 F.R.D. 703 (imposing Rule 26(g) sanctions where counsel "accept[ed] implausible representations from clients that no responsive documents or discovery exists").

11

37. *Dymarkowski* and *Byju Alpha* are consistent with the well-established rule that a trustee "is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 650 B.R. 5, 22 (Bankr. S.D.N.Y. 2023) (citing *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005); *In Re Glob. Prot. USA, Inc.*, 546 B.R. 586, 619 (Bankr. D.N.J. 2016) ("[T]he majority of courts hold that 'a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee.'") (quoting Collier on Bankruptcy, ¶ 550.02[1] (Matthew Bender 16th ed.)). Because a trustee can bring claims against subsequent transferees without avoiding the initial transfer, it follows that a trustee can discover information necessary to trace subsequent transfers and identify subsequent transferees.

38. Allowing this discovery also serves judicial efficiency. Because the Trustee can bring claims against subsequent transferees today—without first obtaining a judgment against Kassam—discovery to identify and trace those transfers is relevant now. If subsequent transfers are identified, judicial and party efficiency is served by permitting the Trustee to amend to add those claims rather than pursue seriatim actions. Requiring the Trustee to wait for a judgment in this case before pursuing subsequent transferees would cause unnecessary delay and could frustrate the Trustee's ability to collect any judgment.

39. Moreover, subsequent transfer information is also relevant to the Trustee's fraud claims against Kassam. For example, attempts to conceal the initial transfers via subsequent transfers to co-conspirators or offshore accounts provides direct evidence of the scienter required for common law and statutory fraud.

40. The Trustee's good-faith basis for believing subsequent transfers occurred has been

12

all but confirmed by Kassam's refusal to deny their existence. *See* Gazzola Decl., Ex. A at 5-6 (On October 13, the Trustee asked counsel for Kassam if there were any subsequent transfers. Counsel for Kassam did not answer that question in her reply email on October 21).

41. Kassam's main objection to the Subsequent Transfer Requests is that they are not relevant until the Trustee prevails on his avoidance claims. *Id*. (Kassam's counsel argued that the Requests were not relevant "given where we are in the litigation"). But this exact argument was explicitly rejected by the *Dymarkowski* court, which explained that "discovery relating to the statutory remedy provided under § 550 may be pursued in conjunction with discovery relating to the avoidance claims just as discovery relating to a damages remedy may be pursued in conjunction with discovery relating to issues of liability." *Dymarkowski*, 2016 Bankr. LEXIS 4279, at *9-10. This argument was also implicitly rejected by Judge Dorsey in *Byju's Alpha* when he ordered the production of subsequent transfer information before the debtor prevailed on its avoidance claims. *See Byju's Alpha*, Hr'g Tr. at 17:18-23.

42. Kassam also objects to the Subsequent Transfer Requests as unduly burdensome, but has failed to provide a hit count or any other metric that could substantiate his burden objection. Gazzola Decl., Ex. A at 5. On the other hand, the Trustee has made clear that the Subsequent Transfer Requests would be satisfied by an initial production of bank statements identifying any subsequent transfers, which Kassam can obtain at little to no cost. *Id.* at 4-5. While those productions may lead to subsequent requests regarding specific transfers (if any), the initial production of bank statements evidencing such transfers is straightforward, easy to complete, and inexpensive.

## CONCLUSION

43. For the foregoing reasons, the Court should grant the Motion and enter an order substantially in the form attached hereto as Exhibit A.

| | |
|---|---|
| Dated: January 27, 2026<br>Wilmington, Delaware | WHITEFORD TAYLOR & PRESTON LLP<br><br>By: */s/ Bradley P. Lehman*<br>William F. Taylor, Jr. (DE No. 2936)<br>Bradley P. Lehman (DE No. 5921)<br>600 North King Street, Suite 300<br>Wilmington, DE 19801<br>Telephone: (302) 353-4144<br>Facsimile: (302) 357-3286<br><br>-and-<br><br>QUINN EMANUEL URQUHART<br>& SULLIVAN LLP<br>Susheel Kirpalani<br>Andrew J. Rossman<br>Matthew R. Scheck<br>Mario O. Gazzola<br>Kenneth B. Hershey<br>295 Fifth Avenue, 9th Floor<br>New York, New York 10016<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>*Counsel to the Chapter 7 Trustee* |

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7026-1(d)**

1.  On August 14, 2025, counsel to the Trustee met and conferred with counsel to Kassam. Counsel to the Trustee has made a reasonable effort to reach agreement with Kassam with respect to the disputes set forth in the Motion. However, these attempts were unsuccessful.