**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | Case No.  23-10756 (KBO) |
| Debtor. | |
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky Bucks Holdings LLC and as assignee, | Adversary Proceeding<br><br>Adv. Proc. No.  24-50130 (KBO) |
| Plaintiff, | |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION TO COMPEL</u>**

QUINN EMANUEL URQUHART
   & SULLIVAN LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016

WHITEFORD, TAYLOR
   & PRESTON LLP
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, DE 19801

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ...................................................................................................6

      A.     Rule 2004 Investigation .................................................................................6

      B.     The Trustee's Lawsuit....................................................................................6

      C.     Requests for Production ..................................................................................7

      D.     The Discovery Disputes ..................................................................................7

            1.     Searches of Conner Searcy ...............................................................8

            2.     Subsequent Transfers of the Holdings Distributions ................................10

LEGAL STANDARD...................................................................................................................11

ARGUMENT .............................................................................................................................12

I.     TRIVE CANNOT HIDE BEHIND ITS NARROWED RULE 2004 PRODUCTION DUE TO ITS PARTY STATUS .............................................................12

      A.     Discovery Obligations Are More Demanding For Parties Than For Nonparties ..................................................................................................12

II.    TRIVE MUST SEARCH AND PRODUCE DOCUMENTS FROM CONNER SEARCY ....................................................................................................14

      A.     Searcy's Documents Are Relevant and Not Protected Under The Apex Doctrine......................................................................................................14

      B.     Trive Cannot Condition Mr. Searcy's Documents on Mr. Goldthorpe's .............17

III.   The Trustee is entitled to discovery concerning subsequent transfers OF THE HOLDINGS DISTRIBUTIONS .................................................................................18

CONCLUSION............................................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Biogen Inc. & Biogen Ma Inc. v. Sandoz Inc.*,
    2025 WL 1260954 (D. Del. May 1, 2025)................................................................14

*Blus v. Carnicella*,
    2020 WL 6531007 (M.D. Pa. Nov. 5, 2020) ...........................................................18

*In re Buick*,
    174 B.R. 299 (Bankr. D. Colo. 1994) .....................................................................22

*Burgess v. Galloway*
    2021 WL 2661290 (D.N.J. Jan. 28, 2021) ...............................................................13

*Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*,
    No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024)........................................19, 23

*CIF Licensing, LLC v. Agere Sys., Inc.*,
    2008 WL 2019492 (D. Del. May 9, 2008)................................................................17

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) .............................................................................13, 14

*Dymarkowski v. Iland Green Techs., Inc. (In re Xunlight Corp.)*,
    2016 Bankr. LEXIS 4279 (Bankr. N.D. Ohio Dec. 14, 2016)................................19

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    297 F.R.D. 99 (S.D.N.Y. 2013) ..............................................................................15

*In Re Glob. Prot. USA, Inc.*,
    546 B.R. 586 (Bankr. D.N.J. 2016) .........................................................................20

*IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ................................................................................20

*In re Lucky Bucks Holdings LLC*,
    No. 23-10756 (Bankr. D. Del. Mar. 12, 2024)..............................................6, 10, 22

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) ........................................................................22

*Pacitti v. Macy's*,
    193 F.3d 766 (3d Cir. 1999)....................................................................................13

*Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*,
2021 WL 4037857 (E.D. Pa. Sept. 3, 2021) ...................................................................18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
650 B.R. 5 (Bankr. S.D.N.Y. 2023) ...............................................................................20

*Thompson v. Glenmede Tr. Co.*,
1995 WL 752422 (E.D. Pa. Dec. 19, 1995) ...................................................................13

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2014 WL 3035791 (E.D. Pa. July 1, 2014) .........................................................15, 16, 17

*United States v. Green*,
201 F.3d 251 (3d Cir. 2000) ..........................................................................................21

*Re XPRT Ventures, LLC v. eBay, Inc.*,
2011 WL 13142141 (D. Del. June 15, 2011) .................................................................16

**Statutes**

6 *Del. C.* § 1308(b)(2) ..........................................................................................................10

11 U.S.C. § 550(a)(1) ...........................................................................................................10

**Rules and Regulations**

Fed. R. Bankr. P. 2004 ......................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 15, 16, 21, 22, 23

Fed. R. Bankr. P. 7026 ..........................................................................................................12

Fed. R. Bankr. P. 7034 .....................................................................................................12, 13

Fed. R. Civ. P.  34 ...........................................................................................................12, 13

Fed. R. Civ. P. 26 ................................................................................................12, 13, 14, 15, 18

Fed. R. Civ. P. 26(b) .............................................................................................................12

Fed. R. Civ. P. 26(b)(1).................................................................................................12, 13, 14

Fed. R. Civ. P. 26(b)91)........................................................................................................12

Fed. R. Civ. P. 34(a) .............................................................................................................13

Fed. R. Civ. P. 34(a)(1).........................................................................................................17

Fed. R. Civ. P. 37 .................................................................................................................11

Fed. R. Civ. P. 37(a)(3)(B)(iv).............................................................................................12

Local Rule 2004-1.........................................................................................................6

Local Rule 7026-1(d)...................................................................................................1

**Other Authorities**

9A *Wright & Miller's Federal Practice & Procedure* § 2452 (3d ed. Sept. 2025 update)......................................................................................................13

Collier on Bankruptcy, ¶ 550.02[1] (Matthew Bender 16th ed.)...................................20

Marc Abrams (the "Trustee" or "Plaintiff"), solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Lucky Bucks Holdings LLC ("Holdings") and as assignee of causes of action previously belonging to Holdings' creditors, respectfully submits this memorandum of law in support of his motion to compel Defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming, LLC, and Shravan Thadani (collectively, the "Trive Defendants" or "Trive") to produce documents responsive to the Trustee's requests for production (the "Motion").

