# EXHIBIT E

**EXHIBIT A**

**DOCUMENT REQUEST**

1

## **DEFINITIONS**

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      The terms "Document" and "Documents" are intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, (whether in paper, database, electronic or other format(s)), calculations (whether in paper, database, electronic or other format(s)), books, books of account, statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies, summaries, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets or things similar to any of the foregoing however denominated.  The term "document" further includes email and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disk, or by some other storage mechanism.  The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys).  The term "document" also includes all Electronically Stored Information (defined below).  Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.

2.      "Electronically Stored Information" or "ESI" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and refers to all computer or electronically stored or generated data and information and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" or "ESI" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" or "ESI" includes: word-processing Documents; electronic spreadsheets; electronic presentation Documents; email messages; image files; sound files; and material or information stored in a database, or accessible from a database. "Electronically Stored Information" or "ESI" also includes all associated metadata that is maintained or saved, which includes: a Document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes;

2

history of changes; email header information; history of who viewed an email and when; and email routing information.

3.      "B-Side Businesses" shall refer to Angel Amusements, LLC, Dynamic Gaming, LLC, Unique Amusement, LLC, AKS Amusements, Inc., Advance Amusement, LLC, Klass Amusement, LLC, Prestige Amusement, LLC, Lee Caudell, Inc., Pinball Amusement, LLC, Peak Amusement, LLC, Blue Georgia 1000, Inc, Georgia Winners, LLC.

4.      "Board Members" shall mean the board members of any of Lucky Bucks Holdings LLC, Lucky Bucks, LLC, and any intermediate entities from January 1, 2020 to December 31, 2023.

5.      "COAMs" shall refer to coin operated amusement machines.

6.      "Company" shall refer to Lucky Bucks Holdings LLC, Lucky Bucks, LLC, and any intermediate entities.

7.      "Conversion Order" shall refer to the *Ad Hoc Group of Holdings PIK Noteholders' Motion to Convert Lucky Bucks Holdings LLC's Chapter 11 Case to a Chapter 7 Case*.

8.      "Debtor" shall refer to Lucky Bucks Holdings LLC.

9.      "Distribution Transactions" shall refer to the purchase of $250 million of PIK notes issued by Lucky Bucks Holdings LLC in 2021 and 2022, the proceeds of which were distributed to some or all of the Insiders.

10.      "Evercore" shall refer to Evercore, Inc.

11.      "Former Employees/Consultants" shall refer to Shafik "Tony" Kassam, James Boyden, Ryan C Bouskill, Hassan Ijaz, 2786692 Ontario Inc., and Stephanie Lippa née Alito.

12.      "GLC" shall refer to Georgia Lottery Corporation.

13.      "Houlihan" shall refer to Houlihan Lokey Capital, Inc.

14.      "Insiders" shall refer to Former Employees/Consultants, Trive, Anil Damani, LBVI, and Seven Aces.

15.      "LBVI" shall refer to Lucky Bucks Ventures Inc.

16.      "Location Contracts" shall refer to written agreements between OpCo and the store operators who house Lucky Bucks coin operated amusement machines.

17.      "Location Owners" shall refer to those with contracts to operate Lucky Bucks coin operated amusement machines.

18.      "M3" shall refer to M3 Partners, LP.

3

19.     "Note Purchase Agreement" shall refer to the agreement dated as of November 29, 2021 pursuant to which $250 million in aggregate face amount of unsecured 12.5% PIK Notes due 2028 was issued.

20.     "OpCo" shall refer to Arc Gaming and Technologies, LLC f/k/a Lucky Bucks, LLC.

21.     "PIK Noteholders" shall refer to the class of creditors consisting of BC Partners, CION Investment Corporation, Marathon Centre Street Partnership, L.P., Monarch Alternative Capital, Hamilton Lane, and First Trust.

22.     "Ryan C Bouskill" shall refer to Ryan C Bouskill Professional Corporation, as well as Ryan C Bouskill as an individual.

23.     "Seven Aces" shall refer to Seven Aces Holdings ULC.

24.     "Shearman" shall refer to Shearman & Sterling LLP.

25.     "Trustee" shall refer to Marc Abrams, solely in his capacity as Chapter 7 trustee for Lucky Bucks Holdings LLC.

26.     "Trive" shall mean Trive Capital Management LLC, Trive Capital Holdings LLC, Trive Capital Fund III GP LLC, Trive Capital Fund III-A GP LLC, TCFIII Luck SPV LP, and TCFIII Luck Acquisition LLC.

27.     "You" shall refer to Trive.

### INSTRUCTIONS

1.     These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individual requests below.

2.     The documents covered by this request include all documents in your possession, custody, or control.  Unless otherwise specified, each request herein seeks all responsive documents without any limitation with respect to date.

3.     Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

4.     You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

5.     You shall produce Electronically Stored Information in its native format.

6.     All documents and Electronically Stored Information shall be produced with metadata, including but not limited to the date created/sent, author, recipients, cc-copies, and bcc-blind copies.

7.     If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

8.     Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

9.     Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

10.     Documents attached to each other should not be separated.

11.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

12.     The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

13.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

14.     If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

15.     Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

16.     The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.  The use of defined terms apply whether or not they are capitalized.

17.     The term "including" means "including, without limitation."

5

## DOCUMENTS REQUESTED

1.      All Documents and Communications relating to any transfers of proceeds in connection with the Holdings Distributions received by or transferred from any of the Trive Defendants during the period of November 1, 2021 to present, including the amount, date, ultimate recipient, and the disclosure of any such transfers.

2.      All Documents and Communications relating to any transfers of proceeds in connection with the Holdings Distributions received by or transferred from any of the limited partners of funds managed by the Trive Defendants and/or their affiliates during the period of November 1, 2021 to present, including the amount, date, ultimate recipient, and the disclosure of any such transfers.

3.      All Documents and Communications sufficient to identify all initial, intermediate, and subsequent transferees of the proceeds from the Holdings Distributions during the period of November 1, 2021 to present.

4.      All Documents and Communications relating to any value or consideration given by all initial, intermediate, and subsequent transferors in exchange for receiving proceeds from the Holdings Distributions during the period of November 1, 2021 to present.

5.      All Documents and Communications relating to any distributions by any of the Trive Defendants including, for each distribution, the amount, date, ultimate recipient, and disclosure of any such distributions.

6.      All Documents and Communications relating to any intentions, plans, or predictions relating to any future distributions by any of the Trive Defendants, including, for each potential or actual future distribution, the amount, date, ultimate recipient, and disclosure of any such distributions.