# EXHIBIT H

**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7102**

WRITER'S EMAIL ADDRESS
**mariogazzola@quinnemanuel.com**

June 23, 2025

**<u>VIA EMAIL</u>**

Ross E. Firsenbaum, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Re:    *Abrams v. Trive Capital Management LLC, et al.*,
       <u>Adversary Proceeding No. 24-50130 (Bankr. D. Del.).</u>

Dear Mr. Firsenbaum,

The Trustee writes in response to your June 3, 2025 letter.

<u>Rule 2004 Discovery: Shearman Production</u>

In your letter, you continue to maintain that the Trustee must "produce any communications between Shearman [] and third parties that break the privilege, as well as any communications involving the Trive Defendants." Ltr. at 2. The Trustee is still working through privilege matters and will produce documents and any privilege log in due course. This has taken longer than expected because the Trustee is attempting to negotiate a potential 502(d) stipulation with the relevant stakeholders which would permit the Trustee to simply produce the entire Shearman production in this litigation. Please let us know if you would be amenable to such a stipulation.

Further, you requested the total number of documents produced by Shearman in connection with Rule 2004 discovery. *See* Ltr. at 3. Shearman produced 8,547 documents.

<u>Rule 2004 Discovery: Search Parameters</u>

Your letter asked for the search parameters applied by parties and third-parties who made productions to the Trustee in response to Rule 2004 discovery propounded by the Trustee. Ltr. at 3. The Trustee does not know what search parameters all parties and third-parties used. Please request that information from those parties and third-parties and please share that information with the Trustee once you receive it.

<u>Revocation Proceeding</u>

In your letter, you requested that the Trustee provide his position on whether he would would "agree to consider [the Revocation Proceeding] . . . documents as a repository to be searched for relevant documents." Ltr. at 3. Documents from the Revocation Proceeding concern distinct legal and factual issues and are unlikely to bear on any subject matter in the instant litigation. Undertaking a search of these documents would impose an unnecessary burden and expense on the Trustee. To the extent that any documents from the Revocation Proceeding are relevant to this matter, The Trustee expects that such documents would be included in his other document productions, including in his production of documents that the Trustee received in connection with Rule 2004 discovery.

Request for Productions Nos. 3 and No.4

You asked that the Trustee provide a list of all categories of documents—based on the topics listed in the Trive Defendants' Request for Production No. 3—that the Trustee considers overbroad and irrelevant to the ongoing litigation, and which therefore justify the Trustee's withholding of such documents. Ltr. at 3-4. The Trustee does not have an obligation to provide each and every category of documents that he believes is irrelevant. It is the Trustee's obligation to identify which documents he intends to produce. If you believe that there are relevant documents that fall outside the categories of documents the Trustee is agreeing to produce, please let the Trustee know what those categories are, and he will consider your request.

In addition, you asked that the Trustee produce "communications between Hamilton Lane, on the one hand, and the Trive Defendants, on the other hand, regardless of whether those documents or communications relate to other Trive sponsorships or Lucky Bucks." Ltr. at 4. Hamilton Lane's relationship with the Trive Defendants unrelated to Lucky Bucks is irrelevant to this proceeding. In any event, presumably the Trive Defendants would already have in their possession communications between themselves and Hamilton Lane and are welcome to produce them if they intend to rely upon them—unless, of course, the Trive Defendants are representing that they deleted these communications.

Noteholder Discovery

First, your claim that the Trustee's receipt of several documents from the Noteholders "is not consistent with our prior communications, during which the Trustee took the position that he had not received any documents from the Noteholders" is incorrect. Ltr. at 5. On no occasion has the Trustee represented that he has not received any documents from the Noteholders whatsoever. In prior communications, the Trustee has only stated that he has not conducted any coordinated discovery efforts with the Noteholders in response to the Trive Defendants' Requests for Production.

Second, you requested that the Trustee provide a written response as to "when the Trustee received documents from the Noteholders and what categories of documents he received." Ltr. at 5. The Trustee will produce all responsive, non-privileged documents he has received from the Noteholders, subject to our agreement on a search protocol (i.e., custodians, search terms, and date ranges). The Trive Defendants are not entitled to anything further.

