**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| LUCKY BUCKS HOLDINGS LLC, | Case No.  23-10756 (KBO) |
| Debtor. | |

| | |
|---|---|
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of<br>Lucky Bucks Holdings LLC and as<br>assignee, | Adversary Proceeding<br><br>Adv.  Proc.  No.  24-50130 (KBO) |
| Plaintiff, | |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC, *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
AND OPPOSITION TO THE TRIVE DEFENDANTS' CROSS-MOTION TO COMPEL**

QUINN EMANUEL URQUHART
  & SULLIVAN LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew R. Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016

WHITEFORD TAYLOR
  & PRESTON LLP
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, DE 19801

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

RELEVANT BACKGROUND ..............................................................................................3

    A.    The Trustee's Requests For The Production Of Documents ...................................3

    B.    Trive Demands Additional Custodians....................................................................4

    C.    Collection Of Instant Messages ..............................................................................6

ARGUMENT ...........................................................................................................................7

I.    THE COURT SHOULD NOT COMPEL THE TRUSTEE TO PRODUCE DOCUMENTS FROM MR. GOLDTHORPE'S PERSONAL CELLPHONE...................7

II.    MR. TERWILLIGER AND MS. KIM SHOULD NOT BE ADDED AS CUSTODIANS ...........................................................................................................11

    A.    Trive Has Not Justified A Need For Designation Of Additional BC Partners Custodians...............................................................................................11

    B.    There Is No Reason To Believe Substantive Discussions Were Not Captured By Existing Custodians ..........................................................................12

        1.    Mr. Terwilliger Does Not Possess Substantive Non-Duplicative Documents And Communications ..............................................................13

        2.    Ms. Kim Does Not Possess Substantive Non-Duplicative Documents And Communications ..............................................................15

III.    THE TRUSTEE AGREED TO PRODUCE RESPONSIVE SLACK AND TEAMS MESSAGES IN APRIL, MONTHS BEFORE TRIVE'S MOTION TO COMPEL.........20

IV.    THE COURT SHOULD ORDER TRIVE TO PAY THE TRUSTEE'S LEGAL FEES IN CONNECTION WITH HIS DEMAND FOR MR. SEARCY'S DOCUMENTS.......................................................................................................22

    A.    After Months of Stonewalling Negotiations and After The Trustee Moved To Compel, Trive Made A Limited Production Of Searcy's Documents. ...........22

    B.    Federal Rule of Civil Procedure 37 Requires Trive To Pay The Trustee's Attorneys' Fees In Connection With The Motion To Compel Searcy's Documents ..............................................................................................24

V.    THE COURT SHOULD COMPEL TRIVE TO DISCLOSE THE IDENTITIES OF THE SUBSEQUENT TRANSFEREES OF THE HOLDINGS DISTRIBUTIONS.........26

CONCLUSION........................................................................................................................30

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
    2025 WL 2188842 (M.D. Tenn. Mar. 25, 2025) ....................................................15

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
    2024 WL 3966878 (D. Del. June 20, 2024).........................................................13

*In re Atomica Design Grp., Inc.*,
    591 B.R. 217 (Bankr. E.D. Pa. 2018) ............................................................24, 25

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3d Cir. 1999).............................................................................7

*Bey v. Holt*,
    2026 WL 892497 (M.D. Pa. Mar. 31, 2026)......................................................26

*Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*,
    2010 WL 2898288 (D. Del. July 20, 2010) .......................................................10

*Biondo v. Kaleida Health*,
    2016 WL 2752032 (W.D.N.Y. May 12, 2016)....................................................26

*Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*,
    No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100.....................29

*Centennial Archaeology, Inc. v. AECOM, Inc.*,
    688 F.3d 673 (10th Cir. 2012) ........................................................................26

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
    107 F.R.D. 288 (D. Del. 1985) .......................................................................28

*Combined Ins. Co. of Am. v. Bastian*,
    2010 WL 11556590 (M.D. Pa. Mar. 16, 2010).....................................................25

*In re Cyber Litig. Inc.*,
    2021 WL 2655312 (Bankr. D. Del. June 28, 2021).............................................30

*Enslin v. Coca-Cola Company*,
    2016 WL 7042206 (E.D. Pa. June 8, 2016).................................................11, 12

*Federal Open Market Committee v. Merrill*,
    443 U.S. 340 (1979)......................................................................................28

*Flynn v. Mfrs. & Trades Tr. Co.*,
    2021 WL 8362649 (E.D. Pa. Sept. 15, 2021) ........................................................10

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    297 F.R.D. 99 (S.D.N.Y. 2013) .......................................................................11, 12

*Fusion Diagnostic Laby's, LLC v. Atila Biosystems, Inc.*,
    2025 WL 3124139 (D.N.J. Nov. 4, 2025) ..............................................................10

*Gov't Emps. Ins. Co. v. E. Coast Spine, Joint & Sports Med. Pro. Ass'n*,
    2022 WL 4237082 (D.N.J. Sept. 14, 2022) ............................................................26

*Handloser v. HCL America, Inc.*,
    2020 WL 7405686 (N.D. Cal. Dec. 17, 2020) ........................................................12

*Hardy v. UPS Ground Freight, Inc.*,
    2019 WL 3290346 (D. Mass. July 22, 2019)............................................................8

*Israel v. Pierce*,
    235 F. Supp. 3d 598 (D. Del. 2017)..................................................................26, 27

*Kokinda v. Pa. Dep't of Corr.*,
    2018 WL 1035261 (W.D. Pa. Feb. 23, 2018) .........................................................10

*Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*,
    2022 WL 2191519 (D.N.J. June 17, 2022) ............................................................8, 9

*LaSala v. Marfin Popular Bank Pub. Co.*,
    410 F. App'x 474 (3d Cir. 2011) ...........................................................................10

*Liafail, Inc. v. Learning 2000, Inc.*,
    2003 WL 722199 (D. Del. Mar. 3, 2003) ...............................................................25

*Lucas v. Am. Clean Energy Sys., Inc.*,
    2017 WL 11680439 (W.D. Pa. Aug. 17, 2017) ......................................................28

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) .......................................................................30

*In re Novo Nordisk Sec. Litig.*,
    530 F. Supp. 3d 495 (D.N.J. 2021) ..........................................................................7

*Riley v. California*,
    573 U.S. 373 (2014)..................................................................................................8

*Schiavone v. Luzerne Cnty.*,
    343 F.R.D. 34 (M.D. Pa. 2023)................................................................................7

*Scott C. v. Bethlehem Area Sch. Dist.*,
   2002 WL 32349817 (E.D. Pa. July 23, 2002) ................................................................12

*United Rentals v. Liberty Mut. Fire Ins. Co.*,
   2021 WL 12363093 (D.N.J. Apr. 26, 2021) ....................................................................25

*United States v. Green*,
   201 F.3d 251 (3d Cir. 2000) ...........................................................................................27

*United States v. United Techs. Corp.*,
   2020 WL 7339916 (D. Conn. Dec. 14, 2020) .................................................................11

*In re Wash. Mut., Inc.*,
   408 B.R. 45 (Bankr. D. Del. 2009) .................................................................................29

## **Statutes**

6 *Del. C.* § 18-607 .............................................................................................................27

6 *Del. C.* § 73-101 et seq. ...................................................................................................27

6 *Del. C.* § 1304(a)(1) ........................................................................................................27

11 U.S.C. § 544 ...................................................................................................................27

11 U.S.C. § 548 ...................................................................................................................27

11 U.S.C. § 550 ...............................................................................................................2, 27

O.C.G.A. § 10-5-1 et seq. ...................................................................................................27

O.C.G.A. § 16-14-4 et seq. .................................................................................................27

O.C.G.A. § 18-2-74 et seq. .................................................................................................27

Tex. Gov't Code Ann. § 4001.001 et seq. ..........................................................................27

## **Other Authorities**

Fed. R. Bankr. P. 2004 ......................................................1, 2, 3, 22, 23, 25, 28, 29, 30

Fed. R. Bankr. P. 7037 ........................................................................................................24

Fed. R. Civ. P. 26 ................................................................................................................11

Fed. R. Civ. P. 37 .........................................................................................1, 4, 22, 24, 26

Local Rule 7026-1 .......................................................................................................3, 20, 22

Marc Abrams (the "Trustee" or "Plaintiff"), solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Lucky Bucks Holdings LLC ("Holdings") and as assignee of causes of action previously belonging to Holdings' creditors, respectfully submits this memorandum of law in support of his motion to compel Defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming, LLC, and Shravan Thadani (collectively, "Trive") to produce documents responsive to the Trustee's requests for production (ECF No. 209, the "Motion" or "Mot.") and in opposition to Defendant Trive's cross-motion to compel (ECF No. 211, the "Cross-Motion" or "Cross-Mot.").

