**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARC ABRAMS,<br>In his capacity as Chapter 7 Trustee of Lucky Bucks Holdings LLC and as assignee,<br><br>   *Plaintiff*,<br><br>  v.<br><br>TRIVE CAPITAL MANAGEMENT LLC,<br>*et al.*,<br><br>   *Defendants*. | Adversary Proceeding<br><br>No. 24-50130 (KBO) |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF THE TRIVE DEFENDANTS' CROSS-MOTION TO COMPEL**

<table>
<tr>
<td>

PACHULSKI STANG ZIEHL
  & JONES LLP

Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400

</td>
<td>

WILMER CUTLER PICKERING
  HALE AND DORR LLP

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363

</td>
</tr>
</table>

Dated: July 23, 2026

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................. 3

I.      THE COURT SHOULD ORDER THE TRUSTEE TO INCLUDE TED GOLDTHORPE, MIKE TERWILLIGER, AND CLARE KIM AS NOTEHOLDER DOCUMENT CUSTODIANS ......................3

      A.      Ted Goldthorpe's Phone Should Be Reviewed .........................................................3

      B.      Mike Terwilliger And Clare Kim Should Be Custodians ........................................5

      C.      The Trustee's Unripe, Belated, And Transparently Tit-For-Tat Request For Four Additional (And Irrelevant) Custodians Should Be Denied .....................9

II.     THE COURT SHOULD ORDER THE TRUSTEE TO PRODUCE ALL NOTEHOLDER CHAT AND TEXT MESSAGES ....................................................................................................10

III.    THE COURT SHOULD DENY THE TRUSTEE'S BELATED FEE REQUEST RELATED TO CONNER SEARCY'S CUSTODIAL DOCUMENTS ...............................................................11

CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arku-Nyadia v. Legal Sea Foods, LLC*,
   2022 WL 958465 (D.N.J. Mar. 29, 2022).................................................................................9

*Bey v. Holt*,
   2026 WL 892497 (M.D. Pa. Mar. 31, 2026).........................................................................15

*Cohen v. Cohen*,
   2022 WL 952842 (D. Del. Mar. 30, 2022) ...........................................................................11

*Combined Insurance Company of America v. Bastian*,
   2010 WL 11556590 (M.D. Pa. Mar. 16, 2010)......................................................................15

*Enslin v. Coca-Cola Company*,
   2016 WL 7013508 (E.D. Pa. May 13, 2016) .........................................................................13

*First Niagara Risk Management, Inc. v. Folino*,
   317 F.R.D. 23 (E.D. Pa. 2016)..............................................................................................11

*Garcia Ramirez v. United States Immigration & Customs Enforcement*,
   331 F.R.D. 194 (D.D.C. 2019)................................................................................................5

*Government Employees Insurance Company v. East Coast Spine, Joint & Sports
   Medicine Professional Association*,
   2022 WL 4237082 (D.N.J. Sept. 14, 2022) ..........................................................................15

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004)....................................................................................................9

*In re Atomica Design Group, Inc.*,
   591 B.R. 217 (Bankr. E.D. Pa. 2018) ...................................................................................12

*Klein v. Torrey Point Group, LLC*,
   979 F. Supp. 2d 417 (S.D.N.Y. 2013)...................................................................................11

*Liafail, Inc. v. Learning 2000, Inc.*,
   2003 WL 722199 (D. Del. Mar. 3, 2003) .............................................................................12

*Mutual Industries, Inc. v. American International Industries*,
   2013 WL 3716516 (E.D. Pa. July 15, 2013)..........................................................................15

*Orozco v. Borenstein*,
   2012 WL 3762408 (D. Ariz. Aug. 29, 2012)..........................................................................4

*Perez v. Lyons*,
    823 F. Supp. 3d 1102 (E.D. Cal. 2026).............................................................................9

*Stevenson v. City of Newark*,
    2023 WL 5003911 (D.N.J. Aug. 3, 2023) ........................................................................15

*United Rentals v. Liberty Mutual Fire Insurance Company*,
    2021 WL 12363093 (D.N.J. Apr. 26, 2021) .....................................................................15

*XPRT Ventures, LLC v. eBay, Inc.*,
    2011 WL 13142141 (D. Del. June 15, 2011).....................................................................6

## STATUTES, RULES, AND REGULATIONS

Fed. R. Bankr. P. 2004 ...............................................................................................9, 12

Fed. R. Civ. P. 37 ...........................................................................................11, 12, 14, 15

The Trive Defendants[1] submit this reply in support of their Cross-Motion and in response to the Trustee's request for fees.