## PRELIMINARY STATEMENT

1.      For over two years, the Trive Defendants have employed every available means to avoid scrutiny for their central role in orchestrating a fraudulent scheme that funneled $250 million from Holdings—on top of the substantial sums they had previously extracted from other Lucky Bucks entities.  That pattern of avoidance has, regrettably, extended into discovery.

2.      The sheer disparity in production volume and review burden between Trive and the Trustee lays bare Trive's bad-faith discovery tactics.  To date, the Trustee has produced 270,000 documents, compared to Trive's meager 24,000.  The Trustee's production includes approximately 240,000 documents the Trustee received in Rule 2004 discovery, as well as approximately 31,000 documents the Trustee collected from and produced from the Noteholders.  In connection with the Trustee's Noteholder production, the Trustee reviewed nearly 250,000 documents from fourteen custodians.  For its own production, Trive reviewed fewer than 48,000[1] documents from two custodians.

---

[1]    The last hit report the Trustee received from Trive revealed that Trive would review 48,000 documents *including* Mr. Searcy's documents.  Without Mr. Searcy's inclusion as a custodian, the Trustee expects Trive to have reviewed approximately 35,000 documents.

3.      To be sure, in some cases, the facts are such that it makes sense that one party may have a higher review burden than the other.  But this is not a case where the facts support a higher review burden for the Trustee.  If anything, it should be the other way around.  Trive was the private equity sponsor for Lucky Bucks and Lucky Bucks Holdings for a period of several years, and was deeply involved in the day-to-day operations of the business.  Trive masterminded, orchestrated, and benefitted from not one, but two massive distributions from 2021-2022.  The Noteholders, by contrast, were mere lenders to the Holdings entities, who conducted diligence once the loan opportunity was presented to them, and then received periodic (and meager) updates from Trive and Holdings thereafter.  Critically, all the Trustee's claims concern transactions Trive led and orchestrated, and there are no counterclaims against the Trustee or any Noteholders.  Accordingly, if any party should have a materially higher burden, it should be Trive.

4.      Trive's delay tactics began when the Trustee first sought production from Trive under Bankruptcy Rule 2004 in late 2023.  Since then, Trive has delayed and impeded discovery in multiple respects.  Trive has slow-walked responses, demanded the Trustee cover discovery expenses, and produced documents in piecemeal fashion.  Similarly, despite Trive's central role in the events described in the Amended Complaint, Trive has limited its review to just two custodians—a limitation that stands in sharp contrast to the far broader custodial searches performed upon the Noteholders' documents by the Trustee.

5.      Particularly concerning are Trive's tactics regarding custodians.  Nearly five months after the Trustee first served Rule 2004 subpoenas, Trive finally agreed to produce documents responsive to Rule 2004 requests but objected to the Trustee's proposed search terms on the ground that Trive was purportedly "a third party that is not even a creditor of the estate." Declaration of Mario O. Gazzola, June 4, 2026 (the "Gazzola Declaration" or "Gazzola Decl."),

2

Ex. A, at 4.  And when the Trustee requested broader search terms across three custodians, Trive demanded "the estate to pay the remaining costs of production." *Id.*  To avoid a protracted dispute over expenses, the Trustee decided to proceed—solely for Rule 2004 discovery—with substantially narrower search terms applied to only two custodians.  Rule 2004 discovery is long complete.  Although the Trustee has filed this lawsuit and served requests for production on Trive in its capacity as a party to the adversary proceeding nearly fourteen months ago, Trive has refused to add *any* additional custodians.  Trive first invoked the artificially reduced Rule 2004 collection parameters and asserted that its previous nonparty production was sufficient.  After months of back and forth on that objection, Trive tried to delay by other tactics including refusing to engage with the Trustee unless the Trustee agreed to more and more discovery.

6.      The Trustee made an eminently modest request: on June 23, 2025, the Trustee requested that Trive also search the documents from Conner Searcy, Trive's founder, due to Rule 2004 discovery that showed Mr. Searcy was Lucky Bucks and Holdings' primary point of contact with Lucky Bucks' regulator, the Georgia Lottery Corporation.  Over the course of seven months, Trive continuously stonewalled the Trustee's request.  Finally, on March 20, 2026, nearly nine months after the Trustee's first request, Trive conditionally agreed to produce documents from Mr. Searcy—who would be Trive's third custodian—only in exchange for the Trustee adding a *fifteenth*.  The Trustee has now agreed to add that fifteenth custodian, but even this is still not enough for Trive to produce Mr. Searcy's documents.

7.      Each of Trive's shifting justifications not to add Mr. Searcy as a custodian depart from the familiar requirements of party discovery.  The Trustee initially agreed to a reduced collection protocol during Rule 2004 discovery because Trive was a nonparty—and even that limited production revealed significant misconduct by Trive, including material misstatements

about the stability of Lucky Bucks' location contracts, the EBITDA generated by Lucky Bucks' prior acquisitions, and Lucky Bucks' overall financial condition.  But Trive is now a party to this adversary proceeding—indeed, the primary party, who received over 50% of the fraudulently transferred funds—and the scope of discovery it must produce has therefore expanded from when it was temporarily a third party responding to a Rule 2004 subpoena.  Courts and commentators have repeatedly recognized that parties are subject to meaningfully broader discovery obligations than nonparties.  Trive's attempt to rely on its prior nonparty status to sidestep those obligations clashes with settled discovery principles and imposes an impermissibly asymmetric discovery regime.