Noteholder Discovery: Hard Copy Materials

2

In your letter you asked whether the Trustee is "representing that [he] ha[s] reviewed [all hard copy materials] and concluded that they are all perfect duplicates of electronic documents that are going to be produced." Ltr. at 5. In addition you stated that absent such review, you "request production of all such hard copy documents." Ltr. at 5. Based on the Trustee's current understanding from the custodians, and based on the Trustee's review of documents collected to date, the Trustee understands that hard-copy materials are entirely duplicative of electronic materials that have been or will be produced. The Trustee will, however, confirm this with the relevant custodians.

Noteholder Discovery: Custodians

In your letter you requested that the Trustee add the following custodians for each Noteholder: (a) *CION*: Nicholas Tzoumas; (b) *Monarch*: Daniel Phelps; (c) *Hamilton Lane*: Ryan Nassib and [Holly] Power. *See* Ltr. at 6-7. Additionally, you requested more information regarding former First Trust employees, Colin Pigott, Madeline Schneck, and Charlie Kolacki in order to assess whether to propose adding these individuals as custodians. *See* Ltr. at 6-7. The Trustee has already agreed to collect and produce documents from 14 custodians. By contrast, the Trive Defendants to date have only collected and reviewed documents from two custodians, and have asserted in meet and confers that the Trive Defendants are not willing to expand the number of custodians from which they will review and produce documents.

Accordingly, at this stage, the Trustee believes it would be premature to negotiate adding new custodians before it has any meaningful data regarding hit counts for the agreed upon search terms, custodians, and date ranges. The Trustee proposes first running the to be agreed upon search terms across the current custodian list and date ranges, which will allow the parties to better evaluate whether any additional custodians are needed, and, if so, which ones are most likely to have responsive, non-duplicative materials in their possession. The Trustee remains open to further negotiation regarding the custodian list once he has more data, especially if the initial productions reveal participation from other custodians. To that end, please confirm the Trive Defendants will add Conner Searcy as a custodian given that Rule 2004 discovery revealed that Mr. Searcy received direct updates from the GLC regarding, among other things, cancellation of location contracts.

Further, you requested the following information for First Trust custodians, Brian Murphy, Rob O'Hara, and Jacob Pucetti: "(a) an explanation of the custodian's role on the Notes transactions; (b) confirmation . . . [of] each custodian's current position and title; and (c) the position(s) and title(s) held by each of the custodians at the time of the Notes transaction." Ltr. at 6. The Trustee is awaiting confirmation regarding the requested information and will provide such information to you as soon as he receives it.

Noteholder Discovery: Search Terms

In your letter, you set out a number of changes and additions to the Trustee's proposed list of search terms to be used in connection with Noteholder discovery. Ltr. at 8-9 (noting additions in red). Search term number 26 from your June 3, 2025 letter (("M&A" OR acquisition* OR

merger\*) w/20 "pipeline") is inappropriate as it captures any and all merger and acquisition activity irrespective of its connection to the facts of this case.  Ltr. at 9.  Further, the Trustee proposes two additional exceptions with respect to Monarch.  First, Monarch has expressed that it regularly uses the term "quantum" in connection with investment transactions, and therefore the Trustee instead proposes the search term "Quantum Gaming" for Monarch.  Second, Monarch had an employee by the name "Imran" during the relevant time period for discovery.  Therefore, to avoid sweeping in all matters involving this employee, the Trustee proposes dropping that search term for Monarch.  Excluding search term  number 26, these two exceptions with respect to Monarch,  and subject to hit counts, the Trustee (by way of the Noteholders) agrees to run the search terms proposed in your letter.  The Trustee reserves all rights to request a narrowed list of proposed search terms or to request that a search term be given added precision if it becomes clear that a given term generates a population that is overbroad and/or unduly burdensome.

You also requested that the Trustee provide you with "(a) the total document review population generated by the Trustee's proposed collection search terms, and (b) hit totals, including total hits with families and unique hits with families, for each of the Trustee's proposed collection search terms."  Ltr at 8.  The Trustee agrees to provide you with this information on the search terms the parties ultimately agree to as soon as such data becomes available to the Trustee.

Best,

/s/ *Mario O. Gazzola*

Mario O. Gazzola