## PRELIMINARY STATEMENT

1. Trive's Cross-Motion is a diversion. Having stonewalled the Trustee's request for Conner Searcy's documents for nearly a year on a shifting series of positions—first that it owed no further searches at all, then that Searcy had no relevant documents, then that it would produce them only in exchange for a fifteenth Trustee custodian, then that reviewing Searcy's documents would be overly burdensome—Trive produced those documents only after the Trustee moved to compel, and only days before its opposition was due. Rather than explain that year of delay, Trive filed its own Cross-Motion accusing the Trustee of the very discovery misconduct Trive itself committed, while ignoring the actual scope of the Trustee's effort: Even casting aside the 240,000 documents the Trustee produced in connection with Rule 2004 discovery, the Trustee has reviewed more than 200,000 Noteholder documents from fifteen custodians, compared to the roughly 48,000 documents Trive has reviewed from its own two or three custodians.

2. On the Trustee's Motion, two issues remain live. First, because Trive's production of Searcy's documents came only after the Trustee was forced to move to compel a concededly meritorious request, Rule 37(a)(5) entitles the Trustee to his attorneys' fees for that motion.

Second, Trive still has not produced meaningful discovery on the subsequent transfer of the Holdings Distributions.  The handful of redacted bank statements Trive has offered shows only that money left Trive's accounts—not who received it.  That information bears directly on the Trustee's fraud claims and on Trive's exposure to subsequent-transferee liability under 11 U.S.C. § 550, and Trive's studied refusal to produce it, whether in this adversary proceeding or in response to the Trustee's outstanding Rule 2004 subpoena, cannot continue.

3.      Trive's Cross-Motion fares no better.  Trive asks the Court to compel a search of Ted Goldthorpe's personal cell phone.  Mr. Goldthorpe was not part of BC Partners' deal team for this transaction, and Trive did not ask for him to be added as a custodian at all until March 2026. Nonetheless, the Trustee has already agreed to collect and produce Mr. Goldthorpe's email.  Trive, however, wants more.  Trive ignores that BC Partners maintained a policy against employees using personal phones for work, and Trive identifies no evidence that Mr. Goldthorpe's personal device contains anything relevant, let alone anything not already captured by his email or by the custodians who were actually on BC Partners' deal team for this transaction.

4.      That same defect dooms Trive's demand for two more BC Partners custodians, Mike Terwilliger and Clare Kim. The Trustee has already collected and produced from the BC Partners deal-team members with primary responsibility for the notes transaction.  Trive points to a handful of documents showing that Mr. Terwilliger and Ms. Kim were copied on or attended some of the same meetings and calls—not that either possesses substantive, non-duplicative material the Trustee's existing custodians do not already have.  Adding a sixteenth and seventeenth custodian on that showing is neither necessary nor proportional.

5.      Finally, Trive's request for an order compelling production of BC Partners' and Hamilton Lane's chat messages seeks relief the Trustee already agreed to provide.  Had Trive met

and conferred before rushing to file, as Local Rule 7026-1(d) requires, they would have learned that the Trustee has been working through discrete technical obstacles to collecting those messages and expects to produce them shortly.  A motion to compel what a party has already agreed to do is not a basis for relief; it is a substitute for the conferral Trive skipped.

6.      The pattern across both motions is the same.  The Trustee has met or exceeded every discovery obligation Trive has identified, while Trive spent a year refusing to search its own co-founder's files and now asks this Court to impose burdens on the Trustee that Trive never imposed on itself.  The Court should grant the Trustee's Motion in full, award the Trustee his fees on the Searcy dispute, and deny Trive's Cross-Motion.

## RELEVANT BACKGROUND

7.      The Trustee provided a lengthy explanation of the facts in his Motion to Compel, but Trive's determination to distort the facts requires correction.  *See Mot.* ¶¶ 13-33.

### A.      The Trustee's Requests For The Production Of Documents

8.      The Trustee has served several requests for the production of documents on Trive, beginning with subpoenas under Rule 2004 served on March 12, 2024, and June 25, 2025.  ECF Nos. 210-2; 210-5.  The Trustee then served requests for the production of documents in connection with this adversary proceeding on April 11, 2025, and August 1, 2025.  ECF Nos. 210-3; 210-6.  The Trustee served additional requests on April 10, 2026, seeking information regarding Trive's affirmative defenses, which the Trustee only learned about on March 4, 2026—when Trive filed their answer to the Trustee's amended complaint.  ECF No. 213-3.

9.      Upon receiving the Trustee's requests for the production of documents in this adversary proceeding, Trive asserted that it had no obligation to produce any further documents because it had already negotiated custodians and search terms during Rule 2004 discovery. Apparently realizing that this argument was frivolous, Trive ultimately agreed to produce

additional documents from search terms the Trustee proposed.[1]  The Trustee received Trive's first production in this proceeding on April 23, 2026—over one year after the Trustee first served his requests.[2]

### B.      Trive Demands Additional Custodians

10.      After some negotiation, the Trustee and Trive agreed on fourteen Noteholder custodians on June 3, 2025.  ECF No. 117-7.  The Trustee agreed to collect and review documents from the two custodians from BC Partners who were most involved in the Lucky Bucks transaction:  Ivelin Dimitrov and Jason Young.  Both custodians were on the Lucky Bucks deal team at BC Partners and were deeply involved in BC Partners' diligence into Lucky Bucks and communications with Trive and others at Lucky Bucks.  No other individuals at BC Partners were as involved in that deal as Mr. Dimitrov and Mr. Young.  Trive had initially asked to include Ms. Clare Kim as a custodian but agreed to exclude her as a custodian at that time while reserving the right to seek her custodial documents in the future.  *Id.* at 8.  Trive however, never mentioned including Mr. Ted Goldthorpe or Mr. Mike Terwilliger as custodians before this March.

---

[1]   This is a recurring pattern in Trive's conduct, beginning with its reversal on producing documents in response to the requests for production, and ending most recently with its implicit concession that its position on Mr. Searcy's documents was unsupportable.  This type of gamesmanship—taking extreme, indefensible positions in discovery only to reverse course after the Trustee has expended significant resources—is precisely the type of misconduct that sanctions under Fed. R. Civ. P. 37(a)(5)(A) are intended to remedy.

[2]   Though the Trustee does not take issue with the delay of over a year, given that the production was made before the substantial completion deadline, Trive appears to see a problem with a gap of ten months between serving its requests and receiving a production from the Trustee.  Trive of course ignores that the Trustee's burdens in collection were significantly higher than Trive's, which could just access its internal systems to collect and produce documents.  The Trustee, to the contrary, had to coordinate collection and review from six Noteholders (whom the Trustee's counsel does not represent), some of whom engaged their own counsel for the process, leading to structural delays that do not exist when collecting from a party.  In any event, if Trive wants to argue that ten months is too long to produce documents that had to first be collected from six non-parties, Trive's own delay of over a year is materially worse.

11. Later that month, the Trustee asked to include Mr. Conner Searcy as a custodian for the first time. ECF No. 210-8 at 3. As detailed in the Motion to Compel, Trive dragged its feet for nearly a year: first asserting that it had no obligation to perform any additional searches, *see generally* ECF No. 210-4; then claiming that he would have no relevant documents, ECF No. 210-10 at 2; and finally only agreeing to produce his documents if they were tied to a fifteenth custodian from the Trustee, *see* Cross-Mot., Ex. 49 at 9.