1.      In his latest submission, D.I. 222 (the "Opposition" or "Opp."), the Trustee continues to distort the discovery record.  He insists that there is an unfair disparity between the 15 Noteholder custodians (including Ted Goldthorpe) and the three Trive Defendant custodians—without acknowledging that the Trustee is the assignee of the claims of *six* separate financial institutions.  *See, e.g.*, Opp. ¶¶ 1, 18.[2]  This is hardly the grievous imbalance the Trustee portrays it to be; indeed, if anything, the balance tilts in the other direction.  Even including Mr. Goldthorpe, the average number of custodians per Noteholder is 2.5, and the average number of documents produced per Noteholder is only around 5,000—compared to over 24,000 documents produced by the single set of Trive Defendants.  *See* Cross-Mot. ¶¶ 3, 17, 22.  As another example of rhetoric outpacing reality, the Trustee continues to take credit for producing "over 270,000 documents" (Opp. ¶¶ 38, 46), even though 240,000 of those documents—over 88%—were ones that the Trustee received from other parties and simply re-produced.  *See* Cross Mot. ¶¶ 3, 22.  The Trustee also tacitly concedes that, as the Trive Defendants noted (*id.* ¶ 3), his opening brief overstated the number of Noteholder documents produced by thousands.

2.      Even with these misleading assertions, the Trustee has no persuasive response to the Cross-Motion.  He offers no valid basis for refusing to search Mr. Goldthorpe's personal phone

---

[1]      Capitalized terms not defined herein have the same meaning as in the *Memorandum of Law in Support of the Trive Defendants' Cross-Motion to Compel*, D.I. 212 (the "Cross-Motion" or "Cross-Mot."").  Citations to "Ex." are to exhibits attached to the Firsenbaum Declaration, D.I. 213, or to the Declaration of Charles C. Bridge, dated July 23, 2026, filed herewith.

[2]      The Trustee complains about having to "coordinate collection and review from six Noteholders (whom the Trustee's counsel does not represent)."  Opp. ¶ 9 n.2.  He is the *assignee* of the Noteholders' claims; he is asserting their claims and therefore is their representative.  The Trustee and his counsel cannot have it both ways.  Either they represent the Noteholders, or they do not—and if it is the latter, the claims asserted as the Noteholders' assignee must be dismissed.

despite having demanded (and obtained) comparable collections from the personal devices of the Trive Defendants' (and other parties') custodians.  He resists collecting documents from two key Noteholder employees, Mike Terwilliger and Clare Kim, despite clear evidence of their extensive involvement in the events at issue.  And he admits that he has not produced all Noteholder chat messages by the Court-ordered substantial-completion deadline for document discovery, attempting to fault the Trive Defendants for not policing his compliance with his own obligations.

3.     The Trustee also requests—for the first time in his reply brief—fees in connection with the portion of his motion relating to Conner Searcy.  That request should be denied—not only because it is untimely but also because, among other reasons, the Trive Defendants' position with respect to Mr. Searcy was substantially justified.  What is most notable about the Trustee's belated request is how brazenly the Trustee changes course mid-brief.  When resisting discovery sought by the Trive Defendants, the Trustee insists that his unilateral assertions about relevance and proportionality must be accepted at face value.  But when the same principles are applied to the Trustee's own custodians, he takes the opposite tack.  Discovery that was mandatory for the Trive Defendants becomes unnecessary for the Noteholders.  Burdens that did not excuse the Trive Defendants suddenly become weighty and dispositive.  And arguments that the Trustee had made himself just a dozen pages earlier suddenly become so meritless as to supposedly justify a fee award against his adversary.  The hypocrisy is jarring.

4.     For these reasons, explained further below, the Court should grant the Trive Defendants' Cross-Motion and deny the Trustee's request for fees.

**ARGUMENT**

**I.     THE COURT SHOULD ORDER THE TRUSTEE TO INCLUDE TED GOLDTHORPE, MIKE TERWILLIGER, AND CLARE KIM AS NOTEHOLDER DOCUMENT CUSTODIANS**

**A.     Ted Goldthorpe's Phone Should Be Reviewed**

5.     On July 8, 2026, the day before his Opposition was due, the Trustee finally produced some of Mr. Goldthorpe's documents (1,000 documents in total).  It remains unclear what search criteria the Trustee used to search Mr. Goldthorpe's non-phone custodial documents, how many of such documents remain unproduced, and whether the Trustee has withheld any documents based on privilege (as he has not provided a privilege log associated with this production).  But if and when the Trustee completes the production and privilege log, the only remaining issue as to Mr. Goldthorpe will be the Trustee's baseless refusal to search his phone.

6.     The Trustee offers no valid basis for that refusal.  He does not (and cannot) dispute that he required the Trive Defendants to conduct that very search of their custodians' personal phones, and that the Trive Defendants complied with that request.  There is no basis to afford Mr. Goldthorpe special treatment.  He was a key decision-maker for BC Partners (the Noteholder with the largest participation in the Notes transactions) who directed his firm's negotiation of the Notes, attended the November 2021 meeting in New York, and remained closely engaged in Lucky Bucks matters after the Notes transactions.  Cross-Mot. ¶¶ 27-29.  The Trustee disputes none of this.