8.      The evolution of Trive's own discovery demands illustrates that asymmetry.  Trive demanded that the Trustee apply expansive search terms across fourteen custodians to the Noteholder documents—terms that generated more than 150,000 *additional* results than those returned by Trive's search.  But when the Trustee later asked Trive to apply *a reduced set of those same terms* to Trive's own documents to supplement its Rule 2004 production, Trive categorically refused.  Trive has since agreed to an additional search which, with a third custodian, would require Trive to review at most approximately 50,000 additional documents.  When combined with Rule 2004 discovery, even with those 50,000 additional documents, Trive will have reviewed less than half the number of documents than the Trustee—a shocking disparity considering Trive was involved in the day to day business of Lucky Bucks.

9.      Trive must therefore search for and produce documents in the possession, custody, or control of Mr. Searcy.  Searcy's files contain relevant, nonprivileged information squarely within Trive's control and not shielded by the apex doctrine.  Contrary to Trive's contention, Trive

may not condition production on ever-changing demands requiring more and more discovery from the Trustee.

10.     Similarly, Trive has persistently resisted the Trustee's efforts to take discovery into Trive's subsequent transfers of the Holdings Distributions.  The meager production Trive made on this front is manifestly deficient, as it provides no real insight into who ultimately received the fraudulent transfers that the Trustee seeks to recover through this action.  Because those transfers are indisputably relevant both to the Trustee's claims against Trive and claims the Trustee may have against subsequent transferees, Trive is required to produce such information as necessary for the Trustee to determine the identities of the persons who received the Holdings Distributions, the amounts they received, and when they received the transfers.  Yet Trive obstinately refuses to produce this information, brazenly insisting that the handful of redacted bank statements it has supplied somehow satisfies the Trustee's discovery.

11.     Trive has also alternately taken the position that information regarding subsequent transfers is not relevant to this case or these defendants, but rather to other potential defendants—but the Trustee's original Rule 2004 subpoena requested similar information, and the Trustee subsequently served Trive with an additional Rule 2004 subpoena requesting subsequent transfer information, in response to which Trive has also refused to produce documents.  Trive cannot have it both ways: either the information is irrelevant to this case and these defendants, and thus not subject to the prior proceeding bar to Rule 2004 discovery, or it is relevant and must be produced in the adversary proceeding.

12.     For these reasons and those set forth in greater detail below, the Court should grant the Motion.

## RELEVANT BACKGROUND

13.     The Court is familiar with the facts of this case, and only a brief summary of the relevant background follows.

### A.     Rule 2004 Investigation

14.     The Trustee was appointed on November 29, 2023.  To evaluate potential claims on behalf of Holdings and its creditors, the Trustee carried out his charge to investigate the true history and financial condition of Holdings and its main operating subsidiary, Lucky Bucks LLC, using the discovery device available under Federal Rule of Bankruptcy Procedure 2004.

15.     On December 18, 2023, under Local Rule 2004-1 and before moving for Rule 2004 discovery, the Trustee contacted Trive's counsel to negotiate a voluntary document production. After several months of delay, Trive stipulated to producing Rule 2004 discovery on March 12, 2024.  *In re Lucky Bucks Holdings LLC*, No. 23-10756 (Bankr. D. Del. Mar. 12, 2024), D.I. 53 (the "Rule 2004 Requests").  Trive served responses and objections to the Rule 2004 Requests on April 12, 2024.  Gazzola Decl., Ex. B.

16.     Several months of negotiations over search terms and custodians ensued.  Despite the Trustee's repeated concessions narrowing the scope of review, Trive asserted that production of approximately 45,000 documents would be unduly burdensome.  Gazzola Decl., Ex. A, at 3-4. Invoking its nonparty status, Trive refused to proceed with the document production unless the Trustee would agree to absorb $100,000 in claimed production costs.  *Id.* at 4.  Ultimately, Trive agreed to a limited collection and produced those documents to the Trustee over the course of approximately thirteen months.

### B.     The Trustee's Lawsuit

17.     The Trustee filed his complaint on September 13, 2024, which he amended on January 21, 2025.  D.I. 1, 57.  The amended complaint asserts claims against Trive and other

defendants for, among other things, fraudulent transfer, securities fraud, improper dividends, and common law fraud.

18.     On March 24, 2025, Trive moved to dismiss the amended complaint, which the Trustee opposed.  D.I. 69, 89, 95.  On February 2, 2026, this Court denied Trive's motion to dismiss in its entirety.  D.I. 143.  The Court entered a case management schedule and set discovery deadlines on February 17, 2026.  D.I. 145.

### C.     Requests for Production

19.     On April 11, 2025, the Trustee served requests for production on Trive (the "First Requests").  Gazzola Decl., Ex. C.  Trive provided responses and objections on May 12, 2025.  Gazzola Decl., Ex. D.  In those responses, Trive directed the Trustee to its Rule 2004 production and expressly "decline[d] to conduct additional searches."  *E.g.*, *id.* at 12.

20.     On June 25, 2025, the Trustee issued a supplemental Rule 2004 subpoena to Trive, in which he further requested documents and communications related to any subsequent transfers of the Holdings Distributions.  Gazzola Decl., Ex. E.

21.     On August 1, 2025, the Trustee served additional requests for production on Trive (the "Second Requests").  Gazzola Decl., Ex. F.  Trive responded to the Second Requests on September 2, 2025, again contending that "any additional searches, collection, or production" were unnecessary based on its prior Rule 2004 production.  Gazzola Decl., Ex. G, at 3.  But Trive agreed to search for responsive materials concerning communications with limited partners, portfolio review slides, and board-meeting minutes.  *Id.* at 12-15.

### D.     The Discovery Disputes

22.     Against that backdrop, the parties engaged in written exchanges and multiple meet-and-confers, the most recent of which was on April 8, 2026.  The parties have successfully resolved numerous disputes, but one primary dispute remains.