12. On March 20, 2026, Trive demanded three new custodians from the Trustee. *Id.* at 1. First, Trive stated that it would only produce Mr. Searcy's documents (for which the Trustee had been asking for months) in exchange for Mr. Goldthorpe's documents. Cross-Mot. Ex. 49 at 13. It also demanded that the Trustee include Mr. Terwilliger and Ms. Kim as custodians. *Id.* at 7. During a meet and confer on April 8, 2026, the Trustee agreed to provide hit reports for Mr. Goldthorpe and Mr. Terwilliger, but not Ms. Kim, hoping that Trive would be willing to negotiate to at most only one additional individual who worked on the deal team and in order to reduce the burden on the Trustee, since the Trustee needed to collect all of Ms. Kim's documents to run a hit report. *See id.* at 7. However, the Trustee would not agree to add any additional custodians since he had already agreed to fourteen custodians, while Trive was still only producing documents from two. *See id.* at 12.

13. On May 8, 2026, as a gesture of good faith, the Trustee provided hit reports for all three of the new custodians that Trive was demanding, including Ms. Kim. *Id.* at 5. Trive reiterated its demand, refusing to compromise with the Trustee in any way and repeating that Trive would not produce Mr. Searcy's documents without receiving Mr. Goldthorpe's documents in exchange. *Id.* at 1. On May 22, 2026, the Trustee informed Trive that he would produce materials collected from Mr. Goldthorpe's email in exchange for Mr. Searcy's custodial documents. *Id.* at

5

3. Even this was not enough, and Trive refused to produce Mr. Searcy's documents unless the Trustee also searched Mr. Goldthorpe's phone, necessitating the Trustee's Motion.

14. Ultimately, the Trustee informed Trive that he was not willing to produce documents from Ms. Kim and Mr. Terwilliger, who would be the Trustee's sixteenth and seventeenth custodians, and the fourth and fifth custodians from BC Partners. *Id.* at 4. However, if Trive agreed to even out the respective burdens by adding four additional custodians that the Trustee had identified as relevant based on his review of Trive's documents, then the Trustee would be amenable to a discussion about including Mr. Terwilliger and Ms. Kim as custodians. *Id.* at 3-4. Trive did not agree to this proposal. *Id.* at 4.

15. On June 4, 2026, the Trustee filed his motion to compel the production of documents from Mr. Searcy. ECF No. 208. On June 16, 2026, just two days before Trive's response to that motion was due, and one week shy of a year since the Trustee first asked to include Mr. Searcy as a custodian, Trive finally produced Mr. Searcy's documents.

### C. Collection Of Instant Messages

16. On April 2, 2026, Trive sent the Trustee a letter claiming that there were deficiencies in the Trustee's production to date, including missing instant messages from the custodians at Hamilton Lane and BC Partners. *See* Cross-Mot., Ex. 50. At the parties' meet and confer on April 8, 2026, the ***Trustee confirmed that it would produce those documents***. Cross-Mot., Ex. 49 at 7. Trive has not asked the Trustee about these messages since April 8, 2026.

17. Since then, the Trustee has been working to ensure that those documents are collected, however the Trustee and the Noteholders have faced numerous technical challenges because the internal software used by the Noteholders has delayed the Trustee's ability to collect those documents in a usable format. However, after months of troubleshooting, the Trustee has

6

finally found a solution for the collection, and is in the process of collecting Slack messages and Teams messages from Hamilton Lane and BC Partners and expects to produce them shortly.

<u>**ARGUMENT**</u>

**I.      THE COURT SHOULD NOT COMPEL THE TRUSTEE TO PRODUCE DOCUMENTS FROM MR. GOLDTHORPE'S PERSONAL CELLPHONE**

18.      Trive argues at length that Mr. Goldthorpe has information critical to this case and therefore should be added as a document custodian.  Cross Mot. ¶ 49. Although the Trustee disagrees with the outsized importance Trive ascribes to Mr. Goldthorpe, the Trustee has agreed to collect and produce documents from Mr. Goldthorpe's email, making him the ***third*** Trustee custodian from BC Partners alone and the ***fifteenth*** custodian that the Trustee has collected, reviewed, and produced documents from (compared to Trive's three).  Unsatisfied despite this glaring asymmetry in the discovery burden between the parties, Trive further demands that the Trustee take the further step of producing documents from Mr. Goldthorpe's personal cell phone. *Id.* ¶ 50. The Court should not indulge that demand for cumulative and burdensome discovery.

19.      "While the scope of discovery is broadly construed, it is not without its limits and may be circumscribed." *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)).  That is "especially" so "where the information sought is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.*  Indeed, "[e]ven if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit." *Schiavone v. Luzerne Cnty.*, 343 F.R.D. 34, 40-41 (M.D. Pa. 2023).

20.    In addition to these baseline considerations, discovery into personal devices raises a host of unique concerns. "[M]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, 573 U.S. 373, 403 (2014). Permitting discovery into cell phones accordingly "must be weighed against inherent privacy concerns." *Hardy v. UPS Ground Freight, Inc.*, 2019 WL 3290346, at *3-4 (D. Mass. July 22, 2019); *see Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, 2022 WL 2191519, at *6 (D.N.J. June 17, 2022) ("Courts have also recognized that privacy interests may be taken into account when evaluating proportionality, particularly in the context of a request to inspect personal electronic devices."). Indeed, "[g]iven the sensitive nature of … cell phones, … courts have been wary to grant a motion to compel forensic imaging in response to a request for information that has not been shown to be ***at the heart of a claim or defense in the ongoing litigation***." *Hardy*, 2019 WL 3290346, at *3 (emphasis added). And courts "must be cautious" when "the connection between the party's claims and the electronic device is vague and unproven." *Korotki*, 2022 WL 2191519, at *6.

21.    Under these principles, discovery of Mr. Goldthorpe's personal cell phone is not justified. In light of the massive amount of discovery Trive has already received from the Noteholders, Trive's demand for discovery into Mr. Goldthorpe's phone is plainly cumulative and disproportionate to the needs of the case. The Trustee has already collected and produced documents from ***fourteen*** custodians and, as Trive acknowledges, Cross-Mot. ¶ 50, has agreed to add Mr. Goldthorpe as a ***fifteenth.*** Trive asks the Court to ignore this fact in evaluating their demand, arguing that "the number of custodians is irrelevant to what sources should be searched." *Id.* ¶ 52. But that Trive has already received discovery from so many Noteholder custodians is precisely what establishes the cumulative and disproportionate nature of their demand. Rather

than seeking proportional discovery, Trive attempts to embark on a fishing expedition in hopes of rescuing their defense.

22.     Nor has Trive shown why discovery of Mr. Goldthorpe's phone is necessary to support their "affirmative defenses." *Id.* ¶ 49. The first affirmative defense cited by Trive, "consent, estoppel, ratification, [and] waiver," *id.*, is based entirely on the Noteholders' undisputed knowledge that their proceeds would be used to fund the Holdings Distributions. *See* ECF No. 146 at 90 ¶ 3. Discovery of Mr. Goldthorpe's phone can do nothing to buttress that defense. The other defense cited by Trive, "causation," Cross-Mot. ¶ 49, asserts that the acts and omissions of Trive were not the cause of the Noteholders' injury. *See* ECF No. 146 at 92 ¶ 14. If evidence exists to substantiate that theory, there is no reason to believe it can only be found on Mr. Goldthorpe's phone, as opposed to in the more than 200,000 documents produced by the Trustee to date, which have been supplemented with yet another production from Mr. Goldthorpe's emails. Indeed, evidence of causation is much more likely to be found in Defendants' production, given that Trive and the other Defendants were running the day-to-day operations of Lucky Bucks and Holdings.