7.     The Trustee's argument about supposed "unique concerns" arising from discovery of personal devices (Opp. ¶¶ 20-21) cannot be credited, as the Trustee was untroubled by these same "concerns" when he sought—and received—hundreds of text threads and attachments from the personal devices of the Trive Defendants' custodians, all of whom also produced voluminous emails.  *See also, e.g.*, D.I. 139 ¶¶ 6, 24, 32 (Trustee requesting that the Court "compel [Defendant Shafik] Kassam's counsel to conduct a formal document collection from Kassam's … phone").

3

8.      The Trustee's reliance on BC Partners' supposed policy against using personal devices for work matters cannot excuse the Trustee either.  The Trustee admits that Ivelin Dimitrov—one of the two BC Partners custodians whose personal devices the Trustee has thus far agreed to collect—did not follow this policy.  Opp. ¶ 23 & n.3.  And while the Trustee attempts to minimize this inconvenient fact by claiming that a search of Mr. Dimitrov's phone yielded only three responsive text threads (*id.* ¶ 23), that evidence actually cuts against the Trustee.  The Trustee fails to mention that Joe Elsabee, a CION custodian, produced multiple Lucky Bucks-related text threads with Mr. Dimitrov—texts that Mr. Dimitrov never produced himself, which suggests that BC Partners either failed to preserve them or is improperly withholding them.  *See* Ex. 59 at -73460; Ex. 60 at -73462.[3]  In any event, regardless of what Mr. Dimitrov did, the Trustee offers no sworn affidavit or other evidence attesting to the purported BC Partners policy, or that **Mr. Goldthorpe** supposedly adhered to it.  The silence speaks volumes.

9.      The Trustee's undue-burden argument (Opp. ¶¶ 18, 21) is similarly unsupported. As he argued when moving to compel Mr. Kassam to search his phone, the Trustee "has not substantiated his burden objection with any facts, such as volume or hit count" for Mr. Goldthorpe's phone.  D.I. 139 ¶ 7.  Indeed, if in fact Mr. Goldthorpe followed supposed corporate policy (something that the Trustee claims without a shred of supporting evidence), the burden should be *de minimis* because there should be very little for the Trustee to review and produce.

10.      The Trustee's argument that the Trive Defendants "never mentioned including" Mr. Goldthorpe or Mr. Terwilliger as custodians "before this March" (Opp. ¶ 10) fares no better.  It does not explain why Mr. Goldthorpe's personal phone should be the only one not searched.  And

---

[3]      "It is axiomatic that a party is entitled to present evidence in a reply brief to rebut arguments raised in the opposing party's response brief." *Orozco v. Borenstein*, 2012 WL 3762408, at *2 (D. Ariz. Aug. 29, 2012).

4

more fundamentally, the timing is easily explained by the Trustee's and the Noteholders' feet-dragging. Until March 20, 2026, the Trustee had produced fewer than 12,000 Noteholder documents across his first two productions—and then he produced almost 14,000 all at once. *See* Cross-Mot. ¶¶ 20-21. It was only after the March production that the Trive Defendants finally had enough information to evaluate the Trustee's prior descriptions of potential custodians' roles, and to realize that many of those descriptions were inaccurate. *See id.* ¶¶ 24-25.

11.     The Trustee's relevance argument (Opp. ¶¶ 22-23) is equally flawed. Yet again, one wonders how the Trustee can reconcile his position with his insistence on obtaining discovery from the personal devices of the Trive Defendants' custodians. *See supra* ¶ 6. Regardless, Mr. Goldthorpe indisputably played a key role in BC Partners' decision to invest in the Notes. *See id.* Whether Mr. Goldthorpe was "part of BC Partners' deal team" is therefore a red herring. Opp. ¶ 3. And, of course, the same could be said about Mr. Searcy; he, too, was not part of the Trive Defendants' deal team, yet the Trustee insisted that his documents must be produced. The Trustee also does not and cannot dispute that Mr. Goldthorpe's documents bear on the Trustee's claims for fraud and negligent misrepresentation. *Compare id.* ¶ 22, *with* Cross-Mot. ¶ 49.

## B.     Mike Terwilliger And Clare Kim Should Be Custodians

12.     The Court should require the Trustee to include Mr. Terwilliger and Ms. Kim as custodians. The evidence cited in the Cross-Motion shows that they "would likely 'provide unique relevant information not already obtained.'" *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019) (emphasis omitted); *see* Cross-Mot. ¶¶ 30-32.