### 1.    Searches of Conner Searcy

23.    The Trustee requested that Trive add its co-founder and Managing Partner, Conner Searcy, as a custodian on June 23, 2025.  For nearly a year, the Trustee has asked Trive to search Searcy's documents.  *See, e.g.*, Gazzola Decl., Ex. H, at 3 (asking Trive to "please confirm the Trive Defendants will add Conner Searcy as a custodian").  The reason for that request is simple. Among other things, Mr. Searcy was the Trive representative registered with the Georgia Lottery Corporation, and in that capacity received real-time updates on the status of Lucky Bucks' COAM machines.  *Id.* (explaining "Rule 2004 discovery revealed that Mr. Searcy received direct updates from the GLC"); *see also* D.I. 57 ¶ 104 (same).  Because the Trustee alleges that Trive knowingly misled the Noteholders as to the attrition rates of its COAM machines, Mr. Searcy's files almost certainly contain communications that are highly relevant to the Trustee's claims.

24.    At a meet-and-confer on July 22, 2025, Trive reiterated its refusal to search for or produce those materials.  The Trustee stressed that Searcy's documents "are clearly relevant and not entirely duplicative" of documents from Trive's other custodians in subsequent correspondence, Gazzola Decl., Ex. I, at 2, but to no avail.  Trive maintained its position in the intervening months, arguing that Searcy's documents were not "reasonably likely to contain any non-duplicative documents … relevant to the Trustee's claims in this adversary proceeding." Gazzola Decl., Ex. J, at 2.  Although Trive agreed to provide the Trustee with some information regarding Mr. Searcy's documents, it then complained that a review of 10,463 documents was "unduly burdensome and not proportional to the needs of the case," notwithstanding that the Trustee has reviewed well over 100,000 more documents than Trive.  Gazzola Decl., Ex. K, at 1. Trive's counterproposal was to review Mr. Searcy's documents that hit on just two search terms. *Id.* at 2.

25.     At the same time, Trive refused to even provide a hit count for Mr. Searcy's documents, preventing the Trustee from negotiating search terms regarding Mr. Searcy's documents, since the Trustee could not know which search terms returned hits.  Trive stated that it would only provide a hit report for Mr. Searcy's documents if the Trustee did the same for the Noteholders' documents—information Trive had already received in August 2025.  Gazzola Decl. Ex. L, at 4.  Only on September 19, 2025—three months after the Trustee requested Mr. Searcy as a custodian—did Trive finally provide hit counts for Mr. Searcy's documents.  Gazzola Decl., Ex. M, at 3.

26.     Trive's objections culminated in an email to the Trustee's counsel on December 19, 2025, in which Trive again invoked the Rule 2004 discovery negotiation.  Asserting that the custodians and search terms "were negotiated extensively," Trive stood by its obstinate refusal to include Searcy as a custodian.  Gazzola Decl., Ex. N, at 1 (citation omitted).

27.     In the wake of this impasse, the parties met and conferred on January 15, 2026. Following that discussion, Trive provided hit reports for Searcy's custodial documents using the Trustee's proposed search terms but declined to supplement its production.  So far, the Trustee has searched for and produced documents from fourteen custodians, while Trive has produced from only two and refuses to designate any others.

28.     On March 20, 2026, following the Trustee's renewed demands for Mr. Searcy's documents, Trive asked for the first time that the Trustee include Ted Goldthorpe of BC Partners as a custodian and informed the Trustee that Trive would only add Mr. Searcy as a custodian if the Trustee added Mr. Goldthorpe.  Trive's request for Mr. Goldthorpe was nothing more than a transparent tit-for-tat request.  Mr. Goldthorpe is the founder of the Noteholder with the largest position in the notes.  He was not part of the Lucky Bucks deal team, but Trive was clearly hoping

that the Trustee and BC Partners would refuse to search his documents so that Trive could try to justify their own refusal to search Mr. Searcy's documents.

29.     Trive's transparent gambit failed.  The Trustee and BC Partners agreed to include Mr. Goldthorpe as a custodian on May 22, 2026, and have already collected and begun reviewing his documents.  However, given the late request (the deadline for substantial completion was June 2, 2026), the fact that Mr. Goldthorpe was not on the Lucky Bucks deal team, and BC Partners' prohibition on employees using their personal phones for work, the Trustee stated that it would not collect materials from Mr. Goldthorpe's personal device.  It was apparently not enough for Trive that the Trustee capitulated to nearly all of their demands, including their request to add a *fifteenth* custodian.  Trive refused to search Mr. Searcy's documents unless the Trustee agreed to also collect Mr. Goldthorpe's personal device.

30.     To date, despite a year of requests from the Trustee, Trive has refused to collect and review Mr. Searcy's documents—materials which are essential to the Trustee's claims.

### 2.     Subsequent Transfers of the Holdings Distributions

31.     Trive has likewise refused to produce documents related to subsequent transfers of the Holdings Distributions, notwithstanding their obvious relevance to this dispute.  *See, e.g.*, 11 U.S.C. § 550(a)(1) (authorizing the trustee to "recover, for the benefit of the estate, the property transferred, or … the value of such property, from … any immediate or mediate transferee of such initial transferee"); 6 *Del. C.* § 1308(b)(2) ("[T]he creditor may recover judgment for the value of the asset transferred … against … [a]ny subsequent transferee other than a good-faith transferee or oblige who took for value from any subsequent transferee or oblige.").  The Trustee first requested documents related to subsequent transfers in his first Rule 2004 subpoena to Trive.  *In re Lucky Bucks Holdings LLC*, No. 23-10756 (Bankr. D. Del. Mar. 12, 2024), D.I. 53-2 at 8 (Request No. 17, seeking "[a]ll documents and communications relating to the existence, nature,

or timing of any subsequent transfers from the Insiders of dividends received through the Distribution Transactions"). And after the filing of the Adversary Proceeding, since at least July 2025, the Trustee has renewed his request for all relevant documents and communications about subsequent transfers of the Holdings Distributions by entities and individuals affiliated with Trive. Despite admitting that it has transferred at least "some of the Holdings Distributions proceeds," Trive has consistently asserted that "[d]iscovery of such information is not 'proportional to the needs of the case'" because "the burdens associated with disclosing it" outweigh any benefit or "claimed relevance." *E.g.*, Gazzola Decl., Ex. J, at 1-2 (citation omitted).