23.     Setting aside the cumulative and disproportionate nature of their demand, Trive has not shown that Mr. Goldthorpe's phone is likely to contain relevant materials to begin with. Trive identifies nothing in the reams of documents produced from BC Partners and other Noteholder custodians to suggest that Mr. Goldthorpe conducted business relating to Lucky Bucks on his personal cell phone. To the contrary, the Trustee's collections from the cell phones of other BC Partners custodians confirm it is extremely unlikely that he did so: a search of forty terms across a more than three-year period yielded just *three* responsive text threads from one custodian (the other had *none*). Notably, none of those three texts were with Mr. Goldthorpe. Nor were they with any other BC Partners employee. And those few texts are wholly unremarkable, reflecting

9

nothing more than passing references to Lucky Bucks, not substantive discussions.[3]   There is accordingly no reason to conclude that discovery of Mr. Goldthorpe's phone is "reasonably likely to lead to evidence relevant to" the parties' claims and defenses.  *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898288, at *1 (D. Del. July 20, 2010); *see Fusion Diagnostic Laby's, LLC v. Atila Biosystems, Inc.*, 2025 WL 3124139, at *3 (D.N.J. Nov. 4, 2025) ("[S]peculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive examination of the opposing party's electronic devices.") (alterations omitted).

24.     Unable to point to anything in the record to suggest that Mr. Goldthorpe's cell phone contains relevant information, Trive baselessly suggests that the Trustee may have spoliated evidence on the phone by failing to impose a litigation hold.  Cross-Mot. ¶ 55.  But the Trustee has repeatedly confirmed that a litigation hold was instituted for all of the Noteholders, and Trive is not entitled to more.  *See Flynn v. Mfrs. & Trades Tr. Co.*, 2021 WL 8362649, at *8 (E.D. Pa. Sept. 15, 2021) ("Federal courts will not compel a party to disclose its discovery process as a result of the opponent's mere suspicion that the party's process has not produced adequate documents."). In any event, "there is no evidence of spoliation beyond [Trive's] own speculation," *Kokinda v. Pa. Dep't of Corr.*, 2018 WL 1035261, at *3 (W.D. Pa. Feb. 23, 2018), and even if there were (there is not), "[s]poliation does not provide an independent ground … for conducting discovery," *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 479 (3d Cir. 2011).   There is

---

[3]   *See* Gazzola Decl. Ex. K, BCPARTNERS_0222234 (six-text thread in which Ivelin Dimitrov states the parties were "target[ing] closing Monday"); Gazzola Decl. Ex. L, BCPARTNERS_0222236 (three-text thread in which Mr. Dimitrov confirmed to the same person that the deal "[c]losed yesterday"); Gazzola Decl. Ex. M, BCPARTNERS_0222232 (one-text thread in which Mr. Dimitrov asks third party investor "if you guys have looked at Lucky Bucks").

accordingly no basis for the cumulative and disproportionate discovery Trive seeks, which it has not even shown is likely to lead to the discovery of relevant evidence.

## II.   MR. TERWILLIGER AND MS. KIM SHOULD NOT BE ADDED AS CUSTODIANS

### A.   Trive Has Not Justified A Need For Designation Of Additional BC Partners Custodians

25.     Trive has not offered any compelling reason why it should be entitled to discovery from *five* custodians from just one of the *six* Noteholders from which the Trustee has collected and produced documents.  As noted, the Trustee has already produced documents from two BC Partners custodians, Jason Young and Ivelin Dimitrov, and has agreed to produce documents from a third, Ted Goldthorpe.  *See supra* Background, § B.  Critically, Trive fails to cite a single case for the proposition that any individual with some nexus to the underlying facts must, upon request, be designated as an ESI custodian.  That is because 'the law imposes no such requirement.  *See, e.g.*, *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (refusing to compel a party to search the records of additional custodians despite the fact that the proposed custodians had some connection to the events of the case); *Enslin v. Coca-Cola Company*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (denying order compelling a party to search the ESI of additional custodians, noting that "[i]t must also be remembered that the Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy'").[4]

---

[4]   While Trive listed Mr. Terwilliger and Ms. Kim on its initial disclosures, the relevant inquiry in determining the applicability of *Enslin* and *Fort Worth* is whether the *Trustee,* in its own initial disclosures, likewise identified these individuals as "likely to support its claims or defenses." *United States v. United Techs. Corp.*, 2020 WL 7339916, at *8-9 (D. Conn. Dec. 14, 2020) (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)).  The Trustee did not.

26.     Nor has Trive identified any gaps in the Trustee's production warranting designation of Mr. Terwilliger and Ms. Kim as custodians.  *See Enslin*, 2016 WL 7042206, at * 3 ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. ... [T]he burden appropriately lies with the requesting party to show that the responding party's search was inadequate."); *see also Scott C. v. Bethlehem Area Sch. Dist.*, 2002 WL 32349817, at *1 (E.D. Pa. July 23, 2002) (refusing to compel a further search for documents because the requesting party "ha[d] not pointed to any evidence" that the responding party had failed to conduct a reasonable search).  Trive's contention that the Trustee's production is insufficient is based entirely on speculation that Mr. Terwilliger and Ms. Kim may have additional documents on particular topics (namely, the B2G investigation and communications with potential investors, respectively).  Cross-Mot. ¶¶ 31-36.  Such speculation is insufficient to show that Mr. Terwilliger and Ms. Kim were improperly excluded as custodians.  *See Enslin*, 2016 WL 7042206, at * 3 (citing *Ford Motor Co. v. Edgewood Props.*, Inc., 257 F.R.D. 418, 428 (D.N.J. 2009) ("The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel. . . .")).

### B.      There Is No Reason To Believe Substantive Discussions Were Not Captured By Existing Custodians

27.     Where, as here, the party opposing the motion to compel "already included custodians from certain business units in their ESI search protocol, the plaintiffs must demonstrate that the additional requested custodians [from the same business units] would provide *unique* relevant information not already obtained."  *Fort Worth*, 297 F.R.D. at 107; *Handloser v. HCL America, Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (refusing to designate additional custodians where plaintiffs failed to show why they "expect to discover information from these

custodians that differs from discovery they have already obtained from the others"). In other words, the party moving to compel the designation of additional custodians must establish that discovery taken from such additional custodians will be non-duplicative.

28. Moreover, a proposed additional custodian is not required to have zero non-duplicative documents to be deemed duplicative. *See Arbutus Biopharma Corp. v. Moderna, Inc.*, 2024 WL 3966878, at *1 (D. Del. June 20, 2024) (denying motion to compel search of proposed custodian's documents even though "many of [the proposed custodian's] relevant documents may indeed overlap with discovery already produced through other custodians").

### 1.    Mr. Terwilliger Does Not Possess Substantive Non-Duplicative Documents And Communications

29.  While Mr. Terwilliger possesses documents and communications of substance relevant to this litigation, Trive's own exhibits confirm that these documents were shared with, or these communications occurred among, the members of the deal team. Trive places considerable weight on the fact that Mr. Terwilliger offered his opinions of and conclusions about the Notes investment with his teammates, Cross-Mot. ¶¶ 30-31, but these communications merely confirm that Mr. Terwilliger was a member of the BC Partners deal team, a fact the Trustee does not dispute. *See* ECF Nos. 213-9; 213-20; 213-24; 213-34. Moreover, whenever Mr. Terwilliger engaged in any communications of substance with individuals outside his team, at least one of the three BC Partners custodians was almost invariably included on the email chain. *See* ECF Nos. 213-16; 213-26; 213-28; 213-30; 213-31; 213-35 (emailing the "Credit Investment Team" listserv").[5]

---

[5]  Trive even concedes that the listserv "presumably includ[ed] Mr. Goldthorpe." *See* Cross-Mot. at 13.