13.     The Trustee mischaracterizes the Trive Defendants' argument, which is not that Mr. Terwilliger and Ms. Kim are relevant only to "the B2G investigation and communications with potential investors, respectively." Opp. ¶ 26. Rather, the Trive Defendants argue (and the Trustee does not dispute) that both individuals were on the BC Partners deal team for the Notes

5

offering and have information relevant to the central issues in this case, including what BC Partners learned when it conducted diligence, how BC Partners perceived the risks and rewards of investing in the Notes, the extent to which BC Partners shared its "diligence materials" with other investors (Am. Compl. ¶ 133), when BC Partners supposedly "learn[ed] the truth" about Lucky Bucks (*id.* ¶ 220), and whether "the Noteholders were induced … to forebear [sic] from investigating" Lucky Bucks (*id.* ¶ 390).  Mr. Terwilliger and Ms. Kim were not peripheral actors who were merely "copied on or attended some of the [relevant] meetings and calls," as the Trustee would have it. *Contra* Opp. ¶ 4.  Rather, they were half of the deal team for the Noteholder with the largest participation in the Notes transactions, and they attended virtually all meetings and calls with the Trive Defendants and other parties.  Even if there were any duplication between these individuals' documents and those of other custodians,[4] the Trustee does not (and cannot) deny that routine de-duplication will greatly reduce any additional review burden.  *See* Cross-Mot. ¶ 60.

14.     The Trustee's custodian-specific arguments are also unpersuasive.

15.     <u>Mike Terwilliger</u>:  The Trustee admits that Mr. Terwilliger had Lucky Bucks-related "communications without the deal team."  Opp. ¶ 31.  That alone should end the matter.  The Trustee, however, faults the Trive Defendants for not citing enough documents that include Mr. Terwilliger but not Mr. Dimitrov, Mr. Young, or Mr. Goldthorpe—even though the Trustee refused to produce BC Partners custodial documents from anyone other than Mr. Dimitrov or Mr. Young until July 8.  *See id.* ¶¶ 30-31; *see also id.* ¶ 34 (Trustee making similar argument regarding Ms. Kim).  One wonders how the Trive Defendants could cite BC Partners documents they have

---

[4]     "[T]o the extent that the [Trustee] contend[s] that a search of these individuals' files will be duplicative, [the Trustee has] not offered any specific evidence, aside from a statement concerning the volume of [the Trustee's] production thus far, which explains how or in what manner the search will lead to the production of documents that have already been exchanged." *XPRT Ventures, LLC v. eBay, Inc.*, 2011 WL 13142141, at *9 (D. Del. June 15, 2011).

not received as part of their case to get those documents in the first place. In any event, if the

Trustee requires additional evidence that Mr. Terwilliger was deeply involved in the Notes

transactions and subsequent events—and discussed Lucky Bucks without Mr. Dimitrov, Mr.

Young, or Mr. Goldthorpe—that evidence is abundant. For example:

a)      In August and September 2021, Mr. Terwilliger discussed due-diligence topics and
the timing and size of BC Partners' investment with several different individuals at
Houlihan Lokey. *See* Ex. 61 at -6023 to -6025; Ex. 62 at -6533; Ex. 63 at -6609; Ex. 64 at
-7097 to -7098. The cited portions of these email threads do not include Mr. Dimitrov, Mr.
Young, or Mr. Goldthorpe.

b)      In a December 31, 2022 email to Mr. Goldthorpe, Mr. Terwilliger reported that he
had just spoken with Alexander Tracy of Perella Weinberg Partners regarding the potential
costs of a Lucky Bucks restructuring. Ex. 65 at -245680. There is no suggestion that
anyone else from BC Partners joined this call. *Contra* Opp. ¶ 30 (claiming that when Mr.
Terwilliger had "a call with someone outside of his deal team, … at least one of the three
BC Partners custodians also attended that call"); *see also, e.g.*, Ex. 66 at -12954 (evidencing
another call attended only by Mr. Terwilliger). Over the next several days, Mr. Terwilliger
discussed the same topics with Patrick Fallon (Monarch) and Nate Johnson (Marathon).
*See* Ex. 67 at -8776 to -8777; Ex. 68 at -8798 to -8799. The email threads with Mr. Fallon
and Mr. Johnson do not include Mr. Dimitrov, Mr. Young, or Mr. Goldthorpe.

c)      On April 25, 2023, Mr. Terwilliger emailed Mr. Fallon (Monarch), Mr. Johnson
(Marathon), Mr. Elsabee (CION), and Nayef Perry (Hamilton Lane): "Our investigative
service, B2G, will set-up a data-room to enable us to access their research thus far. B2G
will provide a comprehensive 'prosecutorial report' at the end of their efforts, but we can
review their source materials. … For emphasis, we need to ensure this information
remains tightly held within our group." Ex. 69 at -11624. This email thread does not
include Mr. Dimitrov, Mr. Young, or Mr. Goldthorpe.

d)      On September 8, 2023, Mr. Terwilliger emailed Mr. Johnson and Mr. Fallon, asking
"to have a brief conversation next week about the potential 'separate peace' with uncertain
members of LB management." Ex. 70 at -20480. This email thread as well does not
include Mr. Dimitrov, Mr. Young, or Mr. Goldthorpe.