32.     On September 10, 2025, Trive made one production of eighteen heavily redacted bank statements, which it asserted was "sufficient to identify" transfers of Holdings Distributions proceeds both to Trive Capital Fund III LP and Trive Capital Fund III-A LP as well as transfers made by TCFIII Luck LP, TCFIII Luck SVP LP, and TCFIII Luck Acquisition LLC. Gazzola Decl., Ex. O, at 1-2. But these statements do not identify to whom any subsequent transfers were made; rather, they simply show that some of the Holdings Distributions were subsequently transferred to unidentified (and redacted) bank accounts. Nor do they indicate whether the other Trive-controlled entities transferred those proceeds further to other Trive entities or to investors in those entities.

33.     Other defendants, including defendants with substantially fewer resources than Trive, such as Mr. Kassam (who is an individual rather than a private equity fund managing over $4 billion), have recognized the relevance of subsequent transfers and have produced responsive materials identifying subsequent transfers and to whom the transfers were made.

### LEGAL STANDARD

34.     Federal Rule of Civil Procedure 37 provides that a party "seeking discovery may move for an order compelling a[] … production … if" the other "party fails to produce

11

documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 26(b) governs the scope of Rule 34 discovery and authorizes parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* 26(b)(1).  Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure make these rules applicable to this adversary proceeding.

## ARGUMENT

35.     Trive's transition from nonparty to party requires broader document collection and review under the federal discovery rules.  Trive must therefore produce responsive documents within the possession, custody, or control of Conner Searcy, Trive's co-founder and Managing Partner.  Those documents are relevant to the Trustee's claims, outside the scope of the apex doctrine, and should not be tied to a fifteenth custodian from the Trustee.  The Trustee is likewise entitled to discovery concerning Trive's subsequent transfers—discovery that remains incomplete by Trive's own admission.  The Court should therefore grant the Motion.

### I.    TRIVE CANNOT HIDE BEHIND ITS NARROWED RULE 2004 PRODUCTION DUE TO ITS PARTY STATUS

36.     Although Trive previously proceeded as a nonparty during Rule 2004 discovery, its current status as a party to this adversary proceeding fundamentally alters its discovery obligations.  Trive must therefore broaden its document collection to satisfy the discovery requirements applicable to parties.

#### A.      Discovery Obligations Are More Demanding For Parties Than For Nonparties

37.     The Federal Rules of Civil Procedure authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Bankr. P. 7026 (applying Rule 26 to adversary proceedings). Similarly, Rule 34 "permit[s] the requesting party or its representative to inspect, copy, test, or

sample … any designated documents or electronically stored information" within Rule 26's scope. Fed. R. Civ. P. 34(a); *see* Fed. R. Bankr. P. 7034. Parties to a proceeding are therefore subject to expansive, affirmative discovery obligations, consistent with the well-recognized principle that "the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).

38.     But the federal rules draw a clear and consequential line between parties and nonparties. *Compare, e.g.*, Fed. R. Civ. P. 26(b)(1) (describing discovery obligations for "[p]arties"), *with, e.g.*, *id.* 45 (requiring subpoena *duces tecum* for nonparty document production). Although the scope of discovery available from a nonparty is often coextensive with that from a party, 9A *Wright & Miller's Federal Practice & Procedure* § 2452 (3d ed. Sept. 2025 update), federal courts typically apply heightened scrutiny and "broader restrictions" to nonparty discovery, *Thompson v. Glenmede Tr. Co.*, 1995 WL 752422, at *2 n.4 (E.D. Pa. Dec. 19, 1995); *see Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Once a nonparty becomes a party, however, that distinction disappears, and the discovery regime established by Rules 26 and 34 governs.

39.     Courts in this Circuit and elsewhere have repeatedly recognized the differential discovery burdens of parties and nonparties. For instance, in *Burgess v. Galloway*, a district court in New Jersey considered a motion to quash a deposition subpoena and subpoena *duces tecum* served on a third party. 2021 WL 2661290, at *1 (D.N.J. Jan. 28, 2021). Explaining that "a non-party to litigation is afforded greater protection from discovery than a party," the district court "require[d] a stronger showing of relevance than for simple party discovery." *Id.* at *3. Nonetheless, the district court denied the motion because the third party did "not, with specificity, state[] how he will suffer any undue burden" from complying with the subpoenas. *Id.* at *5.

13

40.     Likewise, in *Dart Industries Co. v. Westwood Chemical Co.*, the Ninth Circuit reiterated that third parties enjoy "broader" protection from discovery requests. 649 F.2d 646, 649 (1980). In affirming the grant of a motion to quash a subpoena served on a third party, the panel recognized that, "[a]lthough the strong policy of liberal discovery is clear," discovery should "be more limited to protect third parties" from unnecessary disclosure. *Id.* (citation omitted).

41.     Taken together, the teaching from courts and commentators is unmistakable. Because discovery directed to third parties faces more exacting scrutiny than discovery governed by Rule 26, it naturally follows that parties to a litigation bear a higher discovery burden than nonparties—including a correspondingly broader duty to search for and produce responsive materials. Thus, once a former nonparty becomes a party to the litigation, the discovery protections available to nonparties no longer apply. Nor may a party rely on its prior nonparty status to obtain heightened scrutiny of discovery requests served on it.