30.     Similarly, when Mr. Terwilliger prepared materials for, or attended, a call with someone outside of his deal team, Cross-Mot. Exs. 25; 27; 29; 31-33; 35, it appears that at least one of the three BC Partners custodians also attended that call.  This is confirmed both by documents not cited by Trive—s*ee, e.g.*, Gazzola Decl., Ex. A, HOULIHAN (TRIVE)_000066 (November 2, 2021 calendar invite for Lucky Bucks meeting with management and Trive including Ivelin Dimitrov, Jason Young, and Ted Goldthorpe); *id.*, Ex. B, BCPARTNERS_0011222 (Ivelin Dimitrov and Ted Goldthorpe expressing intent to attend the November 2, 2021 Lucky Bucks meeting with management and Trive); *id.*, Ex. C, BCPARTNERS_0055872 (Mr. Terwilliger asking for and Jason Young providing feedback regarding summary of call with Monarch and Marathon); *id.*, Ex. D, BCPARTNERS_0008178 (Ivelin Dimitrov expressing intent to join call with Goldman Sachs expert)—and, in some instances, by the very exhibits Trive cites to show Mr. Terwilliger's attendance at particular calls—s*ee* Cross-Mot., Ex. 27 (Invitation for September 10, 2021 call with Accel Entertainment also including Ivelin Dimitrov and Jason Young); *id.*, Ex. 31 (Invitation for September 10, 2021 call with Sara Desberg sent by Jason Young and including Ivelin Dimitrov and Jason Young); *id.*, Ex. 32 (Wafra October 1, 2021 call hosted by Jason Young); *id.*, Ex. 33 (Invitation for September 29, 2021 Fortress call sent by Jason Young and including Ivelin Dimitrov).

31.     The only purported "unique" communications that Trive asserts Mr. Terwilliger possesses are those concerning B2G's investigation, but this assertion is unsupported.  Specifically, Trive asserts that Mr. Terwilliger is "one of the BC Partners people who was most involved in B2G's investigation."  Cross-Mot. ¶ 31.  But the two exhibits Trive cites for that proposition reveal far less than Trive suggests.  One of these documents, Cross-Mot., Ex. 36, is an email wherein Mr. Terwilliger is the only BC Partners employee on the chain.  The mere fact that

14

Mr. Terwilliger had *some* communications without the deal team is unremarkable, and the fact that Trive can only point to one such document undermines any indication of a trend. Moreover, the exhibit itself is merely an email from B2G transmitting a referral letter and draft report to Mr. Terwilliger and several other Noteholders. Likewise, Cross-Mot., Ex. 23 is an email in which Mr. Terwilliger forwarded the other Noteholders an invoice and a table of the pro rata fee breakdown for B2G's services. At most, these documents reflect an administrative role in connection with the B2G investigation, and participation of this kind is not likely to generate unique substantive materials related to the B2G investigation.

32.     Further, Trive, per its own motion, submits that Mr. Terwilliger is not the only individual who was involved with B2G's investigation—it was Mr. Goldthorpe who "directed BC Partners to retain a private-investigatory firm called B2G Global Strategies." Cross-Mot. ¶ 29. *See Allergan, Inc. v. Revance Therapeutics, Inc.*, 2025 WL 2188842, at *6 (M.D. Tenn. Mar. 25, 2025) (denying motion to compel additional custodian possessing ESI related to forensic analysis where three existing custodians were identified as being involved in that forensic analysis). Per Trive's own argument, the addition of Mr. Goldthorpe as a custodian should capture the documents they claim are in Mr. Terwilliger's possession.

### 2.    Ms. Kim Does Not Possess Substantive Non-Duplicative Documents And Communications

33.     Ms. Kim was an associate at the time of the Lucky Bucks transaction, had only narrow responsibilities on her BC Partners deal team, and at all times was supervised by the more senior deal-team members. Trive suggests the Trustee was dishonest about Ms. Kim's role, noting that in a letter dated May 12, 2025, "the Trustee claimed that Ms. Kim 'was not a core member of the diligence team and was purely involved with legal documentation.'" Cross-Mot. ¶ 25 (quoting ECF No. 117-6 at 3). The quoted letter states that "BC Partners indicated that Clare Kim was not

a core member of the diligence team and was purely involved with legal documentation." ECF No. 117-6 at 3. That assessment was correct: Extensive document collection and review has confirmed that Ms. Kim was not a core member of the team and her involvement was primarily related to legal documentation. In any event, given her role, Ms. Kim almost certainly would not possess unique substantive documents not already collected.

34. Like Mr. Terwilliger, Ms. Kim's communications about the deal terms and Notes transactions were typically internal, and those discussions included at least one of the three BC Partners custodians. *See* Cross-Mot., Exs. 38-40. Trive's own exhibits confirm that when Ms. Kim emailed individuals outside her deal team, such as expert networking companies or potential investors, she ordinarily copied at least one BC Partners custodian on the chain. *See* Cross-Mot., Exs. 41; 43; 44. Similarly, when she prepared materials for, or attended, a call with outside contacts, Cross-Mot. Exs. 37-38, 42, other BC Partners custodians were participants on the call. *See* Gazzola Decl., Ex. A, HOULIHAN (TRIVE)_000066 (November 2, 2021 Lucky Bucks meeting with management and Trive calendar invite including Ivelin Dimitrov, Jason Young, and Ted Goldthorpe); *see also id.,* Ex. B, BCPARTNERS_0011222 (Ivelin Dimitrov and Ted Goldthorpe expressing intent to attend the November 2, 2021 Lucky Bucks meeting with management and Trive); *id.*, Ex. E, BCPARTNERS_0007196 (Invitation to October 12, 2021 Fortress call sent by Jason Young and including Ivelin Dimitrov); *id.*, Ex. D, BCPARTNERS_0008178 (Ivelin Dimitrov expressing intent to join call with Goldman Sachs expert).

35. Further, the purported "notes" Ms. Kim allegedly drafted at the meeting on November 2, 2021, in New York City, Cross-Mot. ¶¶ 32, 58, are merely a cleaned-up version of the diligence questions Mr. Terwilliger prepared and circulated to their team in advance of the

meeting.  *Compare* Cross-Mot., Ex. 37 *with* Cross-Mot., Ex. 25, Gazzola Decl., Ex. F, BCPARTNERS_0011408 ("Please see attached for (very) rough draft of questions. Would appreciate thoughts, comments and edits.") & *id.*, Ex. G, BCPARTNERS_0011409 (attachment to Cross Mot., Ex. 25).  Ms. Kim's only contribution to those diligence questions was condensing the document from three pages to two (by deleting a blank page) and removing a stray bullet point. Trive's shifting characterizations of these virtually identical documents, together with their deliberate decision to cite Cross-Mot., Ex. 37 and Mr. Terwilliger's cover email attaching the diligence questions (Cross-Mot., Ex. 25) while conveniently omitting the attachment itself, expose their effort to artificially inflate Ms. Kim's import.

36.     Trive also contends that documents from other Noteholders and non-parties "revealed" that "Ms. Kim had relevant communications  . . . about the Notes offering in which no other BC Partner custodian was included, suggesting that she had unique communications that are not captured by BC Partners' productions to date."  Cross-Mot. ¶ 32.  But while Ms. Kim had a handful of emails without a BC Partners custodian copied, most were administrative, not substantive.  For example, Cross-Mot., Ex. 45 is a chain in which a then-Marathon employee asks Ms. Kim to forward a report that, per an earlier email in the same chain, Marathon had already discussed with her BC Partners teammates. Cross-Mot., Ex. 46 shows Ms. Kim simply forwarding documents and information provided by Houlihan to Marathon employees.  And Cross-Mot., Ex. 47 shows her requesting the email addresses of Manu Sekhri and James Clare, presumably in preparation for Mr. Sekhri and Mr. Clare's visit to BC Partners' offices for the meeting the following day.  *See* Cross-Mot., Ex. 47 (confirming November 2, 2021, meeting with management and Trive at BC Partners' New York offices); *see* Gazzola Decl., Ex. H, LBDR_00078387 (Stephanie Lippa forwarding eTickets for travel from Ontario to New York for Manu Sekhri and

James Clare). None of these exhibits suggest that Ms. Kim possesses unique substantive communications with other Noteholders or non-parties that are relevant to this litigation. Moreover, given that other Noteholders were copied on the majority of these communications, Trive has provided no basis to support its assertion that Ms. Kim's documents are not duplicative of those the Trustee has collected and produced from the fourteen (and soon fifteen) other Noteholder custodians. Further, the few arguably non-administrative emails and calls Ms. Kim engaged in absent her teammates, *see* Cross-Mot., Exs. 39; 48, were promptly relayed to multiple BC Partners custodians, further undercutting any alleged need to add Ms. Kim as a custodian. *See* Cross-Mot., Ex. 39 (describing call with Houlihan Lokey to Ivelin Dimitrov and Jason Young); Gazzola Decl., Ex. I, BCPARTNERS_0009762 (forwarding communication with "friend at NB" to Ivelin Dimitrov and Jason Young).