16.     Clare Kim: The Trustee first represented to the Trive Defendants that Ms. Kim was

"*purely* involved with legal documentation." D.I. 117-6 at 3 (emphasis added). The Trive

Defendants discovered that representation to be false, causing the Trustee to retreat to the position

that Ms. Kim's role was "*primarily* related to legal documentation." Opp. ¶ 33 (emphasis added).

But this new position is not based in fact either. The Trustee now admits that Ms. Kim emailed

third parties "without a BC Partners custodian copied" (*id.* ¶ 36) and thus all but concedes that she likely has relevant, non-duplicative documents. The assertion that Ms. Kim "was not a core member of the [deal] team" is beside the point. *Id.* ¶ 33. And it, too, is demonstrably false. The evidence shows that Ms. Kim attended virtually all relevant calls and meetings with the Trive Defendants and other Defendants (as well as with other Noteholders and internal meetings) leading up to the Notes transactions, frequently discussed Lucky Bucks with her colleagues, and solicited third-party involvement in due diligence and the syndication of the Notes. *See* Cross-Mot. ¶ 32.

17. The Trustee's attempts to explain away the significance of the documents evidencing Ms. Kim's involvement are unpersuasive. For instance, in discussing the document containing Ms. Kim's November 2 meeting notes (Ex. 37), the Trustee describes it as "merely a cleaned-up version of the diligence questions Mr. Terwilliger prepared and circulated." Opp. ¶ 35. The Trustee inexplicably ignores the pages that the Trive Defendants actually cited (Cross Mot. ¶ 32), which contain Ms. Kim's meeting notes. *See* Ex. 37 at -216226 to -216227. The Trustee also contends that "most" of Ms. Kim's emails without the inclusion of a current BC Partners custodian are "administrative, not substantive." Opp. ¶ 36. Even if this were true—and it is not[5]— the purported distinction between "administrative" and "substantive" communications ignores that who spoke or listened, what they said or heard, and when they said or heard it are relevant to the Trustee's common-law claims for fraud and negligent misrepresentation, *see* Am. Compl. ¶¶ 382-401, and under multiple states' blue-sky laws, *see id.* ¶¶ 329-343. Such communications provide "the essential factual background" for the parties' claims and defenses—"that is, the 'who, what,

---

[5]    Again, the Trustee shifts the goalposts: unable to deny that Ms. Kim communicated about Lucky Bucks without including other BC Partners custodians, the Trustee now tries to trivialize her communications. Also, in claiming that "most" of Ms. Kim's emails lacking another BC Partners custodian were "not substantive," the Trustee admits that some *were* substantive.

when, where and how' of the events at issue." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

**C.    The Trustee's Unripe, Belated, And Transparently Tit-For-Tat Request For Four Additional (And Irrelevant) Custodians Should Be Denied**

18.    The cynicism of the Trustee's approach to discovery is made clear by his request for four additional Trive Defendant custodians: Austin Curley, Joseph Trahan, Jonathan Nunnaley, and Kim Whitener.  Opp. ¶ 37.  This request should be denied for at least three reasons.

19.    *First*, the request is unripe because the Trustee did not make it in his motion to compel.  *See Arku-Nyadia v. Legal Sea Foods, LLC*, 2022 WL 958465, at *2 n.3 (D.N.J. Mar. 29, 2022) (improper to seek affirmative relief for the first time in a reply brief); *see also Perez v. Lyons*, 823 F. Supp. 3d 1102, 1108 n.2 (E.D. Cal. 2026) (same for an opposition brief).

20.    *Second*, the parties never reached an impasse on this issue in the meet-and-confer process.  As explained in the Cross-Motion, the Trustee first raised this issue on May 22, 2026, in response to the Trive Defendants' request for documents from Mr. Terwilliger and Ms. Kim.  *See* Cross-Mot. ¶¶ 38-39.  The Trive Defendants did not refuse, instead asking the Trustee to "identif[y] specific documents showing that there is a reasonable basis for thinking these individuals are likely to have relevant, non-cumulative information."  Ex. 49 at 2.  The Trustee identified no supporting documents or facts and, indeed, did not respond at all.  Instead, he raised the issue with the Court in his Opposition—and cited only a handful of documents (none of which concern the legal and factual issues in this case) to support his tit-for-tat request.  Opp. ¶ 37.[6]

---

[6]    The Trustee admits that his untimely request is designed not to find facts, but "to even out the burden between the parties" should the Court order him to add Mr. Terwilliger and Ms. Kim as custodians.  Opp. ¶ 37.  The Court should not indulge this cynical tactic to drive up litigation costs.  If the Trustee had a good-faith basis for requesting these additional custodians, he would have done so prior to May 22, 2026—just 11 days before the substantial-completion deadline, and more than a year after he had received some 21,000 documents in Rule 2004 discovery.