## II.     TRIVE MUST SEARCH AND PRODUCE DOCUMENTS FROM CONNER SEARCY

42.     Trive must therefore produce documents in the possession, custody, or control of Conner Searcy, Trive's co-founder and Managing Partner. Trive has declined to provide those documents, asserting irrelevance and demanding that the Trustee add yet another custodian for Trive to agree to produce Mr. Searcy's documents. Neither objection withstands scrutiny.

### A.     Searcy's Documents Are Relevant and Not Protected Under The Apex Doctrine

43.     Federal Rule of Civil Procedure 26 establishes broad discovery rights, authorizing a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "It is well-established that … relevance is a 'low threshold, easily satisfied,'" *Biogen Inc. & Biogen Ma Inc.*

14

*v. Sandoz Inc.*, 2025 WL 1260954, at *3 n.12 (D. Del. May 1, 2025), and as set forth below, there can be no serious doubt that Mr. Searcy's documents are relevant to this action.

44.     Notwithstanding the broad discovery rights afforded by Rule 26, federal courts may prohibit discovery directed at "high-level executives" under the apex doctrine. *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 3035791, at *2 (E.D. Pa. July 1, 2014). The apex doctrine is rooted in Rule 26's "mandate for courts to limit discovery that is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (citation omitted). Simply put, the doctrine covers "men and women at the 'apex'" of a company who lack "firsthand knowledge of the facts" that "might be of interest to the plaintiffs, or the attorneys, or the jury, or the court." *Id.* Courts in this Circuit apply a two-factor inquiry in deciding whether to prohibit discovery under the apex doctrine: (1) "whether the executive has personal, superior, or unique knowledge on the relevant subject;" and (2) "whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." *Id.* at *3.

45.     Both factors cut in favor of producing Searcy's documents. To start, documents produced by Trive during Rule 2004 discovery confirm that Searcy was registered as Lucky Bucks' representative with the Georgia Lottery Corporation (the "GLC"). *See* Gazzola Decl., Ex. H, at 3. In that capacity, Searcy received real-time updates on the status of Lucky Bucks' COAM machines. *See id.* That information (and Searcy's access to it) is critical to the Trustee's fraud claims, as one of the Trustee's core allegations is that Trive misled the Noteholders as to the attrition rates of Lucky Bucks' COAM machines when Trive was marketing the Notes. Searcy's status as a registered representative of Lucky Bucks alone is therefore sufficient to establish that he possesses documents reasonably calculated to lead to relevant evidence. *See Fort Worth*

*Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013) (holding that the mere "presence" of 18 additional "proposed custodians on the working group lists [associated with relevant securities offerings] is sufficient to establish that their inclusion in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded."). Moreover, where a custodian "receive[s] written notice" of information central to the case, that custodian "st[ands] in a unique position related to [the defendant's] discovery and understanding" of the facts at issue. *Re XPRT Ventures, LLC v. eBay, Inc.*, 2011 WL 13142141, at *8-9 (D. Del. June 15, 2011) (requiring defendants to include individuals as custodians on the ground that "inclusion of these individuals as custodians will allow for a thorough search and more complete production"). Searcy's records are therefore not only relevant to the Trustee's claims in this case, they are *uniquely* relevant, as they contain critical information that cannot be obtained from other custodians.

46.     In addition, documents received by the Trustee through Rule 2004 discovery show that Searcy received relevant communications and participated directly in the management of Lucky Bucks. *See, e.g.*, Gazzola Decl., Ex. P, at 2 (citing to produced documents). These undisputed facts confirm that Mr. Searcy "has personal, superior, or unique knowledge on the relevant subject," *Tylenol*, 2014 WL 3035791 at *3—including whether Trive engaged in the fraud and corporate looting that precipitated Lucky Bucks' collapse—and belie Trive's contention that the Trustee has advanced a "narrow theory of the relevance of Mr. Searcy's documents." Gazzola Decl., Ex. N, at 2.

47.     Trive fares no better under the second factor. Because Searcy's knowledge is personal and unique, the Trustee may not obtain the requested documents "in a less burdensome way." *In re Tylenol*, 2014 WL 3035791, at *3. Any claim of undue burden is further diminished

by the substantially asymmetrical discovery record—to date, the Trustee has reviewed and produced nearly 200,000 more documents than Trive from a far broader set of custodians. More fundamentally, the apex doctrine principally addresses "the *depositions* of high-level executives," *id.* at *2 (emphasis added), not routine production of documents in their "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). Accordingly, Searcy's documents are relevant and are not shielded from production by the apex doctrine.

### B.      Trive Cannot Condition Mr. Searcy's Documents on Mr. Goldthorpe's

48.      In negotiations over the scope of discovery with the Trustee, once Trive came up with its tactic to demand Mr. Goldthorpe's documents in response to the Trustee's requests for Mr. Searcy's documents, Trive has repeatedly taken the position that it should not be required to produce documents from Mr. Searcy unless the Trustee agrees to produce documents from Mr. Goldthorpe. That demand does not hold water. Trive asked for Mr. Goldthorpe's inclusion as a custodian nine months after the Trustee first asked for Mr. Searcy's documents. To then condition production of Mr. Searcy's documents on Mr. Goldthorpe's documents is nothing more than an effort by Trive to delay discovery of materials to which Trive knows the Trustee is entitled. After all, parties must produce relevant documents in their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

49.      Moreover, the Trustee has already produced documents from fourteen custodians—that is, ***twelve more*** custodians than Trive. For Trive to hold up production from a key witness until the Trustee furnishes documents from yet another custodian is an abuse of the discovery process that should not be tolerated. *See, e.g.*, *CIF Licensing, LLC v. Agere Sys., Inc.*, 2008 WL 2019492, at *2 (D. Del. May 9, 2008) ("Defendant is entitled to this information, and, as Defendant aptly points out, ***discovery obligations are not conditional***.") (emphasis added); *see*

*also Blus v. Carnicella*, 2020 WL 6531007, at \*2 (M.D. Pa. Nov. 5, 2020) ("Parties may not needlessly prolong discovery.").