37. If, however, the Court compels the Trustee to produce the documents from Ms. Kim and Mr. Terwilliger, the Court should also compel Trive to produce the documents from four other Trive custodians to even out the burden between the parties. Trive should be compelled to produce materials from four additional individuals, all of whom were involved in Trive's investment— offering opinions and conclusions on Lucky Bucks and preparing relevant materials—to a greater extent than Ms. Kim and Mr. Terwilliger.

- *Austin Curley*: Mr. Curley was either a former Associate or Vice President at Trive reporting to Mr. Thadani prior to, during, and following Trive's 2020 acquisition. Documents reflect that Mr. Curley played a material role in Trive's 2020 acquisition of Lucky Bucks, including, but not limited to, preparing Lucky Bucks presentations for Trive's IC and serving as a primary point of contact with Lucky Bucks's management team. *See, e.g.*, Gazzola Decl., Ex. N,

18

Trive_00001758 (noting that "Shravan, Austin and Connor … lead [Trive's] partnership with Lucky Bucks/Seven Aces."). Mr. Curley was also involved in preparing materials for discussions concerning Lucky Bucks's credit facility upsizes and dividend recapitalizations. *See, e.g.*, *id.*, Ex. O, Trive_00000087. Mr. Curley's contributions are thus similar to the contributions Trive claims make Mr. Terwilliger relevant, non-duplicative custodians.

- *Joseph Trahan*:  Mr. Trahan was a former Senior Associate at Trive Capital reporting to Mr. Thadani.  Documents reflect that he played a role in Trive's 2020 acquisition of Lucky Bucks, including, but not limited to, preparing diligence questions and materials for Trive's IC and serving as a primary point of contact with Lucky Bucks's management team. *See, e.g.*, *id.*, Ex. P, Trive_00000930.  The diligence questions Mr. Trahan prepared are not unlike the call notes Trive relies upon to assert Ms. Kim is a relevant custodian.

- *Jonathan Nunnaley*:  Mr. Nunnaley is the former CFO, CCO, and Head of Strategic Projects at Trive.  In those capacities, Mr. Nunnaley had unique access to documents detailing the wiring of distributions from Lucky Bucks to Trive and vice versa. *See, e.g.*, *id.*, Ex. Q, Trive_00219706.  The administrative responsibilities Mr. Nunnaley had closely resembled the note taking and syndication responsibilities Trive relies upon to assert Ms. Kim is a relevant custodian.

- *Kim Whitener*:  Ms. Whitener is the current CFO of Trive, and the successor to Mr. Nunnaley in that role.  In her capacity as CFO, Ms. Whitener has access to documents detailing the wiring of distributions from Lucky Bucks to Trive and vice versa, and she was also involved in implementing the January 2021 distributions.

*See, e.g.*, *id.*, Ex. R, LBDR_00246400; *id.*, Ex. S, Trive_00207040.    The administrative responsibilities Ms. Whitener has closely resembled the note taking and syndication responsibilities Trive relies upon to assert Ms. Kim is a relevant custodian.

**III.   THE TRUSTEE AGREED TO PRODUCE RESPONSIVE SLACK AND TEAMS MESSAGES IN APRIL, MONTHS BEFORE TRIVE'S MOTION TO COMPEL**

38.   Trive's request for the Court to "order BC Partners and Hamilton Lane to produce all chat messages," Cross-Mot. ¶ 61, is misguided because the Trustee's production of those messages is substantially complete by any understanding of the term.  As a threshold issue, the Trustee notes what is implicit in Trive's argument: the Trustee has produced emails *and* chat messages for Monarch, Marathon, and CION, and has produced emails for BC Partners and Hamilton Lane, all by the substantial completion deadline.  As such, Trive's limited request here is for production of chat messages for two of the six Noteholders at issue.  As discussed below, the Trustee has engaged in lengthy back and forth with the assignor Noteholders in attempt to collect and produce responsive materials by the substantial completion deadline.  Indeed, the Trustee has already produced over 270,000 documents by the substantial completion deadline. This is more than sufficient under the ordinary meaning of substantial completion as used in the Scheduling Order.  ECF No. 145 ¶ 3(c).

39.   Trive's request is premature under the terms of the Scheduling Order.  The Scheduling Order provides that the "Parties are expected to conduct discovery consistent with Local Rule 7026-1."  *Id.* ¶ 3(a).  Local Rule 7026-1(d) requires certification that "a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion."  Trive's certification of counsel states that "[c]ounsel to the Trive Defendants have made a reasonable effort to reach agreement with the Trustee with respect to the disputes set forth in the

Motion," and represents "these attempts were unsuccessful." Cross-Mot. at 32. This certification, at least with respect to Slack and Teams messages, is untrue. The Trustee already agreed to produce responsive messages, as the Trustee confirmed at the meet-and-confer with Trive on April 8, 2026. *See* Cross-Mot., Ex. 49 at 7 (Trive memorialization of April 8, 2026, meet-and-confer acknowledging that the "Trustee represented that the Noteholders' Teams and Slack messages should have been collected in the ordinary course, and that he has reached out to the Noteholders on this point."). Trive made absolutely no effort to confer with the Trustee regarding the production of these chat messages following the substantial completion deadline, contrary to Trive's certification of counsel.

40.     Had Trive simply requested a status update from the Trustee regarding this matter before moving for relief from the Court, the Trustee would have informed Trive that he is nearing completion of his collection and review of these chat messages.[6] The Trustee has encountered several technical difficulties in collecting chat messages—which were not in the Trustee's possession, custody, or control—from BC Partners and Hamilton Lane. The Trustee coordinated with BC Partners to ensure collection of its Microsoft Teams data and has engaged a forensic consultant to assist in correcting the data formatting issues causing the delay. Regarding Hamilton Lane, the Trustee encountered similar issues regarding the collection mechanism employed by Hamilton Lane's forensic consultant and is proceeding to promptly troubleshoot these issues to ensure timely production of its responsive and non-privileged Slack messages.

---

[6]     Trive baselessly speculates that the Trustee's productions to date "call[] into question whether BC Partners and Hamilton Lane preserved relevant messages." Cross-Mot. ¶ 62. The Trustee is collecting these materials, as it has repeatedly confirmed to Trive. *See, e.g.,* Cross-Mot., Ex. 49 at 7.

41. As such, the Trustee continues to meet his obligation under Local Rule 7026-1 to "use reasonable, good faith and proportional efforts including to preserve, identify and produce relevant information" by working diligently to overcome technological barriers to production of responsive and non-privileged chat messages from BC Partners and Hamilton Lane. Trive's request is accordingly baseless and should be denied.

## IV. THE COURT SHOULD ORDER TRIVE TO PAY THE TRUSTEE'S LEGAL FEES IN CONNECTION WITH HIS DEMAND FOR MR. SEARCY'S DOCUMENTS

42. Recognizing that its refusal to produce Mr. Searcy's documents was entirely indefensible, Trive made a production of Mr. Searcy's documents on *June 16, 2026.* However, a production of 647 documents does not moot the relief the Trustee seeks. At minimum, Rule 37 still requires Trive to pay the Trustee's legal fees associated with moving to compel Searcy's documents.[7]

### A. After Months of Stonewalling Negotiations and After The Trustee Moved To Compel, Trive Made A Limited Production Of Searcy's Documents.

43. The dispute over Searcy's documents lasted almost a year. Yet Trive did not make a production of Searcy's documents until after the Trustee sought relief from this Court. Trive's improper stonewalling cannot be rewarded.