9

21.     *Third*, none of the requested custodians is proportional to the needs of the case.  Mr. Trahan and Mr. Curley were junior employees who left TCM well before the alleged creation of the "super holdco" plan in August 2021.  *See* Cross-Mot. ¶ 38; Am. Compl. ¶ 7.  Mr. Nunnaley and Ms. Whitener are even further afield:  The Trustee *still* has not explained what "documents detailing the wiring of distributions from Lucky Bucks to Trive and vice versa" have to do with the substantive merits of the parties' claims and defenses (Opp. ¶ 37), especially in light of the funds-flow documents already produced by the Trive Defendants (and other parties).

## II.     THE COURT SHOULD ORDER THE TRUSTEE TO PRODUCE ALL NOTEHOLDER CHAT AND TEXT MESSAGES

22.     Not until his Opposition did the Trustee inform the Trive Defendants about the supposed "numerous technical challenges" and "months of troubleshooting" that, according to the Trustee, have delayed his production of chat messages by multiple Noteholders.  Opp. ¶ 17.  This news arrived more than ***three months*** after the parties discussed the Noteholders' chat messages at the April 8 meet-and-confer, more than five weeks after the June 2 substantial-completion deadline, and just a few weeks before depositions of fact witnesses may begin.  The Trustee still has not produced these chats or said when he will do so.  Yet the Trustee castigates the Trive Defendants for "not ask[ing] the Trustee about these messages since April 8," and he suggests that the Court-ordered substantial-completion deadline was merely precatory.  *Id.* ¶¶ 16, 38.

23.     The Trustee's position is unserious.  It is uncontested that (a) the Trive Defendants flagged the missing BC Partners and Hamilton Lane chat messages in early April, (b) the parties met-and-conferred, and (c) the June 2 deadline passed without the Trustee ever producing the chats or explaining where they were (until over a month later, in his Opposition).  If the Trustee had "technical challenges," it was his duty to inform the Trive Defendants before blithely blowing past a Court-ordered deadline—not the Trive Defendants' duty to hound the Trustee.

### III.   THE COURT SHOULD DENY THE TRUSTEE'S BELATED FEE REQUEST RELATED TO CONNER SEARCY'S CUSTODIAL DOCUMENTS

24.     Before filing their Cross-Motion and opposition to the Trustee's motion, the Trive Defendants produced responsive, non-privileged documents from Conner Searcy.  *See* Cross-Mot. ¶¶ 6, 17, 63.  This was not a "concession" that the Trive Defendants' "position on Mr. Searcy's documents was unsupportable."  Opp. ¶ 9 n.1.  Rather, it was a good-faith effort to move the parties closer to compromise and reduce the number of discovery disputes burdening the Court.

25.     Not content to move along after receiving what he wanted, the Trustee now seeks a fee award—a request made for the first time in his reply brief.  Opp. ¶¶ 42-51.  The Court should reject that belated request.  A reply brief "is not the appropriate time to raise a new argument." *Cohen v. Cohen*, 2022 WL 952842, at *4 (D. Del. Mar. 30, 2022) (finding argument waived).  The request also fails on the merits.  Each of the three bases for denying such a request applies here— and the Court "must not" award fees if *any* of them does.  Fed. R. Civ. P. 37(a)(5)(A).

26.     *First*, the Trive Defendants' objections to adding Mr. Searcy as a custodian were "substantially justified."  Fed. R. Civ. P. 37(a)(5)(A)(ii).  This legal standard asks not whether the Court agrees with those objections, but whether they were "without substance"—*i.e.*, whether the Trive Defendants' position "involves an unreasonable, frivolous or completely unsupportable reading of the law."  *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (denying fee request because argument, though "unavailing," was "not without substance"); *see also, e.g.*, *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 29 (E.D. Pa. 2016) (denying fee request because court understood "how Folino could have interpreted [the discovery] request as overly broad, expensive, and burdensome, even if we do not agree").  Although the Trive Defendants ultimately agreed to produce the documents, their objections had merit.  At the very least, there was a genuine dispute about Mr. Searcy's documents as to which reasonable people

could differ—nothing remotely close to the sort of misconduct that might justify a fee award.[7]