50.    The Trustee has agreed to and will produce documents from Mr. Goldthorpe's email.  If Trive believes Mr. Goldthorpe's texts would be relevant and proportional (particularly in light of the fact that the Trustee has already searched emails and texts from fourteen custodians), then the proper course is for Trive to file a motion to compel those texts.  What is not proper is for Trive to condition its production of relevant and proportional discovery on its further unreasonable demands.

51.    Finally, this is a textbook case of "information asymmetry."  *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at \*4 (E.D. Pa. Sept. 3, 2021) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).  As the representative of the victims of fraud against whom no claims are asserted, the Trustee has "very little discoverable information," while Trive—the chief architect of the scheme that defrauded the Noteholders of millions—has "vast amounts of information."  *Id.*  Under these circumstances, "the burden of responding to discovery lies heavier on the party who has more information, and properly so."  *Id.*  Because more responsive documents sit with Trive than the Trustee, it makes sense that Trive may need to review more documents than the Trustee.  Yet notwithstanding that asymmetry, the Trustee has reviewed vastly more documents than Trive, and has produced from vastly more custodians as well.  Trive's continued refusal to produce documents from a critical custodian with uniquely relevant documents simply cannot be sustained in light of the substantial production disparities between the parties.

## III.    THE TRUSTEE IS ENTITLED TO DISCOVERY CONCERNING SUBSEQUENT TRANSFERS OF THE HOLDINGS DISTRIBUTIONS

52.     The Trustee is also entitled to discovery concerning subsequent transfers of the Holdings Distributions made by Trive, even before he obtains a final judgment avoiding those distributions.

53.     Courts do not require a trustee to avoid an initial transfer before seeking discovery about subsequent transfers.  Rather, a trustee may pursue "discovery relating to the statutory remedy provided under § 550" at the same time as "discovery relating to the avoidance claims." *Dymarkowski v. Iland Green Techs., Inc. (In re Xunlight Corp.)*, 2016 Bankr. LEXIS 4279, at *9 (Bankr. N.D. Ohio Dec. 14, 2016).  In *Dymarkowski*, the Chapter 7 trustee sought to avoid a transfer of collateral and moved to compel the initial transferee to produce "documents related to any subsequent transactions which occurred with respect to the [collateral]."  *Id.* at *4.  The defendant argued that such discovery would be irrelevant "until the [t]rustee prevail[ed] on his avoidance claims."  *Id.* at *8.  The court squarely rejected this argument, holding that discovery relating to subsequent transfers may proceed contemporaneously with discovery relating to the initial transfers.  *Id.* at *9-10.  The court granted the trustee's motion to compel.  *Id.* at *11.

54.     Bankruptcy courts in this district follow the same approach.  Just two years ago, in *Byju's Alpha*, Judge Dorsey ordered the production of documents relating to subsequent transfers before the debtor prevailed on its avoidance claims.  *See* Hr'g Tr. at 17:16-23, *Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*, No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100, Ex. D.  Indeed, Judge Dorsey found the information "relevant to the adversary proceeding itself"—prior to the entry of judgment—in "a number of ways."  *Id.* at 4:10-5:12.  Among other things, Judge Dorsey noted that the location of the diverted funds—which "might have done a loop de loop" back to the transferee or an entity it controlled—was relevant in the fraudulent transfer action.  *Id.*  The same logic applies here.  Documents tracing Trive's

19

subsequent transfers are plainly relevant given the Trustee's allegations that the funds circled back to the Trive Funds themselves. *See* D.I. 57 ¶¶ 279-80.

55.     *Dymarkowski* and *Byju Alpha* are consistent with the well-established rule that a trustee "is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 650 B.R. 5, 22 (Bankr. S.D.N.Y. 2023) (citing *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005)); *In Re Glob. Prot. USA, Inc.*, 546 B.R. 586, 619 (Bankr. D.N.J. 2016) ("[T]he majority of courts hold that 'a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee.'") (quoting Collier on Bankruptcy, ¶ 550.02[1] (Matthew Bender 16th ed.)).  Because a trustee can bring claims against subsequent transferees without avoiding the initial transfer, the Trustee can discover information necessary to trace subsequent transfers and identify subsequent transferees.

56.     Allowing this discovery also serves judicial efficiency.  Because the Trustee can bring claims against subsequent transferees today—without first obtaining a judgment against Trive—discovery to identify and trace those transfers is relevant now.  If subsequent transfers are identified, judicial and party efficiency is served by permitting the Trustee to amend to add those claims rather than pursue seriatim actions.  Requiring the Trustee to wait for a judgment in this case before pursuing subsequent transferees would cause unnecessary delay and could frustrate the Trustee's ability to collect any judgment.

57.     Moreover, information pertaining to subsequent transfers of the Holdings Distributions is directly relevant to the Trustee's claims against Trive.  "[S]ince fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including subsequent conduct.'" *United States v. Green*, 201 F.3d 251, 256 (3d Cir. 2000) (citation omitted).

20

In *Green*, the Third Circuit relied on a debtor's post-transfer conduct as evidence confirming his intent to defraud creditors. *Id.* at 256-57. The Trustee likewise seeks discovery into Trive's "subsequent conduct," such as attempts to conceal the initial transfers via subsequent transfers to co-conspirators or offshore accounts, as evidence of fraudulent intent. For example, if Trive's regular practice is only to pay out proceeds to its investors at the end of the life cycle of one of its funds, but Trive rushed to pay out proceeds from the Holdings Distributions either right after they were received, before filing Holdings for bankruptcy, or after receiving Rule 2004 subpoenas, the out-of-the ordinary timing of those transfers could be evidence of guilty conscience.