44. On June 23, 2025, the Trustee requested Trive "add Conner Searcy as a custodian." *See, e.g.*, ECF No. 210-8, at 3. Trive never objected to the request on relevance grounds. Nor could it as the Rule 2004 discovery revealed Searcy was in direct communication with the Georgia Lottery Corporation about the Lucky Bucks' COAM machines. *Id.* Instead, Trive offered a litany of objections, none of which held any water. Initially, with no basis for

---

[7] Should the Court award attorneys' fees, the Trustee will submit supplemental briefing and supporting evidence establishing a reasonable fee amount, accounting for the full briefing and argument on these issues.

doing so, Trive argued at a meet and confer on July 22, 2025, that Searcy's documents were not "reasonably likely to contain any non-duplicative documents . . . relevant to the Trustee's claims in this adversary proceeding." ECF No. 210-10, at 2.  However, running the agreed upon search terms across Searcy's emails revealed a different story.  Searcy had 10,463 documents in his custody after de-duplication against prior collections.  ECF No. 210-11, at 1; Mot., ECF No. 210-13, at 7.

45.    Trive's objection thus changed—reviewing Searcy's documents would be "unduly burdensome and not proportional to the needs of the case."  ECF No. 210-11, at 1; ECF No. 210-13, at 1.  When the Trustee asked how many of those 10,463 documents were unique hits, it took Trive almost another month to answer.  The truth revealed that only 6,435 of those documents were unique hits, including full families.  ECF No. 210-13, at 7.  But Trive did not disclose what the total hit count across all custodians would be if Searcy was added as a custodian.  Nonetheless, Trive still refused to collect and produce those documents and argued for the application of a "'significantly narrowed' set of search terms in light of the Trustee's narrow theory of the relevance of Mr. Searcy's documents."  ECF No. 210-14, at 1.  The parties met and conferred on the issue again on January 15, 2026.  In an effort to compromise, the Trustee amended their search terms, which produced only 42,704 de-duped, unique hits, including families, *across all three* of the Trustee's requested custodians (Shravan Thadani, Connor Anderson, and Conner Searcy), representing an overall increased burden of just 9,005 documents.  Gazzola Decl., Ex. J.

46.    Likely recognizing that it could not maintain a burden objection to reviewing only 82,000 additional documents in total (including the 40,000 reviewed during Rule 2004 discovery), especially in light of the fact that the Trustee collected documents from fourteen custodians, reviewed over 200,000 Noteholder documents, and produced over 270,000 documents, Trive again

23

changed its basis for objecting to Searcy as a custodian. Trive's new ground for refusal was that it would only include Searcy as a custodian if the Trustee included Mr. Goldthorpe. Cross-Mot., Ex. 49 at 9. On May 22, 2026, the Trustee and BC Partners agreed to add Mr. Goldthorpe as a custodian but declined to collect from his personal cell phone. Trive *still* refused to include Searcy as a custodian. *Id.* at 1. Having no choice, the Trustee filed the Motion to Compel on June 4, 2026. Shortly thereafter, Trive was able to collect, review, and produce Searcy's documents, indicating that the collection and review was marginally burdensome at most, and proving that Trive's prior objections were frivolous, unsupported, and made in bad faith.

B. **Federal Rule of Civil Procedure 37 Requires Trive To Pay The Trustee's Attorneys' Fees In Connection With The Motion To Compel Searcy's Documents**

47.     The law is clear: "[I]f the . . . requested discovery is provided after the motion was filed," the party or attorney representing the party "***must***" pay "the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added); *see* Fed. R. Bankr. P. 7037 (applying Rule 37 to adversary proceeding). This applies even if the production is made voluntarily and is not court ordered. *See* Fed. R. Civ. P. 37(a)(5)(A).

48.     The only exception to awarding attorneys' fees is if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Trive "bears the burden of showing that its response or objection to the discovery was substantially justified or that other circumstances make an award [of attorneys' fees] unjust." *In re Atomica Design Grp., Inc.*, 591 B.R. 217, 233 (Bankr. E.D. Pa. 2018). It cannot do so.

49.     *First,* it is undisputable that the Trustee attempted in good faith to obtain Searcy as a custodian prior to seeking judicial relief. As detailed *supra* Background § B, the Trustee

24

requested Mr. Searcy's documents over one year ago and renewed its request at multiple meet and confers. The Trustee was willing to amend its requested search terms and even increase the burden of its own review if Trive was willing to add Searcy. If anything, the Trustee was perhaps too patient and too accommodating to Trive's bad-faith conduct in hopes that Trive and its counsel would eventually act reasonably. This is more than sufficient to show that the Trustee only filed the motion to compel after attempting in good faith to obtain Searcy's documents. *See United Rentals v. Liberty Mut. Fire Ins. Co.*, 2021 WL 12363093, at *5 (D.N.J. Apr. 26, 2021) (awarding attorney's fees when "[t]he record reflects that [movant] made multiple attempts to resolve these issues without Court intervention" and "it appears that [non-movant's] prolonged failure to meaningfully engage in the discovery process necessitated [movant's] motion"); *Combined Ins. Co. of Am. v. Bastian*, 2010 WL 11556590, at *3 (M.D. Pa. Mar. 16, 2010) (attorney's fees warranted because "Plaintiff attempted to resolve the problem between the parties, and notified the Court only after Defendant persisted in his failure to provide the appropriate discovery").

50.     *Second*, Trive's objections to adding Searcy as a custodian were not substantially justified. Rather, Trive's seriatim objections and shifting reasoning were plainly pretextual and lacked any justification at all. Indeed, where, as here, "withheld documents are clearly relevant and discoverable, parties are not substantially justified in failing to disclose them.'" *In re Atomica Design Grp., Inc.,* 591 B.R. at 233-34 (documents containing sales information were "clearly responsive to the Trustee's Sales Requests" and non-movant "was not substantially justified in withholding" them); *Liafail, Inc. v. Learning 2000, Inc.*, 2003 WL 722199, at *7 (D. Del. Mar. 3, 2003) (awarding attorney's fees when non-movant's "responses were not always 'entirely reasonable'"). The Trustee requested documents concerning Lucky Bucks' communications with the GLC and the "Rule 2004 discovery revealed that Mr. Searcy received direct updates from

25

the GLC." ECF No. 210-8, at 3.  There is no basis for saying Searcy's documents are not relevant.

That is why Trive *never* objected to including Searcy purely on relevance grounds.  The speed

with which Trive reviewed and produced documents after the Trustee finally filed a motion to

compel also demonstrates that Trive's burden objections were, at best, not substantially justified,

if not made in bad faith.

51.      *Third*, there are no circumstances that make an award of attorney's fees unjust.[8]

Even though Trive produced Searcy's documents after the Trustee moved to compel, Trive's

"conduct has not been harmless. It essentially forced [the Trustee] to dedicate time and expenses

associated with filing this motion," which warrants awarding attorney's fees.[9]  *Gov't Emps. Ins.*

*Co. v. E. Coast Spine, Joint & Sports Med. Pro. Ass'n,* 2022 WL 4237082, at \*4 (D.N.J. Sept. 14,

2022); *Bey v. Holt*, 2026 WL 892497, at \*6 (M.D. Pa. Mar. 31, 2026) (awarding expenses is not

unjust when movant "followed the applicable procedures for asking Defendants to produce the

requested documents to him").

## V.    THE COURT SHOULD COMPEL TRIVE TO DISCLOSE THE IDENTITIES OF THE SUBSEQUENT TRANSFEREES OF THE HOLDINGS DISTRIBUTIONS

52.      Trive argues that discovery into the identities of the subsequent transferees of the

Holdings Distributions is "not relevant to any pending claim against any defendant."  Cross-Mot.

---

[8]      The fact that counsel for the Trustee is being paid on a contingency basis does not bar awarding attorney's fees in this instance. *See Biondo v. Kaleida Health*, 2016 WL 2752032, at \*2 (W.D.N.Y. May 12, 2016) (awarding attorney's fees pursuant to Fed.R.Civ.P. 37(a)(5)(A) because there is not "any merit in Defendant's further contention that attorneys' fees as a sanction in a discovery dispute should not be awarded where a plaintiff is represented on a contingency fee basis"); *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) ("The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate.")).

[9]      The only case that Trive relies on to argue for denial of the Trustee's motion as it concerns Searcy is silent on the issue of awarding attorney's fees as the movant was pro se. *See Israel v. Pierce*, 235 F. Supp. 3d 598, 602 (D. Del. 2017).