27.    Contrary to the Trustee's claim that the Trive Defendants' objections were "shifting" (Opp. ¶¶ 1, 50), the Trive Defendants' principal objection was consistent from the outset:  Adding Mr. Searcy as an additional custodian would be duplicative, not proportional, and unduly burdensome.  *See, e.g.*, D.I. 117-9 at 4 n.3.  Mr. Searcy is TCM's managing partner (akin to its CEO) and had no more involvement with the formation of Holdings or the Notes issuance than he has had with dozens of financing transactions involving TCM's myriad other portfolio companies.  To the extent that Mr. Searcy had any involvement at all with this investment, like any other, he did so through the deal team—principally Mr. Thadani, whose custodial documents the Trustee long ago received in Rule 2004 discovery.[8]

28.    The Trive Defendants acted reasonably, and were certainly "substantially justified," Fed. R. Civ. P. 37(a)(5)(A)(ii), in asking the Trustee "to articulate a basis" to believe that Mr. Searcy's relevant custodial documents "would be different from, and not simply duplicative of," documents already produced—and for the Trive Defendants to stand their ground

---

[7]    The Trustee's inapposite cases illustrate the sort of misconduct—far afield from anything here—that leads to a finding of no substantial justification.  In *Atomica*, the sole justification for withholding key reports that "provided a vast amount of critical sales information" was the indefensible position that the reports were not even responsive.  *In re Atomica Design Grp., Inc.*, 591 B.R. 217, 236 (Bankr. E.D. Pa. 2018).  And in *Liafail*, in response to certain requests for admission, the plaintiff "not only … fail[ed] to conduct a 'reasonable inquiry,'" but also "attempted through its evasive and ambiguous response to create the impression that it had made such an inquiry, and based on that inquiry, had a good faith basis to deny the request."  *Liafail, Inc. v. Learning 2000, Inc.*, 2003 WL 722199, at *4 (D. Del. Mar. 3, 2003).

[8]    It is not accurate that "Rule 2004 discovery revealed [that Mr.] Searcy was in direct communication with the Georgia Lottery Corporation about … Lucky Bucks' COAM machines." Opp. ¶ 44.  What Rule 2004 (and subsequent) discovery revealed was that both Mr. Searcy and a non-Trive defendant (James Boyden) passively received automated GLC email alerts, which Mr. Searcy occasionally forwarded to Mr. Thadani.  *See, e.g.*, Ex. 71 at -10152 to -10153; Ex. 72 at -209737 to -209738.  The Trustee, despite obtaining GLC documents through a subpoena, has never identified a "direct communication" of any substance from Mr. Searcy to the GLC (or involving him) that did not also include Mr. Thadani, whose documents were long ago produced.

12

when the Trustee did not do so, *Enslin v. Coca-Cola Co.*, 2016 WL 7013508, at \*1 n.2 (E.D. Pa. May 13, 2016); *see also* D.I. 119-3 at 2-3 (noting that the Trustee had identified only two documents "out of a production of over 21,000" supporting his request, "one on which Mr. Searcy was copied, and the other which was forwarded as an 'FYI' to him"). The Trustee may disagree with those objections, but the legal standard is whether those objections were *without substance*.

29.    Importantly, the Trustee's argument that the Trive Defendants' objections lacked substantial justification is incompatible with the positions *he* takes with respect to Noteholder custodians *in the very same brief*. As to Mr. Searcy, the Trustee insists that parties cannot be substantially justified in failing to disclose "relevant and discoverable" documents—even if the party has objected for other reasons, such as proportionality or undue burden. Opp. ¶ 50. But with respect to *his own* custodians, the Trustee stakes out a considerably softer and more nuanced position: Not every "individual with some nexus to the underlying facts," he says, "must, upon request, be designated as an ESI custodian." *Id.* ¶ 25.

30.    Similarly, when discussing *his own* custodians, the Trustee appears to have no problem with challenging discovery as cumulative and duplicative. In that context, his view is that "the party moving to compel the designation of additional custodians must establish that discovery taken from such additional custodians will be non-duplicative." Opp. ¶ 27. He further argues that "a proposed additional custodian is not required to have zero nonduplicative documents to be deemed duplicative." *Id.* ¶ 28. He asserts that Mr. Goldthorpe's custodial documents "should capture" the relevant documents from Mr. Terwilliger, *id.* ¶ 32, and that Ms. Kim "almost certainly would not possess unique substantive documents not already collected," *id.* ¶ 33. And he argues that, "given that other Noteholders were copied on the majority of" Ms. Kim's communications, there is no basis for believing that "Ms. Kim's documents are not duplicative of those the Trustee

13

has collected and produced from" other custodians. *Id.* ¶ 36. Yet, in the very same brief, when moving for sanctions because the Trive Defendants initially pushed back on discovery sought from Mr. Searcy, the Trustee terms similar arguments "baseless," "frivolous," and "in bad faith."