58. The Amended Complaint alleges that Trive and its co-conspirators routed the Holdings Distributions through a web of Trive-controlled entities to the very insiders alleged to have orchestrated the fraud. D.I. 57 ¶¶ 308-09. Those are the same kind of post-distribution maneuvers that *Green* found probative of an intent to defraud creditors. The Trustee further alleges that these same insiders engineered the Holdings Distributions with actual intent to defraud creditors, and even tried to push through a de minimis settlement before the change in control, "when the truth would likely come out." *Id.* ¶¶ 274-75. Documents showing how, when, and to whom Trive moved the proceeds bear directly on that intent.

59. While the Trive Defendants have produced bank statements that they contend are "'sufficient to identify' transfers of Holdings Distributions proceeds made prior to March 31, 2024 by [Trive]," Gazzola Decl., Ex. O, at 1-2, the statements provide no information whatsoever on the ultimate recipients of the transfers, including those transferees' identities, the amounts they received, and the dates of such subsequent transfers. They accordingly do not satisfy the need for which this discovery was sought—namely, to identify subsequent transferees and shed light on Trive's motives for undertaking the Holdings Distributions to begin with. The Trive Defendants'

assertion that this manifestly deficient production fully satisfies the Trustee's discovery demand is just the latest tactic in Trive's long-running campaign to obstruct the Trustee's discovery into its misconduct.

60.    Finally, in the alternative, if Trive maintains the position that the subsequent transfers are wholly unrelated to this action, the information should be produced in response to the Trustee's June 25, 2025 supplemental Rule 2004 subpoena.    A party who does not seek to circumvent the Federal Rules of Civil Procedure should be granted a Rule 2004 examination on issues in addition to or beyond the scope of a pending adversary proceeding. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629-30 (Bankr. D. Del. 2016); *see also In re Buick*, 174 B.R. 299, 306 (Bankr. D. Colo. 1994) ("Additionally, however, a creditor may conduct Rule 2004 examinations regarding issues in addition to or beyond the scope of its pending adversary proceeding(s) . . . ."). Trive cannot have it both ways. If Trive insists the requests relating to subsequent distributions are not relevant to this adversary proceeding, the documents must be produced in response to the Rule 2004 subpoena.

61.    The Trustee expects that Trive will nevertheless object under the prior proceeding rule. Such an objection should be rejected for the same reasons the Court previously rejected OpCo's original objection to the Trustee's Rule 2004 subpoena to OpCo. *See* Hr'g Tr. 59:18-60:9, *In re Lucky Bucks Holdings LLC*, No. 23-10756 (Bankr. D. Del. Mar. 20, 2024), D.I. 67. Specifically, at the March 20, 2024 hearing in the main proceeding on the Trustee's Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing the Examination of OpCo, the Court "disagree[d] … with [OpCo's] contention that all of the discovery sought by the [T]rustee in th[e] 2004 motion [was] related to the revocation adversary proceeding," rejecting OpCo's invocation of the pending proceeding rule. Hr'g Tr. at 59:12-17. The Court found that, "even if" there was

22

"overlap between the 2004 discovery and the adversary discovery," if the Court denied "2004 discovery whole cloth, as Arc wishe[d], the [T]rustee will have no avenue to obtain some of its discovery regarding the note issuance *and the subsequent distributions*." Hr'g Tr. at 59:18-60:2 (emphasis added). In reaching this conclusion, the Court found that "bifurcating the overlapping discovery would create discovery inefficiencies and delay, which are not appropriate given the lack of harm" to the producing party. Hr'g Tr. at 60:22-61:1; *see also* Hr'g Tr. at 6:1-9, *Byju's Alpha*, No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100, Ex. D (rejecting defendants' argument "that there is some kind of catch-22" foreclosing subsequent transfer discovery both in the adversary proceeding and under Rule 2004). Here, Trive has created exactly the type of discovery inefficiencies and delay in which the Court sought to prohibit OpCo from engaging. And there is no harm to Trive from producing documents relating to subsequent transfers, whether as part of this adversary proceeding or in response to the Rule 2004 subpoenas in the main proceeding.

## CONCLUSION

62. For the foregoing reasons, the Court should grant the Motion and enter an order substantially in the form attached as Exhibit A.

[*Signature of counsel appears on next page.*]

Dated: June 4, 2026          WHITEFORD TAYLOR & PRESTON LLP
      Wilmington, Delaware    By: /s/ *Bradley P. Lehman*
                               William F. Taylor, Jr. (DE No. 2936)
                               Bradley P. Lehman (DE No. 5921)
                               600 North King Street, Suite 300
                               Wilmington, DE 19801
                               Telephone: (302) 353-4144
                               Facsimile: (302) 357-3286

                               -and-

                               QUINN EMANUEL URQUHART
                               & SULLIVAN LLP
                               Susheel Kirpalani
                               Andrew J. Rossman
                               Matthew R. Scheck
                               Mario O. Gazzola
                               Kenneth B. Hershey
                               295 Fifth Avenue, 9th Floor
                               New York, New York 10016
                               Telephone: (212) 849-7000
                               Facsimile: (212) 849-7100

                               *Counsel to the Chapter 7 Trustee*

24

## CERTIFICATION OF COUNSEL UNDER LOCAL RULE 7026-1(d)

1.      Between July 22, 2025 and April 8, 2026, the Trustee's counsel met and conferred with Trive's counsel repeatedly regarding these matters. Despite a reasonable effort by the Trustee's counsel to resolve the disputes described in this Motion, the parties did not reach an agreement.