¶ 66.[10]  Not so.  Trive's intent when the Holdings Distributions were made is an element of nearly all of the Trustee's claims against Trive.[11]  And "[s]ince fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including subsequent conduct." *United States v. Green*, 201 F.3d 251, 256 (3d Cir. 2000) (citation omitted).  What Trive did with the proceeds after it received them—*i.e.*, where it sent the money, when, and to whom—is powerful evidence of why Trive engineered the transfers in the first place.  *See id.* at 256-57 (relying on a debtor's post-transfer conduct as evidence confirming his intent to defraud creditors).

53.    The identity of the subsequent transferees is especially relevant to the Trustee's avoidance claims.  For those claims, the transferor's intent is what matters.  Because Trive controlled Holdings through its two board appointees and extensive consent rights, ECF No. 57 ¶¶ 123-28, Trive's post-distribution conduct bears directly on whether the Holdings Distributions were made with intent to hinder, delay, or defraud creditors.  For example, subsequent transfers made to co-conspirators or offshore accounts are circumstantial evidence of Trive's fraudulent intent.  As would subsequent transfers made outside of the relevant Trive investment funds' distribution schedule.  That is, if the investment funds that invested in Lucky Bucks do not have the practice of distributing proceeds until the fund begins formally winding down, but Trive rushed

---

[10]  Trive also mischaracterizes the Trustee's judicial-efficiency argument.  *See* Cross-Mot. ¶ 66. The Trustee did not "admit" that his requests "are part of an effort to investigate potential *new* claims against *new* defendants."  *Id.* (quoting Mot. ¶ 56).  Rather, the Trustee argues that allowing this discovery now "*also* serves judicial efficiency," because the Trustee may bring any subsequent-transferee claims in this action by amendment rather than through a separate suit. Mot. ¶ 56.

[11]  Intent is an element of the first and third causes of action (avoidance and recovery of intentional fraudulent transfers, 11 U.S.C. §§ 544, 548, and 550, 6 Del. C. § 1304(a)(1), and O.C.G.A. § 18-2-74 et seq.); the fifth cause of action (improper dividends, 6 Del. C. § 18-607); the sixth cause of action (securities fraud, O.C.G.A. § 10-5-1 et seq., Tex. Gov't Code Ann. § 4001.001 et seq., and 6 Del. C. § 73-101 et seq.); the seventh and eighth causes of action (Georgia RICO, O.C.G.A. § 16-14-4 et seq.); and the ninth cause of action (common-law fraud).

to distribute funds attributed to Lucky Bucks to its investors either following the Holdings Distributions themselves or once Trive received a Rule 2004 subpoena, this would be powerful evidence of Trive's consciousness of guilt. That same evidence is equally relevant to the Trustee's remaining claims because intent is an element of the common law fraud, securities fraud, and Georgia RICO causes of action.

54.    This is why the "redacted bank statements that the Trive Defendants produced long ago" are insufficient. Cross-Mot. ¶ 66 n.16. Although those statements supply the dates of the transfers, they do not shine light on where the proceeds ultimately rest, which is powerful circumstantial evidence of Trive's fraudulent intent. This is also why Trive's "capacity to satisfy any judgment" is beside the point. *Id.* ¶ 68. However deep Trive's pockets, Trive's ability to satisfy a judgment says nothing about why they orchestrated the Holdings Distributions. Section 550(d)'s single-satisfaction rule, *see* Cross-Mot. ¶ 67, limits what the Trustee may recover, not what he may discover. Other Defendants seemingly agree that this information is relevant and have already produced responsive materials identifying the subsequent transferees.

55.    Trive next argues that it deems the transferees' identities "highly sensitive, proprietary information" and "treat such information as trade secrets." Cross-Mot. ¶ 71. Yet even if the identities were trade secrets—which they are not—"[i]t is well established that trade secrets are not absolutely privileged from discovery in litigation." *Lucas v. Am. Clean Energy Sys., Inc.*, 2017 WL 11680439, at *2 (W.D. Pa. Aug. 17, 2017) (quoting *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985)). Discovery "orders forbidding any disclosure of trade secrets or confidential commercial information are rare;" "protective order[s] restricting disclosure to counsel" are "[m]ore common[]." *Lucas*, 2017 WL 11680439, at *2 (quoting *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 n.24 (1979)). That protection is already in

28

place here:   The parties negotiated, and this Court entered, a Stipulated Confidentiality and Protective Order.   ECF No. 82.   Trive makes no attempt to explain why that agreement is inadequate to protect its commercial and confidentiality interests.

56.       Trive's efforts to distinguish the Trustee's authorities also miss the mark.  *See* Cross-Mot. ¶¶ 69-70.  The Trustee cited *Dymarkowski* and *Byju's Alpha* for the narrow proposition that a trustee may take discovery into subsequent transfers before avoiding the initial transfer.  *See* Mot. ¶ 55.  Trive does not dispute that proposition.  Instead, Trive distinguishes each case based on arguments that the Trustee never made.  The cases were cited to show that this discovery is not premature, and they plainly support that proposition.

57.       In the alternative, if this Court agrees with Trive's assertion that this information is not relevant to any claim or defense in this adversary proceeding, Trive must produce it in response to the Trustee's June 25, 2025, supplemental Rule 2004 subpoena.  Trive cannot have its cake and eat it too:  Either the identities of subsequent transferees are relevant to this proceeding and discoverable, or they are "wholly unrelated to the pending proceeding," *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009), and available under Rule 2004.  Trive cannot insist this information is "not relevant to any  . . . claim against any defendant," Cross-Mot. ¶ 66, while also resisting the Trustee's Rule 2004 subpoena.  Judge Dorsey rejected this exact gamesmanship in *Byju's Alpha*.  He refused to buy the argument "that there is some kind of catch-22" foreclosing subsequent transfer discovery both in the adversary proceeding and under Rule 2004.  *See* Hr'g Tr. at 6:1-9, *Byju's Alpha, Inc. v. Camshaft Cap. Fund, LP (In re Byju's Alpha, Inc.)*, No. 1:24-50013 (JTD) (Bankr. D. Del. Mar. 1, 2024), ECF No. 100, Ex. D.  Yet that is what Trive is trying to do here.

58.    Trive's own Rule 2004 authorities are unhelpful.  First, in *Millennium Lab*, the court granted the trustee's Rule 2004 motion because "examin[ing] third parties for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred" fit "squarely within the purpose of Rule 2004."  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627-28 (Bankr. D. Del. 2016).  The Trustee's Rule 2004 subpoena likewise sought to discover assets, examine transactions, and determine whether wrongdoing has occurred.  Second, *Cyber Litigation* is nothing like this case.  There the court stayed a Rule 2004 examination because the examinee faced a criminal investigation and had invoked the Fifth Amendment.  *In re Cyber Litig. Inc.*, 2021 WL 2655312, at *7 (Bankr. D. Del. June 28, 2021).  The Court held that the "Rule 2004 discovery the debtor seeks to take is, in the scheme of things, relatively less important than protecting [the examinee's] Fifth Amendment rights."  *Id.*  No comparable interest exists here.

59.    Finally, Trive's bare assertion that the Trustee seeks the identity of subsequent transferees to harass Trive carries no weight.  *See* Cross-Mot. ¶ 75.  As discussed in this brief and the Trustee's opening brief, the transferees' identities go to the heart of the Trustee's claims.

## CONCLUSION

60.    For the foregoing reasons, the Court should grant the Trustee's Motion and deny the Trive's motion.

[*Signature of counsel appears on next page*.]

Dated: July 9, 2026
Wilmington, Delaware

WHITEFORD TAYLOR & PRESTON LLP

By: /s/ *Bradley P. Lehman*
William F. Taylor, Jr. (DE No. 2936)
Bradley P. Lehman (DE No. 5921)
600 North King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 353-4144
Facsimile: (302) 357-3286

-and-

QUINN EMANUEL URQUHART
& SULLIVAN LLP
Susheel Kirpalani
Andrew J. Rossman
Matthew R. Scheck
Mario O. Gazzola
Kenneth B. Hershey
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel to the Chapter 7 Trustee*

31