31.    *Second*, the Trustee did not meaningfully "attempt[] in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i). On the contrary, the Trustee's non-responsiveness consistently hampered the Trive Defendants' efforts to negotiate a reasonable compromise. Opp. ¶¶ 43, 49.[9] For example, the Trive Defendants provided a hit report for Mr. Searcy on September 19, 2025. *See* D.I. 210-13. The Trustee did not respond. The Trive Defendants then sent a follow-up letter on October 21, 2025, attempting to move search-term negotiations forward. Ex. 73 at 3-4. The Trustee did not respond to the October 21 letter either.

32.    Faced with the Trustee's silence, the Trive Defendants tried a new approach to reaching compromise, offering to drop objections as to Mr. Searcy if the Trustee did the same as to Mr. Goldthorpe. Cross-Mot. ¶ 33; Ex. 49 at 13. The Trustee finally responded on May 22, 2026, that he would accept the proposed compromise on the condition that he would not collect from Mr. Goldthorpe's personal device. Cross-Mot. ¶ 37; Ex. 49 at 3. The Trive Defendants replied on May 29, 2026, noting the Trustee's apparent lack of any basis for the personal-device exclusion and asking the Trustee to explain why Mr. Goldthorpe ought to be treated differently from all other custodians in this matter (including Mr. Searcy). Cross-Mot. ¶ 39; Ex. 49 at 1.

33.    The Trustee did not respond to the May 29 email, choosing to move to compel in lieu of explaining his personal-device exclusion. Rule 37(a)(5)(A)(i) requires more: at a minimum, "a good-faith effort" that involves "a genuine two-way communication where the parties engage

---

[9]    The Trustee's assertion that *he* is the party that has been "too patient and too accommodating" in discovery is laughable. Opp. ¶ 49. It is the Trustee who took *nearly a year* to produce any of the Noteholder documents at the heart of this case. *See* Cross-Mot. ¶¶ 18-22.

in a meaningful dialogue to resolve the issues." *Mut. Indus., Inc. v. Am. Int'l Indus.*, 2013 WL 3716516, at *6 (E.D. Pa. July 15, 2013) (rejecting fee request where movant, in lieu of continuing negotiations, made no "further attempt to reach out" and instead moved to compel).[10]

34.     *Third*, an award of expenses would be "unjust" under the circumstances. Fed. R. Civ. P. 37(a)(5)(A)(iii).  The Trive Defendants have provided extensive discovery to the Trustee and have repeatedly met and conferred with his counsel to address disputes and supposed deficiencies, including with respect to Mr. Searcy.  This is a far cry from the sort of "deficient or egregious" behavior that would justify an award of fees.  *Stevenson v. City of Newark*, 2023 WL 5003911, at *1 (D.N.J. Aug. 3, 2023) (rejecting request for fee award that would be unjust in light of defendant's participation in discovery process).[11]  At a minimum, it would surely be unjust to award fees with respect to Mr. Searcy without *also* awarding fees to the Trive Defendants for their cross-motion seeking production of documents from Mr. Goldthorpe, Mr. Terwilliger, and Ms. Kim—an effort that, as explained above, has a far sounder foundation in the record than the Trustee's request for Mr. Searcy's documents.

## CONCLUSION

35.     The Court should grant the Cross-Motion and deny the Trustee's fee request.

---

[10]     The Trustee's cases are not on point.  *Bastian* involved a motion to compel filed after a clear impasse arose after a phone conference. *See Combined Ins. Co. of Am. v. Bastian*, 2010 WL 11556590, at *3 (M.D. Pa. Mar. 16, 2010).  And *United Rentals* involved a non-moving party that did not "meaningfully engage in the discovery process" at all, necessitating a motion to compel. *United Rentals v. Liberty Mut. Fire Ins. Co.*, 2021 WL 12363093, at *5 (D.N.J. Apr. 26, 2021).

[11]     The Trustee's cases are, yet again, inapposite.  One case involved defendants who did not timely respond to discovery requests—without a valid reason, and not "because they objected to [the] requests or otherwise asserted that … the requests were improper." *Bey v. Holt*, 2026 WL 892497, at *6 (M.D. Pa. Mar. 31, 2026).  The other involved defendants who failed to respond to interrogatories by a court-ordered deadline (without justification) and, indeed, did not respond at all until faced with a motion to compel. *See Gov't Emps. Ins. Co. v. E. Coast Spine, Joint & Sports Med. Pro. Ass'n*, 2022 WL 4237082, at *3-4 (D.N.J. Sept. 14, 2022).

Dated:  July 23, 2026
      Wilmington, Delaware

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
philip.anker@wilmerhale.com
ross.firsenbaum@wilmerhale.com
charles.bridge@wilmerhale.com

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363
joel.millar@wilmerhale.com

*Attorneys for Defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming, LLC, and Shravan Thadani*

**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Laura Davis Jones*

Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, Southern Star Gaming, LLC, and Shravan Thadani*

16